DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
         tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3,<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**RECEIVER'S NOTICE OF MOTION AND MOTION FOR AUTHORITY TO PURSUE CLAWBACK CLAIMS AND APPROVAL OF PROPOSED PROCEDURES**<br><br>Date:      April 20, 2015<br>Time:      10:00 a.m.<br>Ctrm:      1 - 2nd Floor<br>Judge:    Hon. S. James Otero |

1  **TO ALL INTERESTED PARTIES:**

2  **PLEASE TAKE NOTICE** that on April 20, 2015, at 10:00 a.m. in

3  Courtroom 1 of the above-entitled Court, located at 312 North Spring Street,

4  Los Angeles, California 90012, William Hoffman ("Receiver"), the Court-appointed

5  permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"),

6  Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and

7  Oasis Studio Rentals #3, LLC ("Relief Defendants"), and their subsidiaries and

8  affiliates (collectively "Receivership Entities"), will and hereby does move the

9  Court for order authorizing the Receiver to pursue clawback claims and for approval

10  of proposed procedures for such claims ("Motion").

11  This Motion is based on this Notice of Motion and Motion, the attached

12  Memorandum of Points and Authorities, the documents and pleadings already on

13  file in this action, and upon such further oral and documentary evidence as may be

14  presented at the time of the hearing.

15  **Procedural Requirements:**  If you oppose this Motion, you are required to

16  file your written opposition with the Office of the Clerk, United States District

17  Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same

18  on the undersigned not later than twenty-one (21) calendar days prior to the hearing.

19  IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the

20  above date, the Court may grant the requested relief without further notice.  This

21  motion is made following the conference of counsel pursuant to L.R. 7-3, which

22  took place on March 13, 2015.

23

24  Dated:  March 17, 2015                ALLEN MATKINS LECK GAMBLE
                                          MALLORY & NATSIS LLP

25

26                                        By:_____/s/ Ted Fates_____

27                                        TED FATES
                                          Attorneys for Receiver
28                                        WILLIAM J. HOFFMAN

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

827432.01/SD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   CLAWBACK CLAIMS ..........................................................................2

III.  PROPOSED PROCEDURES ..................................................................3

      A.   Settlements ...................................................................................3

      B.   Litigation ......................................................................................5

      C.   Business Judgment ........................................................................6

IV.   ARGUMENT ..........................................................................................6

      A.   Broad Equitable Powers of the Court ...........................................6

      B.   Fraudulent Transfers Under the CUFTA; Receiver
           Standing.........................................................................................7

      C.   The Ponzi Presumption .................................................................7

      D.   Profits and Referral Fees ..............................................................8

      E.   Statute of Limitations and Statute of Repose.................................9

V.    CONCLUSION ....................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                         **Page(s)**

*AFI Holding, Inc. (In re),*
    525 F.3d 700 (9th Cir. 2008).................................................................7

*Cohen (In re),*
    199 B.R. 709 (B.A.P. 9th Cir. 1996)..............................................7, 8

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.,*
    205 F.3d 1107 (9th Cir. 1999).............................................................7

*Donell v. Ghadrdan,*
    2013 U.S. Dist. LEXIS 26393 (C.D. Cal. 2013)...............................8

*Donell v. Kowell,*
    533 F.3d 762 (9th Cir. 2007)..........................................................7, 8

*Donell v. Mojtahedian,*
    976 F.Supp.2d 1183 (C.D. Cal. 2013).............................................10

*Int'l Loan Network, Inc. (In re),*
    160 B.R. 1 (Bankr.D.D.C.1993)........................................................9

*Klein v. Andres,*
    2013 U.S. Dist. LEXIS 129744, 2013 WL 4809260 (D.Utah
    2013).....................................................................................................9

*Lake State Commodities, Inc. (In re),*
    253 B.R. 866 ........................................................................................8

*Nat'l Consumer Mortgage, LLC (In re),*
    2013 U.S. Dist. LEXIS 5986 (D. Nev. 2013) ...................................8

*Ramirez Rodriguez (In re),*
    209 B.R. 424 (Bankr.S.D.Tex. 1997)................................................9

*Randy (In re),*
    189 B.R. 425 (Bankr.N.D.Ill.1995)...................................................9

*SEC v. Capital Consultants, LLC,*
    397 F.3d 733 (9th Cir. 2005).............................................................7

*SEC v. Elliot,*
    953 F.2d 1560 (11th Cir. 1992).........................................................6

*SEC v. Hardy,*
    803 F.2d 1034 (9th Cir 1986).............................................................6

*SEC v. Wencke,*
    622 F.2d 1363 (9th Cir. 1980)...........................................................6

*Slatkin (In re),*
    525 F.3d 805 (9th Cir. 2008).............................................................8

|  | Page(s) |
|---|---|
| *United Energy Corp. (In re),* 944 F.2d 589 (9th Cir. 1991) | 8 |
| *Warfield v. Byron,* 436 F.3d 551 (5th Cir. 2006) | 9 |
| *Wing v. Dockstader,* 482 Fed. Appx. 361, 2012 WL 2020666 (10th Cir. 2012) | 9 |

**Statutes**

| | |
|---|---|
| California Civil Code § 3439.04(a) | 7 |
| California Civil Code § 3439.08(a) | 8 |
| California Civil Code § 3439.09(a) | 9 |
| California Civil Code § 3439.09(c) | 10 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

827432.01/SD

(iii)

## MEMORANDUM OF POINTS AND AUTHORITIES

William J. Hoffman ("Receiver"), Court-appointed receiver for Nationwide Automated Systems, Inc. ("NASI"), its subsidiaries and affiliates, including Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC (collectively, "Receivership Entities"), submits this Motion for Authority to Pursue Clawback Claims and Approval of Proposed Procedures ("Motion").

## I.   INTRODUCTION

This case concerns a Ponzi scheme involving the sale and leaseback of non-existent ATMs.  The scheme took place over approximately 18 years, during which time false "returns" or profits were paid to investors, sales people, and insiders.  The assets of the receivership estate include claims to recover these transfers, which include (a) investor profits, *i.e.*, amounts NASI paid to investors above and beyond their total investments with NASI, (b) referral fees NASI paid to those who referred investors to NASI, and (c) amounts NASI transferred to insiders and other parties related to or affiliated with NASI.  The law is clear the Receiver has standing to pursue claims to recover these transfers under the California Uniform Fraudulent Transfer Act ("CUFTA") and that such transfers from Ponzi schemes are presumed to be fraudulent transfers subject to recovery.

As in most Ponzi schemes, some NASI investors received substantial profits ("Net Gainers") and some received well less than they invested, if they received any payments at all ("Net Losers").  In order to recover and return as much as possible to the Net Losers, it is necessary to pursue recovery of profits paid to Net Gainers, as well as referral fees and other amounts paid to investors, sales agents, and insiders.  Accordingly, the Receiver seeks authority to pursue claims for recovery of these transfers ("Clawback Claims") and lays out proposed procedures for the pursuit and potential settlement of such claims.  The proposed procedures are designed to create

an efficient and effective system of resolving Clawback Claims, either through settlement or litigation, while conserving judicial and receivership estate resources.

## II.   CLAWBACK CLAIMS

Investors who deposited their funds with NASI did so for the purpose of purchasing one or more ATMs.  NASI sold approximately 30,000 ATMs to its investors.  However, NASI only owned about 238 ATMs, and none of the ATMs owned by NASI were actually sold to investors.  In other words, the ATMs sold to investors were fictitious and NASI's investors did not actually acquire anything.

Nevertheless, NASI promised to pay, and in most instances did pay its investors at least twenty (20%) percent of the price they paid for the fictitious ATMs per year.  Accordingly, investors who purchased their fictitious ATMs more than five years prior to the Receiver's appointment generally received payments in excess of the total they deposited with NASI.  NASI's records indicate that it started selling ATMs to investors in 1996.  Accordingly, in some cases, the profits paid to Net Gainers add up to very large amounts.  Although his forensic accounting is ongoing, the Receiver has done a preliminary analysis of the transfers to and from just 20 of the larger NASI investors and conservatively estimates that the profits paid to those investors alone during the last seven years exceed $17 million.

Additionally, NASI paid investors and other persons who referred investors a referral fee of $500 to $1000 per ATM purchased.  Some people referred large numbers of investors to NASI and/or investors who purchased numerous fictitious ATMs, and therefore received substantial referral fees.  The Receiver has done a preliminary analysis of referral fees paid to 16 sales agents and conservatively estimates that the fees paid during the last seven years exceed $9 million.  Finally, some insiders and affiliates of Defendants received substantial amounts from NASI. The Receiver is unable to provide an estimate of these amounts at this time; his accounting of these transfers is ongoing.

Federal equity receiverships such as this one are proceedings in equity designed to right the wrong suffered by investor victims of the fraudulent scheme. Allowing Net Gainers, sales agents, and insiders ("Prospective Defendants") to retain profits, referral fees, and other amounts received from the Ponzi scheme while Net Losers suffer devastating losses would be inequitable and run counter to the purposes of the receivership. Accordingly, the law allows the Receiver to pursue claims on behalf of the receivership estate to recover such transfers. The recoveries from these Clawback Claims will go to the receivership estate and be available for distribution to Net Losers.

### III.   PROPOSED PROCEDURES

The Receiver's proposed procedures for pursuing Clawback Claims are designed to resolve the claims as efficiently as possible, conserve existing receivership estate resources, and maximizing the recovery. Given the timing of transfers to Net Gainers, the Receiver seeks to move promptly and expeditiously so as to avoid losing the ability to recover transfers that fall outside the seven-year statute of repose, which is discussed further below. Of course, when it comes to litigation, these goals must be balanced with the due process rights of the Prospective Defendants. Accordingly, the Receiver proposes the following procedures for pursuing Clawback Claims:

**A.**   **Settlements**

The Receiver recommends Prospective Defendants be given a strong incentive to settle Clawback Claims promptly without litigation. Litigation is expensive and time-consuming for both sides and consumes judicial resources. Accordingly, the Receiver proposes and seeks approval of the following settlement procedures:

- The Receiver will send demand letters to Prospective Defendants (a) stating the total amount of profits, referral fees or other transfers paid to them ("Profit Amount"), (b) stating the Receiver's intention to pursue

Clawback Claims to recover the Profit Amount and the legal basis for such claims, and (c) offering to settle the Clawback Claims without litigation for 70% of the Profit Amount if payment is made in one lump sum or 75% if payment is made in 12 monthly installments.  The demand letter will also advise that the offer will expire at the earlier of (i) when the first 30 Prospective Defendants have accepted the offer, or (ii) when the Receiver files a complaint.  Once 30 Prospective Defendants have accepted the 70% or 75% offer, the minimum settlement amount will increase to 80% of each Prospective Defendant's Profit Amount.  The Receiver will give Prospective Defendants 60 days to accept the offer before filing a complaint.

- A settlement agreement and stipulated judgment will be provided with the demand letter in the forms attached hereto as Exhibits A and B.  All terms of the settlement agreement will be final other than the timing of payments, which can be in a lump sum or in equal monthly installments over 12 months.  The stipulated judgment will be for the full Profit Amount.  In order to accept the 70% or 75% offer, a Prospective Defendant must sign the settlement agreement and stipulated judgment and return them to the Receiver.  The offer will not be deemed accepted until the signed documents have been received.

- Settlement agreements executed in compliance with these procedures will be immediately effective, without further Court approval.

- Stipulated judgments will be held by the Receiver and not filed with the Court or otherwise sought to be enforced, provided the Prospective Defendant timely makes all required payments under the settlement agreement.  If the Prospective Defendant defaults on any payments and does not cure such default within 10 days, the Receiver, in his discretion, may file a complaint against the Prospective Defendant together with the

1  stipulated judgment and proof of the Prospective Defendant's default and

2  request entry of the stipulated judgment.

3  **B.     Litigation**

4  If 60 days have passed from mailing of the demand letter and a Prospective

5  Defendant has not accepted the settlement offer, the Receiver may file a complaint

6  against each Prospective Defendant.  In order to minimize the administrative

7  expenses associated with these cases, it is important they all be managed and

8  adjudicated by one District Court Judge and one Magistrate Judge who are familiar

9  with the underlying facts.  Many of the cases will likely be filed at the same time

10  and, for efficiency purposes, should be kept on the same track.  Having the cases

11  before one District Court Judge and one Magistrate Judge will also avoid

12  inconsistent rulings, which would complicate the litigation and potentially lead to

13  disparate treatment of similarly situated Prospective Defendants.  Accordingly, the

14  Receiver proposes and seeks Court approval of having all Clawback cases

15  transferred to this Court as related actions.  If the Court approves this request, the

16  Receiver will file a notice of related action with each complaint pursuant to Local

17  Rule 83-1.3.1.

18  With the exception of having all cases treated as related actions and

19  transferred to this Court, the cases should follow the Federal Rules of Civil

20  Procedure and Local Rules of the Court.  The Receiver will request that all

21  settlement conferences be held before the Magistrate Judge (assuming the Receiver's

22  proposal above is approved, settlement conferences will be held before Magistrate

23  Judge Frederick Mumm).  The Receiver will seek permission from Judge Mumm to

24  schedule multiple settlement conferences on the same day so as to minimize

25  administrative expenses.

26  To the extent Clawback cases do not settle, the Receiver anticipates they will

27  be resolved via summary judgment.  As discussed below, the law is very clear

28  regarding profits paid to investors, referral fees, and other transfers from Ponzi

1   schemes being recoverable by federal equity receivers.  The facts of the NASI Ponzi

2   scheme are clear and have been admitted by Defendants Gillis and Wishner, both in

3   this case and the parallel criminal case, in which they have entered guilty pleas.

4       **C.    Business Judgment**

5       As discussed above, the ultimate goal is to maximize the net recovery to the

6   receivership estate.  The Receiver will use his business judgment at all times in

7   pursuing Clawback Claims and remain focused on the ultimate goal.  This may

8   include seeking exceptions to the procedures described above in rare circumstances

9   where such exceptions are warranted.  If, for example, there are large transfers to a

10  Prospective Defendant that will potentially become unrecoverable due to the seven-

11  year statute of repose if the Receiver waits 60 days to file the complaint, the

12  Receiver may demand that the Prospective Defendant sign a tolling agreement to

13  stop the running of the statute of repose for the 60-day period.  The Receiver will

14  also use his business judgment in pursuing collection of judgments and managing

15  the fees and costs associated therewith, including potentially engaging a third-party

16  agent to pursue collection for a contingent fee based on the amount collected.

17      **IV.   ARGUMENT**

18      **A.    Broad Equitable Powers of the Court**

19      "The power of a district court to impose a receivership or grant other forms of

20  ancillary relief does not in the first instance depend on a statutory grant of power

21  from the securities laws.  Rather, the authority derives from the inherent power of a

22  court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369

23  (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly

24  and efficient administration of the estate by the district court for the benefit of

25  creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986).  As the appointment

26  of a receiver is authorized by the broad equitable powers of the court, any

27  distribution of assets must also be done equitably and fairly.  *See SEC v. Elliot*,

28  953 F.2d 1560, 1569 (11th Cir. 1992).

1   District courts have the broad power of a court of equity to determine the

2   appropriate action in the administration and supervision of an equity receivership.

3   *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  The Ninth

4   Circuit explained:

5   A district court's power to supervise an equity receivership
    and to determine the appropriate action to be taken in the

6   administration of the receivership is extremely broad.  The
    district court has broad powers and wide discretion to

7   determine the appropriate relief in an equity receivership.
    The basis for this broad deference to the district court's

8   supervisory role in equity receiverships arises out of the
    fact that most receiverships involve multiple parties and

9   complex transactions.  A district court's decision
    concerning the supervision of an equitable receivership is

10  reviewed for abuse of discretion.

11  *Id.* (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth*

12  *Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference'

13  to the court's supervisory role, and 'we generally uphold reasonable procedures

14  instituted by the district court that serve th[e] purpose' of orderly and efficient

15  administration of the receivership for the benefit of creditors.").  Accordingly, the

16  Court has broad equitable powers and discretion in the administration of the

17  receivership estate.

18  **B.   Fraudulent Transfers Under the CUFTA; Receiver Standing**

19  Under the CUFTA, a transfer is subject to avoidance and recovery when made

20  with (1) actual intent to defraud or (2) constructive fraudulent intent based on the

21  lack of reasonably equivalent value provided in exchange.  Cal. Civ. Code

22  § 3439.04(a).  Federal equity receivers have standing to pursue fraudulent transfer

23  claims on behalf of entities in receivership against the recipients of fraudulent

24  transfers.  *See Donell v. Kowell*, 533 F.3d 762, 776-777 (9th Cir. 2007).

25  **C.   The Ponzi Presumption**

26  Actual intent to defraud is presumed when the payments were made from

27  entities operating a Ponzi scheme.  *In re Cohen*, 199 B.R. 709,717 (B.A.P. 9th Cir.

28  1996); *see also Donell*, 533 F.3d at 767; *In re AFI Holding, Inc.*, 525 F.3d 700, 704

1   (9th Cir. 2008); *In re Nat'l Consumer Mortgage, LLC*, 2013 U.S. Dist. LEXIS 5986

2   at *32-33 (D. Nev. 2013) ("Courts presume actual intent in relation to a Ponzi

3   scheme because the debtor knows at the time of the transfer that the scheme

4   ultimately must collapse.").  Once fraudulent intent is established, the burden then

5   lies with the transferee to show it took in good faith **and** provided equivalent value

6   in exchange.  *See* Cal. Civ. Code § 3439.08(a); *In re Cohen*, 199 B.R. at 718-719.  It

7   is the transferor's actual intent that matters – the transferee's intent does not matter

8   unless it can also show it provided value in exchange for the transfer.  *In re Cohen*,

9   199 B.R. at 716-717 ("The focus of the inquiry into actual intent is on the state of

10  mind of the debtor."); *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008), holding that

11  transferor's operation of a Ponzi scheme "with the actual intent to defraud his

12  creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C.

13  § 548(a)(1)(A) and California Civil Code § 3439.04(a)(1), and precludes relitigation

14  of that issue").

### D.   Profits and Referral Fees

16       Payments made to profiting investors beyond the amount of their investment

17  are not considered to be in exchange for value.  *In re United Energy Corp.*, 944 F.2d

18  589, 595 n.6 (9th Cir. 1991) ("Such excess amounts would be avoidable because the

19  debtor would not have received reasonably equivalent value for them.").  This is

20  because such profits are fictitious as "they do not represent a return on legitimate

21  investment activity."  *See In re Lake State Commodities, Inc.*, 253 B.R. 866, 872

22  (citing to *In re United Energy Corp.*, *supra*, 944 F.2d at 595).  Thus, the Ninth

23  Circuit has adopted the "netting rule" whereby amounts paid to investors are netted

24  against their investments.  *See Donell v. Ghadrdan*, 2013 U.S. Dist. LEXIS 26393,

25  *5 (C.D. Cal. 2013) (citing *Donell v. Kowell*, 533 F.3d at 771).  Any excess in the

26  form of fictitious profits are subject to disgorgement.  *Id.*

27       As it relates to commissions or referral fees, courts deem these payments

28  fraudulent transfers because generating investments for a Ponzi scheme provides no

1   legitimate value to the enterprise.  See *In re Randy*, 189 B.R. 425, 441

2   (Bankr.N.D.Ill.1995) (holding that commissions paid pursuant to a Ponzi scheme

3   were fraudulent transfers because "the contract that underlies the transaction is

4   illegal, and therefore no value could have been given by the transferee to the debtor

5   for the transfer"); *Klein v. Andres*, 2013 U.S. Dist. LEXIS 129744, 2013 WL

6   4809260, *2 (D.Utah 2013) (rejecting the argument "that payments made as

7   compensation for drawing in new investors to a Ponzi scheme constitute an

8   exchange of reasonably equivalent value"); *In re Ramirez Rodriguez*, 209 B.R. 424,

9   434 (Bankr.S.D.Tex. 1997) ("As a matter of law, the defendant gave no value to the

10  debtors for the commissions attributable to investments made by others."); *In re Int'l*

11  *Loan Network, Inc.*, 160 B.R. 1, 16 (Bankr.D.D.C.1993) (defendants who enticed

12  new investors into Ponzi scheme, even if they had a contract, conferred no value

13  since such services were predicated upon an illegal agreement); *Wing v. Dockstader*,

14  482 Fed. Appx. 361, 2012 WL 2020666, *2 (10th Cir. 2012) (holding unlicensed

15  security broker could not enforce his right to referral fees where such right was

16  predicated upon an illegal contract).  Indeed, "[i]t takes cheek to contend that in

17  exchange for the payments he received, the . . . Ponzi scheme benefited from his

18  efforts to extend the fraud by securing new investments."  *Warfield v. Byron*, 436

19  F.3d 551, 560 (5th Cir. 2006).  Therefore, for investor profits and referral fees paid

20  from a Ponzi scheme, the transferor's actual intent to defraud is presumed and there

21  is no value provided in exchange.

22        **E.      Statute of Limitations and Statute of Repose**

23        Under the CUFTA, a claim for recovery of a fraudulent transfer based on

24  actual intent to defraud must be brought within four years of the transfer or within

25  one year of when the transfer was or reasonably could have been discovered by the

26  claimant.  Cal. Civ. Code § 3439.09(a).  Accordingly, claims to recover investor

27  profits and referral fees paid from a Ponzi scheme, for which actual intent to defraud

28  is presumed, must be brought within four years of the transfer or one year of when

1    the court-appointed receiver discovered them or reasonably could have discovered

2    them. *See Donell v. Mojtahedian*, 976 F.Supp.2d 1183, 1188-1189 (C.D. Cal. 2013)

3    (rejecting argument that the one year limitations period from discovery begins to run

4    immediately upon receiver's appointment).

5         The CUFTA also contains a seven-year statute of repose which limits

6    recoverable transfers to those that occurred within seven years of filing the

7    complaint. *See* Cal. Civ. Code § 3439.09(c). Accordingly, the maximum "reach

8    back" period for recoverable fraudulent transfers is seven years from the date a

9    complaint is filed.

10         Here, recovering fraudulent transfers is very important to providing Net

11    Losers with a meaningful measure of recovery. The law is clear that the profits paid

12    to investors, referral fees paid to sales agents, and other amounts transferred to

13    insiders and third parties are recoverable by the Receiver in actions against these

14    transferees. Equity demands that those who received profits and other financial

15    gains from the Ponzi scheme be required to return those amounts for distribution to

16    Net Losers.

17         Given the firm factual and legal basis for the Clawback Claims, the proposed

18    settlement and case management procedures are tailored to provide a fair process for

19    resolving them, while at the same time reducing the use of judicial and receivership

20    estate resources. These procedures will provide Prospective Defendants with due

21    process and allow the Receiver to act promptly to maximize the net recovery from

22    Clawback Claims for the benefit of Net Losers.

23         Importantly, the Receiver has considered whether the Clawback Claims

24    should be pursued on a contingent fee basis. After careful consideration, the

25    Receiver determined that the net recovery will be greater if counsel is paid on an

26    hourly basis. The Receiver does not anticipate controversial issues of law or fact

27    with the Clawback Claims, other than perhaps the accounting of transfers performed

28    by the Receiver's staff. Because any debate over the amount or timing of transfers

1  would primarily involve work by the Receiver and his staff, rather than counsel, the

2  anticipated time expended by counsel on any given Clawback Claim would not

3  necessarily support the amount of fees paid under a typical contingent fee

4  arrangement.  Moreover, as noted above, once judgments are obtained, the Receiver

5  will use his business judgment in pursuing collection and managing the fees and

6  costs associated therewith, including potentially engaging a third-party agent to

7  pursue collection for a contingent fee based on the amount collected.  Accordingly,

8  the Receiver believes the net recovery for the receivership estate will be greater if

9  his counsel is compensated on an hourly basis, subject to Court approval, rather than

10  on a contingent fee basis.

### V.    CONCLUSION

12      WHEREFORE, the Receiver requests authority to pursue Clawback Claims

13  and approval of the proposed procedures for such claims set forth above.

15  Dated:  March 17, 2015                    ALLEN MATKINS LECK GAMBLE
                                              MALLORY & NATSIS LLP

                                              By:_____/s/ Ted Fates_____
                                                 TED FATES
                                                 Attorneys for Receiver
                                                 WILLIAM J. HOFFMAN

16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## SETTLEMENT & RELEASE AGREEMENT

This SETTLEMENT & RELEASE AGREEMENT ("**Agreement**"), dated as of _____, 2015, is made by and between WILLIAM HOFFMAN of Trigild, Inc. ("**Receiver**"), in his capacity as Court-appointed permanent receiver for NATIONWIDE AUTOMATED SYSTEMS, INC., and its subsidiaries and affiliates, and _____ ("**Transferee**").

## RECITALS

A.       On September 17, 2014, the Securities and Exchange Commission ("**Commission**") filed a Complaint in the United States District Court for the Central District of California ("**District Court**") against Defendants Nationwide Automated Systems, Inc. ("**NASI**"), Joel Gillis and Edward Wishner.  Concurrently with filing the Complaint, the Commission filed an Ex Parte Application for a Temporary Restraining Order ("**TRO**"), including the appointment of a temporary receiver for NASI, its subsidiaries and affiliates ("Receivership Entities").

B.       The District Court granted the Ex Parte Application and entered the TRO on September 30, 2014, including appointment of the Receiver on a temporary basis.  On October 29, 2014, the Court entered a Preliminary Injunction Order, including appointment of the Receiver on a permanent basis.

C.       The Receiver alleges that during the last seven years, Transferee received $_____ ("**Profit Amount**") from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities.  The Receiver has asserted claims against Transferee for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act.  Transferee has disputed the Receiver's claims.

D.       The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1.       Payment.  Transferee shall pay to the Receiver [check one box]:

☐   $_____ [70% of the Profit Amount] to the Receiver in one lump sum paid within three business days from the date of this agreement.

☐   $_____ [75% of the Profit Amount] in twelve equal installments due on the first day of each month for twelve months, starting on the first day of the month following the date of this agreement.

2.        <u>Stipulated Judgment</u>.  Contemporaneous with the execution of this Agreement, Transferee has signed the Stipulated Judgment for Disgorgement in favor of the Receiver for the full Profit Amount attached hereto as Exhibit A and delivered the same to the Receiver ("**Stipulated Judgment**").  The Receiver shall hold the Stipulated Judgment and not seek to have it entered or enforced against Transferee unless and until Transferee defaults on the payment(s) due pursuant to Section 1 above and fails to cure such default within three business days of being notified of the default by the Receiver or his counsel.  If such default occurs and is not cured within three business days of Transferee receiving notice, the Receiver may, in his sole discretion, take all steps necessary to have the Stipulated Judgment entered and enforced against Transferee by all available means.

3.        <u>Mutual Release</u>.  On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferee on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the Transfers, all of which are hereinafter called, "**Released Claims**."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true.  Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein.  It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown.  The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

4.        <u>Voluntary Signing</u>.  Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

5.     <u>Independent Counsel</u>.  Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

6.     <u>Governing Law and Venue</u>.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

7.     <u>Waiver/Amendment</u>.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement.  Amendment of this Agreement may be made only by written agreement signed by the parties.

8.     <u>Fax and Counterparts</u>.  This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original.

9.     <u>Attorneys' Fees and Costs</u>.  The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof.  If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

10.     <u>Notices</u>.  Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:

_____

_____

_____

_____

To the Receiver:

William Hoffman, Receiver
c/o Allen Matkins
501 W. Broadway, 15th Floor
San Diego, CA 92101
Attn:  Ted Fates, Esq.

TRANSFEREE


By:   _____




WILLIAM HOFFMAN OF TRIGILD, INC.,
COURT-APPOINTED PERMANENT RECEIVER
FOR NATIONWIDE AUTOMATED SYSTEMS,
INC., AND ITS SUBSIDIARIES AND
AFFILIATES


By:   _____
      WILLIAM HOFFMAN, Receiver

# **EXHIBIT** B

1  DAVID R. ZARO (BAR NO. 124334)
   TED FATES (BAR NO. 227809)
2  TIM C. HSU (BAR NO. 279208)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   515 South Figueroa Street, Ninth Floor
4  Los Angeles, California 90071-3309
   Phone: (213) 622-5555
5  Fax:  (213) 620-8816
   E-Mail:  dzaro@allenmatkins.com
6          tfates@allenmatkins.com
           thsu@allenmatkins.com
7
   Attorneys for Receiver
8  WILLIAM HOFFMAN

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12  WILLIAM HOFFMAN, FEDERAL        | Case No. xxx
    EQUITY RECEIVER FOR             |
13  NATIONWIDE AUTOMATED            | **STIPULATED JUDGMENT OF**
    SYSTEMS, INC.,                  | **DISGORGEMENT**
14
                Plaintiff,
15
16       v.

    PROSPECTIVE DEFENDANT,
17
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

828088.01/SD

## STIPULATED JUDGMENT OF DISGORGEMENT

### I.    RECITALS

1.    On October 29, 2014, and pursuant to a Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver ("Appointment Order"), entered in the action styled *Securities and Exchange Commission, Plaintiff vs. Nationwide Automated Systems, Inc., Joel Gillis, and Edward Wishner, Defendants, and Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, Relief Defendants*, United States District Court, Central District of California, Case No. 14-cv-07249-SJO (FFMx) ("SEC Action"), William Hoffman ("Receiver") was appointed as permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI") and its subsidiaries and affiliates.  On November 18, 2014, the Court confirmed that Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC are affiliates of NASI and therefore included in the receivership (collectively with NASI, the "Receivership Entities").

2.    Pursuant to the terms of the Appointment Order, the Receiver is charged with, among other things, investigating the activities of the Receivership Entities, gathering and recovering assets of the Receivership Entities, including pursuing claims to recover those assets, as necessary.  Specifically, Section XII of the Appointment Order vests the Receiver with, among other authority, the "full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control" all property of the Receivership Entities.

3.    The Securities and Exchange Commission has alleged in the SEC Action that Defendants NASI, Gillis, and Wishner operated a Ponzi scheme.

1 Defendants Gillis and Wishner has also been criminally indicted on charges of wire

2 fraud and conspiracy and have entered guilty please in the criminal case.  After

3 obtaining and analyzing business and other records relating to the Receivership

4 Entities, the Receiver has independently concluded that Defendants operated a Ponzi

5 scheme and that returns paid to investors in NASI were paid not from actual income

6 on investments, but from funds received from later investors.

7     4.    In connection with his review and analysis of business and other records

8 relating to the Receivership Entities, the Receiver determined that PROSPECTIVE

9 DEFENDANT ("_____") received a total of $_____ in payments from the

10 Receivership Entities in excess of his/her total investment in or other value provided

11 to the Receivership Entities.

12     5.    Based on the conclusions, determinations, and admissions above, the

13 Receiver sent PROSPECTIVE DEFENDANT a disgorgement demand, requesting

14 that PROSPECTIVE DEFENDANT return the amount of $_____ to the

15 receivership estate.

16     6.    PROSPECTIVE DEFENDANT agrees the Receiver is entitled to a

17 judgment of disgorgement in the amount of $_____ and consents to entry of

18 such judgment.

19     **IT IS SO STIPULATED.**

20 Dated: _____, 2015        ALLEN MATKINS LECK GAMBLE
                                      MALLORY & NATSIS LLP

21

22                                    By:_____

23                                    TED FATES
                                   Attorneys for Receiver
                                   WILLIAM HOFFMAN

24

25 Dated: _____, 2015        By:_____
                                   PROSPECTIVE DEFENDANT

26

27

28

1

## PROOF OF SERVICE

2      I am employed in the County of San Diego, State of California.  I am over the
age of 18 and not a party to the within action.  My business address is 501 West
3  Broadway, 15th Floor, San Diego, California 92101-3541.

4      On March 17, 2015, I served on interested parties in said action the within:

5      ➢   **RECEIVER'S NOTICE OF MOTION AND MOTION FOR**
          **AUTHORITY TO PURSUE CLAWBACK CLAIMS AND**
6          **APPROVAL OF PROPOSED PROCEDURES**

7  ☒   **BY U.S. MAIL:**  by placing a true copy thereof in sealed envelope(s),
       addressed as indicated below.  I am readily familiar with this firm's practice of
8      collection and processing correspondence for mailing.  Under that practice it
       would be deposited with the U.S. Postal Service in San Diego County on that
9      same day in the ordinary course of business.  I am aware that on motion of
       party served, service is presumed invalid if postal cancellation date or postage
10     meter date is more than one day after date of deposit for mailing in affidavit.

11  Jeffrey D. Nadel, Esq.                  Attorney for Objector Alejandro
    Jeffrey D Nadel Law Offices             Trejo
12  16000 Ventura Boulevard, Suite 908
    Encino, California 91436
13

14  ☐   **BY OVERNIGHT DELIVERY:**  by placing a true copy thereof in sealed
       envelope(s), addressed as indicated below.  I am readily familiar with this
15     firm's practice of collection and processing correspondence for mailing.
       Under that practice it would be deposited in a box or other facility regularly
16     maintained by express service carrier, or delivered to a courier or driver
       authorized by said express service carrier to receive documents, a true copy of
17     the foregoing document(s) in sealed envelopes or packages designated by the
       express service carrier, with fees for overnight delivery paid or provided for.
18
19  ☐   **BY FACSIMILE:**  by transmitting a true copy of said document from
       facsimile machine whose telephone number is (619) 233-1158, pursuant to
20     California Rules of Court, Rule 2005.  The facsimile machine I used complied
       with Rule 2003(3) and no error was reported by the machine.  Pursuant to
       Rule 2008(e), I caused the machine to print a record of the transmission.
21
22  ☐   **BY ELECTRONIC MAIL:**  by electronic mail direct to the attorney(s) of
       records and/or the person or persons as stated above.  I am readily familiar
23     with this firm's Microsoft Outlook electronic mail system and this
       document/these documents were duly served electronically on the date stated
24     above, and the transmission was reported as complete and without error.

25     I declare under penalty of perjury under the laws of the State of California that
    the foregoing is true and correct.

26     Executed on March 17, 2015, at San Diego, California.

27  _____        _____
              Ted Fates                           /s/ Ted Fates
28         (Type or print name)                    (Signature)

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

827432.01/SD