DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Receiver
William Hoffman

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC,<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**RECEIVER'S FOURTH REPORT AND RECOMMENDATIONS**<br><br>Ctrm: 1 - 2nd Floor<br>Judge: Hon. S. James Otero |

# **TABLE OF CONTENTS**

**Page**

I. EXECUTIVE SUMMARY ................................................................................1
II. ATM OPERATIONS AND POTENTIAL SALE ............................................2
III. OASIS STUDIO RENTALS.............................................................................3
IV. FORENSIC ACCOUNTING ............................................................................5
V. TAX RETURNS AND INVESTOR 1099-MISC..............................................6
VI. SALE OF OFFICE FURNITURE AND EQUIPMENT...................................6
VII. FUEL DOCTOR ................................................................................................7
VIII. CRIMINAL CASE .............................................................................................7
IX. POST-RECEIVERSHIP RECEIPTS AND DISBURSEMENTS ...................7
X. INVESTOR COMMUNICATIONS ..................................................................8
XI. RECOMMENDATIONS ...................................................................................9
    A. ATM Operations ....................................................................................9
    B. Clawback Claims ...................................................................................9
    C. Claims Process .......................................................................................9
XII. CONCLUSION ................................................................................................10

William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC ("Relief Defendants"), and their subsidiaries and affiliates ("Receivership Entities"), hereby submits this fourth report on his activities and findings to date, as well as his recommendations for the continued administration of the receivership estate ("Report"). This Report focuses on the Receiver's activities during the second quarter of 2015.

## I. EXECUTIVE SUMMARY

The Receiver has continued to carry out his duties under the Court's Preliminary Injunction Order, including taking necessary and appropriate actions to secure, preserve, and protect the assets of the Receiverships Entities. The Receiver has also continued operations of NASI's ATM business, as authorized by the Court. The ATM business generates a steady, but modest amount of revenue.

The Receiver spent significant time in the second quarter on (a) efforts to identify, recover, and protect the assets of the Oasis Studio Rentals entities and their affiliates, including efforts to recover amounts owed to the entities or transferred from them to third parties, (b) preparing and issuing investor 1099-MISC tax statements for the pre-receivership time period in 2014, (c) communication with investors and reviewing documents provided, (d) reconstruction of accounting necessary for Clawback Claims (as defined below), and (e) sending demand letters outlining Clawback Claims to investors and third parties. All investors for whom the Receiver has a social security number/EIN and valid address were mailed a 1099-MISC. Investors for whom the Receiver has a valid address, but no social security number or EIN were sent a letter requesting they submit a completed W-9 to the Receiver.

The Receiver has continued his forensic accounting and investigation as necessary and appropriate to identify assets and potential claims to recover investor

1  profits, referral fees, and other transfers to third parties ("Clawback Claims").  In
2  April 2015, the Receiver obtained authority from the Court to pursue Clawback
3  Claims, as well as approval of proposed procedures for such claims.
4  　　　As discussed below, the Receiver recommends the receivership remain in
5  place as he continues to manage the ATM operations, investigate and recover assets,
6  pursue Clawback Claims and settlements as necessary and appropriate, all with the
7  goal of maximizing the value in the receivership estate for the benefit of investor
8  victims.

## II.   ATM OPERATIONS AND POTENTIAL SALE

10  　　　The Receiver has continued operations of the NASI ATM machines, which
11  consist of 205 ATMs operating at various hotels and other locations around the
12  country and 36 non-operating ATMs that are outdated or need substantial repairs.
13  Further, the Receiver's staff has continued business relationships with the ATM
14  service vendors and the ATM locations to maximize the revenue into the
15  receivership estate.
16  　　　Revenue and expenses from ATM operations vary on a monthly basis
17  depending on the amount of transactions for each ATM.  Gross revenues for April,
18  May and June 2015 were $186,849.00, $186,087.00 and $187,884.00, respectively.
19  The net income from ATM operations (after payments to the ATM servicers and
20  locations) were $25,293.00, $38,331.00, and $33,094.00, respectively, for a total of
21  $96,718.00.  The monthly average net income for the quarter was $32,239.33.
22  　　　The revenue and net income is seasonal and increased substantially during the
23  second quarter as compared to the first quarter monthly average net income of
24  $15,487.66.  The Receiver expects revenue in the third quarter to be similar to the
25  second quarter due to higher demand resulting from summer vacations and travel.
26  For the same reason, the Receiver anticipates a decrease during the fourth quarter.
27  　　　The Receiver has been actively seeking to sell the portfolio of ATMs.  The
28  Receiver contacted the current ATM servicers, Cardtronics and National Link, who

initially showed interest in purchasing the ATMs. The Receiver's staff has also been contacted by additional potential buyers, including one buyer specializing in ATMs in hotels throughout the U.S. The Receiver is in the early stages of negotiations with this buyer. Despite several variables complicating the sale, including the condition of ATMs, remaining term on existing leases, locations of the ATMs, and removal of ATMs from certain hotel locations, the Receiver believes a sale can be completed before the end of the year.

### III. OASIS STUDIO RENTALS

The Oasis Studio Rentals entities ("Oasis Entities") ran a business whereby they leased mobile dressing rooms (trailers) and trucks to transport the trailers to film and television studios to be used by actors and others on set during production. The Oasis Entities appear to have been funded almost entirely by NASI. At one point in time, the Oasis Entities owned most of the trucks and trailers. However, some of the trucks and trailers were apparently sold to various third parties with leaseback agreements to the Oasis Entities. The Receiver continues to investigate the true ownership of certain trucks and trailers.

On November 18, 2014, the Court entered its Order Approving the Receiver's First Report and Recommendations, which confirmed that the Oasis Entities are affiliates of NASI, and therefore within the scope of the receivership. Accordingly, the Receiver immediately took steps to identify, locate, and secure the assets of the Oasis Entities. Although the exact location and revenue generated by each vehicle is still being investigated, the Receiver continues to take necessary actions with the goals of: (1) identifying all vehicles purchased with NASI or Oasis funds, (2) tracing the purchase and sale of each vehicle to and from the Oasis Entities, (3) identifying income generated from vehicles owned or leased by the Oasis Entities and the recipients of these funds, (4) obtaining possession of the vehicles owned by Oasis Entities, (5) pursing potential claims against third parties who improperly benefited from the leasing and/or sale of vehicles owned by Oasis Entities, and (6) selling

1  vehicles owned by the Oasis Entities to maximize the recovery for the receivership
2  estate.
3      In order to achieve the goals outlined above, the Receiver has (a) worked with
4  the Receiver's counsel to subpoena records from numerous financial institutions and
5  other sources, (b) provided significant forensic accounting and analysis of multiple
6  bank accounts, cleared checks, wire transfers, checks deposited and existing
7  contracts, (c) requested, obtained and reviewed DMV records showing the chain of
8  registered title of vehicles identified by the Receiver, (d) reviewed and analyzed
9  subpoena responses and supporting documents from dozens of suspected affiliated
10 entities, including Fiji Rentals, LLC, and (e) worked to settle potential claims.
11     Prior to the receivership, the day-to-day operations of Oasis vehicles,
12 including the arrangements to lease trailers to the studios, were managed by Robert
13 Keller, Jr. ("Keller") with assistance from Defendant Ed Wishner's staff.  The
14 Receiver's counsel has served over a dozen subpoenas to parties associated with
15 Keller, including the current entity Keller leases vehicles with studios, Fiji Rentals.
16 The Receiver has received partial accounting and documents from a few parties, but
17 significant accounting and requested documentation has not been provided.  The
18 Receiver attempted to work toward a consensual resolution of this issue.  However,
19 due to a lack of cooperation and production of documents on the part of Keller, Fiji
20 Rentals, and related parties, the Receiver now intends to seek relief from the Court.
21     Wishner has stated that the Oasis Entities have as many as six trailers located
22 in Hawaii under the name Studio Maui Productions ("Studio Maui").  The Receiver
23 traced and confirmed the purchase of a business owning up to four vehicles, Akamai
24 RV, from accounts owned by Oasis and NASI that were leased by Studio Maui.
25 During a discussion between the Receiver's staff and counsel and Wishner, Wishner
26 confirmed (a) the purchase of Akamail RV, (b) the shipment of two additional
27 trailers owned by Oasis Entities from California to Hawaii and leased by Studio
28 Maui, and (c) two additional trailers may have been purchased by Studio Maui.  The

1  Receiver continues to investigate the assets and operations of Studio Maui in an
2  effort to maximize the recovery from the assets.

3  The Receiver's investigation has also revealed that the Oasis Entities made
4  various loans, investments, and transfers to third parties. In the second quarter of
5  2015, the Receiver recovered a total of $172,000 from third parties who received
6  funds from Oasis Entities. The Receiver continues to investigate, account for, and
7  pursue recovery of additional amounts.

## IV.   FORENSIC ACCOUNTING

9  The Preliminary Injunction Order requires the Receiver to "make an
10 accounting, as soon as practicable, to the Court and the SEC of the assets and
11 financial condition of Defendant Nationwide Automated Systems, Inc." Dkt.
12 No. 42, Part XII.E. Accordingly, the Receiver has undertaken to perform such an
13 accounting. The Receiver has made progress in the review of available financial,
14 accounting and banking records to reconstruct transactions of NASI, the Oasis
15 Entities and other affiliated entities.

16 Reconstruction of financial and accounting documents is a central task (a) to
17 determine who received funds from the Receivership Entities and how much they
18 received, (b) to prepare necessary tax filings, and (c) to determine the proper amount
19 of investor claims. The Receiver's accounting personnel has worked diligently to
20 create an accurate check register showing the checks paid by NASI to investors that
21 cleared, not bounced, which is a critical and time-consuming task.

22 Due to the large size and length of time the Ponzi scheme operated, an
23 enormous amount of information is required to be traced and verified. Reliable
24 information about NASI's check register and similar information was either not
25 available or not accurate, which required the Receiver's accounting personnel to
26 reconstruct the ledger of transactions. Information from bank statements and
27 cleared checks were used to create a schedule of checks paid by NASI to investors.

28

On average, over 2,000 checks were paid by NASI to investors on a monthly basis in 2014.

A substantial amount of time was spent by Receiver's staff to reconstruct banking activity during 2006 and 2007. Banking records for these years are no longer kept by financial institutions, which are only required to keep account records going back seven years. Reconstruction and analysis of the payments from NASI to investors and third parties in 2006 and 2007 is essential to the calculation of Clawback Claims and was completed during the second quarter 2015.

In order to pursue Clawback Claims, an accurate accounting of transactions between NASI and the applicable transferees is necessary. During the second quarter, the Receiver's staff was able to complete the payment and deposit reconstruction necessary to pursue Clawback Claims against select investors and third parties. The Receiver will continue to complete the forensic accounting required to pursue Clawback Claims for investor profits, referral fees, and other transfers.

## V. TAX RETURNS AND INVESTOR 1099-MISC

The Receiver filed extensions for 2014 federal and state tax returns for Receivership Entities. Upon completion of reconstructing the financial statements and accounting in 2014, the Receiver will file the appropriate tax returns.

The Receiver filed 1099-MISC forms with the IRS and mailed a copy to the payee for payments for machine rentals (Box 1: Rents) and payments for services to non-employees (Box 7: Non-Employee Compensation). The Receiver performed the necessary accounting work and filed all 1099-MISC forms during the second quarter.

## VI. SALE OF OFFICE FURNITURE AND EQUIPMENT

Office furniture and equipment, including desks, chairs, copier, tables and shelves ("Office Furniture") from the Receiver's takeover of NASI has been stored in a storage unit for the purpose of a bulk sale. The Receiver has contacted over ten

office furniture and equipment liquidators to sell the Office Furniture and decrease monthly storage expenses. Most liquidators offered to remove the Office Furniture for no cost, but were unwilling to pay anything for it. The Receiver was able to find a buyer who paid $500.00. As a result, the monthly lease with the storage company was terminated early in the second quarter.

## VII. FUEL DOCTOR

NASI made loans and other large transfers to an entity called Fuel Doctor, LLC ("Fuel Doctor"). Fuel Doctor apparently licenses technology used in several products that it claims increase a car's gas mileage. The Receiver has issued subpoenas to Fuel Doctor and its principal, Mark Soffa ("Soffa"), has reviewed documents produced and met with Soffa in person. The ownership of Fuel Doctor changed several times over the last few years in connection with various failed attempts to take the company public. The Receiver continues to gather and review documents to determine the current ownership and financial condition of the company. According to Soffa, Fuel Doctor's current inventory and operations are very limited and sales are limited to one catalogue.

## VIII. CRIMINAL CASE

On December 16, 2014, Gillis and Wishner were indicted on federal criminal charges of mail fraud, wire fraud, conspiracy, and aiding and abetting. Gillis and Wishner have both since entered guilty pleas and are awaiting sentencing, which is set for September 21, 2015.

## IX.   POST-RECEIVERSHIP RECEIPTS AND DISBURSEMENTS

At the time the Receiver was appointed on September 30, 2014, NASI had approximately $461,000 in cash. By the end of 2014, the balance in the receivership estate had increased to approximately $553,000. By the end of the first quarter 2015, the balance in the receivership estate had increased to $602,440.

During the second quarter of 2015, business operations received positive cash-flow of $82,877 (total business income of $560,820 minus total business

expenses of $477,943), and the Receiver obtained a total of $399,542 from third-party recoveries ($227,541.65 from investor Clawback Claims and $172,000 in funds returned to the Oasis Entities), and paid total disbursements of $488,326 to the Receiver and his counsel for Court-approved fees and expenses incurred during the fourth quarter 2014 and first quarter 2015 (their first two fee applications, both of which were approved during the second quarter), leaving an ending balance of $596,533 as of June 30, 2015. A Standardized Fund Accounting Report is attached hereto as Exhibit A.

In addition, the Receiver has already had significant recoveries from Clawback settlements in July 2015. Another $891,804.24 has been recovered from investors who have accepted the Court-approved settlement offer.

## X. INVESTOR COMMUNICATIONS

The Receiver has taken many steps to inform investors about the receivership, including establishing a website (www.nasi-receivership.com), a dedicated telephone line (858-242-1161), and a dedicated e-mail address (receiver@nasi-receivership.com). The website is designed to be investors' primary source of information about the receivership and provides basic information about receiverships, answers to commonly asked questions, status updates, pleadings filed in the case, and Court orders. In addition, the website has an investor questionnaire designed to obtain information from investors, including their contact information, investment amounts, ATM locations, and price paid per ATM. The investor questionnaire is a cost-effective method of obtaining information from investors, which the Receiver can then cross-reference and confirm or supplement with existing information. Thus far, 1,250 investors have completed and submitted investor questionnaires. The Receiver will continue to update the receivership website and review information and documents provided by investors.

During the second quarter 2015, the Receiver received 295 emails and 270 voicemails from investors related to tax filings, 1099-MISC, and other issues

regarding the receivership. The procedures put in place by the Receiver allowed him to efficiently (1) obtain and review information and supporting documentation provided by investors, (2) respond to investors within a few days, and (3) resolve any issues by explaining the issue to the investor or filing a corrected 1099-MISC when required. The Receiver's staff will continue to monitor the Receivership's voicemail line, email address, fax line, and website questionnaires and respond accordingly.

## XI. RECOMMENDATIONS

The Receiver recommends the receivership continue and his investigation and accounting be allowed to proceed.

### A. ATM Operations

As discussed above, the ATM operations generate a modest amount of net revenue ($32,239.33 per month during the second quarter). This revenue stream should be preserved until the ATM business can be marketed and sold. Accordingly, the Receiver intends to continue operating the ATMs pursuant to existing agreements with the Servicers and ATM Locations.

### B. Clawback Claims

The Court has authorized the Receiver to pursue Clawback Claims and approved the Receiver's proposed procedures for prosecuting such claims. The Receiver is moving forward with settlement demand letters and will file complaints against profiting investors who choose not to accept the authorized settlement offer.

### C. Claims Process

The Receiver will evaluate the most efficient and effective method of receiving and analyzing investor and creditor claim information and, at the appropriate time, will seek Court approval of procedures for the administration of claims.

## XII. CONCLUSION

Based on the foregoing, the Receiver requests an order approving this Report and his recommendations discussed above.

Dated: August 3, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ Ted Fates
TED FATES
Attorneys for Receiver
William Hoffman

# EXHIBIT A

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for**
**Equity Receivership over Nationwide Automated Systems, et al. - Cash Basis**
**Receivership; Civil Court Docket No. 44**
**Reporting Period 04/01/2015 to 06/30/2015**

**Fund Accounting (See Instructions):**

| | | | Detail | Subtotal | Grand Total |
|---|---|---|---:|---:|---:|
| Line 1 | Beginning Balance (As of 04/01/2015) | $ | 602,440 | | |
| | **Increases in Fund Balance** | | | | |
| Line 2 | Business Income | $ | 560,820 | | |
| Line 3 | Cash and Securities | | | | |
| Line 4 | Interest/Dividend Income | | | | |
| Line 5 | Business Asset Liquidation | | | | |
| Line 6 | Personal Asset Liquidation | | | | |
| Line 7 | Third-Party Litigation Income | $ | 399,542 | | |
| Line 8 | Miscellaneous - Other | | | | |
| | Total Funds Available (Lines 1-8) | | | | $ 1,562,802 |
| | **Decreases in Fund Balance:** | | | | |
| Line 9 | **Disbursements to Investors** | | | | |
| Line 10 | **Disbursements to Receivership Operations** | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $ | (488,326) | | |
| Line 10b | *Business Asset Expenses* | $ | (477,943) | | |
| Line 10c | *Personal Asset Expenses* | | | | |
| Line 10d | *Investment Expenses* | | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1. Attorney Fees | | | | |
| | 2. Litigation Expenses | | | | |
| | *Total Third-Party Litigation Expenses* | | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | | | | |
| Line 10g | *Federasl and State Tax Payments* | | | | |
| | **Total Disbursements for Receivership Operations** | | | $ (966,269) | |
| Line 11 | **Disbursments for Distribution Expenses Paid by the Fund** | | | | |
| Line 11a | Distribution Plan Development Expenses: | | | | |
| | 1. Fees | | | | |
| |     Fund Administrator | | | | |
| |     Distribution Agents | | | | |
| |     Consultants | | | | |
| |     Legal Advisors | | | | |
| |     Tax Advisors | | | | |
| | 2. Administrative Expenses | | | | |
| | 3. Miscellaneous | | | | |
| | *Total Plan Development Expeneses* | | | | |
| Line 11b | Distribution Plan Implementation Expenses: | | | | |
| | 1. Fees: | | | | |
| |     Fund Administrator | | | | |
| |     IDC | | | | |
| |     Distribution Agents | | | | |
| |     Legal Advisors | | | | |
| |     Tax Advisors | | | | |
| | 2. Adminstrative Expenses | | | | |
| | 3. Investor Identification: | | | | |
| |     Notice/Publishing Approved Plan | | | | |
| |     Claimant Identification | | | | |
| |     Claims Processing | | | | |
| |     Web Processing | | | | |
| |     Web Site Maintenance/Call Center | | | | |
| | 4. Fund Administrator Bond | | | | |
| | 5. Miscellaneous | | | | |
| | 6. Federal Account for Investor Restitution | | | | |
| | (FAIR) Reporting Expenses | | | | |
| | *Total Plan Implementation Expenses* | | | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | | |

Exhibit A
Page 12

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 12** | **Disbursments to Court/Other:** | | | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | | | |
| Line 12b | Federal Tax Payments | | | |
| | **Total Disbursements to Court/Other:** | | | |
| | **Total Funds Disbursed (Lines 9-11):** | | | **$ (966,269)** |
| **Line 13** | **Ending Balance (As of 06/30/15)** | | | **$ 596,533** |
| **Line 14** | **Ending Balance of Fund - Net Assets** | | | |
| Line 14a | Cash & Cash Equivalents | $ | 596,533 | |
| Line 14b | Investments | | | |
| Line 14c | Other Assets or Uncleared Funds | | | |
| | **Total Ending Balance of Fund - Net Assets** | | | **$ 596,533** |

**Other Supplemental Information:**
*Report Items NOT To Be Paid by the Fund:*

**Line 15**     **Disbursements for Plan Administration Expenses Not Paid by the Fund:**
- Line 15a     Plan Development Expensess Not Paid by the Fund:
  - 1. Fees
    - Fund Administrator
    - IDC
    - Distribution Agents
    - Consultants
    - Legal Advisors
    - Tax Advisors
  - 2. Adminsitrative Expenses:
  - 3. Investor Identification:
    - Notice/Publishing Approved Plan
    - Claimant Identification
    - Claims Processing
    - Web Site Maintenance/Call Center
  - 4. Fund Administrator Bond
  - 5. Miscellaneous
  - 6. FAIR Reporting Expenses
  - *Total Plan Implementation Expenses Not Paid by the Fund*
- Line 15c     Tax Administrators Fees & Bonds Not Paid by the Fund
- **Total Disbursments for Plan Administration Expenses Not Paid by the Fund**

**Line 16**     **Disbursments to Court/Other Not Paid by the Fund:**
- Line 16a     Investmene Expenses/CRIS Fees
- Line 16b     Federal Tax Payments
- **Total Disbursements to Court/Other Not Paid by the Fund**

**Line 17**     **DC & State Tax Payments**

**Line 18**     **No. of Claims:**
- Line 18a     # of Claims Received This Reporting Period . . . . . . . . . . . . . . . . . . . .
- Line 18b     # of Claims Received Since Inception of Fund . . . . . . . . . . . . . . . . . .

**Line 19**     **No. of Claimants/Investors:**
- Line 19a     # of Claimants/Investors Paid This Reporting Period . . . . . . . . . . . . . .
- Line 19b     # of Claimants/Investors Pard Since Inception of Fund . . . . . . . . . . . .

**Receiver:**

_____
William J. Hoffman of Trigild, Inc.

Date: July \_\_\_\_\_, 2015

1    I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is 501 West Broadway, 15th Floor, San Diego, California 92101-3541.

On August 3, 2015, I served on interested parties in said action the within:

> **RECEIVER'S FOURTH REPORT AND RECOMMENDATIONS**

☒ **BY U.S. MAIL:** by placing a true copy thereof in sealed envelope(s), addressed as indicated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service in San Diego County on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Jeffrey D. Nadel<br>Jeffrey D Nadel Law Offices<br>16000 Ventura Boulevard, Suite 908<br>Encino, California 91436 | Attorney for Third Party Claimant<br>Alejandro "Alex" Trejo<br><br>Tel: (818) 784-4914 |

☐ **BY OVERNIGHT DELIVERY:** by placing a true copy thereof in sealed envelope(s), addressed as indicated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelopes or packages designated by the express service carrier, with fees for overnight delivery paid or provided for.

☐ **BY FACSIMILE:** by transmitting a true copy of said document from facsimile machine whose telephone number is (619) 233-1158, pursuant to California Rules of Court, Rule 2005. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e), I caused the machine to print a record of the transmission.

☐ **BY ELECTRONIC MAIL:** by electronic mail direct to the attorney(s) of records and/or the person or persons as stated above. I am readily familiar with this firm's Microsoft Outlook electronic mail system and this document/these documents were duly served electronically on the date stated above, and the transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 3, 2015, at San Diego, California.

| Ted Fates | /s/ Ted Fates |
|---|---|
| (Type or print name) | (Signature) |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

832838.01/SD                    -1-