DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax:  (213) 620-8816
E-Mail: dzaro@allenmatkins.com
         tfates@allenmatkins.com
         thsu@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>    Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3,<br><br>    Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH BERWYN FRIEDMAN AND ELAINE FRIEDMAN; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    March 7, 2016<br>Time:    10:00 a.m.<br>Ctrm:    1 - 2nd Floor<br>Judge:  Hon. S. James Otero |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on March 7, 2016, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with Berwyn and Elaine Friedman ("Friedmans") ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated:  February 5, 2016               ALLEN MATKINS LECK GAMBLE
                                       MALLORY & NATSIS LLP

                                       By:      /s/ Ted Fates
                                           TED FATES
                                           Attorneys for Receiver
                                           WILLIAM J. HOFFMAN

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

838975.01/SD

# MEMORANDUM OF POINTS AN AUTHORITIES

## I. BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC Complaint alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things, the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

1  In the course of his investigation and accounting, the Receiver learned that
2  Berwyn Friedman, an investor, received transfers from the Receivership Entities in
3  excess of amounts paid to the Receivership Entities.  Mr. Friedman received a net
4  profit of $3,753,995.50 ("Profit Amount").  Declaration of Aaron J. Kudla ("Kudla
5  Decl.") at ¶ 2.
6  On June 4, 2015, pursuant to the order approving the Clawback Procedures
7  Motion, the Receiver mailed a demand letter to the Mr. Friedman, stating his Profit
8  Amount and giving him the option to settle the matter without litigation for 70% of
9  his Profit Amount.  The settlement had to be accepted within 60 days of the date of
10 the letter.  *Id.* at ¶ 3.  Through counsel, Mr. Friedman informed the Receiver that he
11 was unable to accept the settlement offer, so the Receiver advised him of the option
12 to submit a financial hardship application with extensive financial documentation
13 demonstrating his net worth, assets, and income.  *Id.* at ¶ 4.
14 On September 1, 2015, the Receiver filed a complaint asserting claims against
15 Mr. Friedman for return of the Profit Amount as representing one or more fraudulent
16 transfers under the California Uniform Fraudulent Transfer Act ("Friedman
17 Clawback Action").  Case No. 2:125-cv-06714, Dkt. No. 1.  On or about October 2,
18 2015, Mr. Friedman submitted a Financial Hardship Application and supporting
19 financial documentation ("Financial Hardship Application") to the Receiver,
20 requesting that the Receiver review his financial condition to determine if an
21 exception to the Court-approved settlement parameters was warranted.  Kudla Decl.
22 at ¶ 5.
23 On or about October 5, 2015, due to Mr. Friedman's submission of his
24 Financial Hardship Application, the Receiver and Mr. Friedman, through their
25 respective counsel, stipulated to extend Mr. Friedman's deadline to respond to the
26 Complaint while the Receiver reviewed the Financial Hardship Application and
27 supporting documents.  Friedman Clawback Action, Dkt. No. 13.  The Court
28

approved the stipulation and extended Mr. Friedman's deadline to respond to December 7, 2015. Friedman Clawback Action, Dkt. No. 14.

On or about December 8, 2015, the Receiver and Mr. Friedman, through their respective counsel, again stipulated to extend Mr. Friedman's deadline to respond to the complaint to February 5, 2016, as the Receiver had finished his review of the Financial Hardship Application and terms of a settlement had been reached, subject to documenting the agreement and obtaining Court approval thereof ("Approval Order"). Friedman Clawback Action, Dkt. No. 16. The Court approved the stipulation and extended Mr. Friedman's deadline to respond to the Complaint to February 5, 2016. Friedman Clawback Action, Dkt. No. 17.

As the Receiver and Mr. Friedman worked to document the settlement, an issue arose - Mr. Friedman's wife, Elaine Bleecker Friedman, had also made investments in NASI and had received a profit in the amount of $336,524.00. Mrs. Friedman had a NASI file under her maiden name, Elaine Bleecker, and therefore it was not initially known that she was married to Mr. Friedman. The Friedmans' understandably wanted the settlement to cover Mrs. Friedman's potential liability as well. Therefore, Mrs. Friedman submitted her own Financial Hardship Application and supporting documents (much of which was already provided in connection with Mr. Friedman's Financial Hardship Application), which the Receiver reviewed to confirm Mrs. Friedman's separate property assets were also insufficient to repay her Profit Amount. Kudla Decl. at ¶ 7.

The two Financial Hardship Applications revealed that the Friedmans' separate property and community property assets and income, are insufficient to repay their full combined Profit Amount. The Friedmans are elderly, retired, and therefore have limited income. Their primary assets consist of their home, a condominium located in Las Vegas encumbered by a sizable mortgage, their savings (cash, investment, and retirement accounts), a loan made to a privately-held

company, and a trailer purchased from Oasis Studio Rentals, LLC with unknown value. *Id*. at ¶ 8.

Accordingly, the Receiver and the Friedmans negotiated a settlement agreement ("Settlement Agreement"), subject to Court approval, pursuant to which the Friedmans will pay a total of $1,150,000.00 to the Receiver - $250,000.00 to be paid within three business days of entry of the Approval Order and the remaining $900,000.00 to be paid within one year of entry of the Approval Order. Although the Receiver and the Friedmans anticipate the $900,000.00 will be paid sooner, the one-year period is appropriate because the Friedmans plan to sell their home and rent an apartment in order to raise the necessary funds. To secure payment of the settlement amount, the Friedmans have executed a Promissory Note and Deed of Trust on their home in favor of the Receiver. The Receiver will record the Deed of Trust upon entry of the Approval Order. *Id.* at ¶ 9. Copies of the Settlement Agreement, Promissory Note, and Deed of Trust are attached to the Kudla Decl. as Exhibits A, B, and C.

In the event the Friedmans default under the Settlement Agreement, the Friedmans have also signed a stipulated judgment in favor of the Receiver in the full Profit Amounts - $3,753,995.50 for Mr. Friedman and $336,524.00 for Mrs. Friedman ("Stipulated Judgment"). The Stipulated Judgment, a copy of which is attached to the Kudla Decl. as Exhibit D, is to be held by the Receiver and not filed or enforced unless and until the Friedmans default on their payments under the Settlement Agreement. *Id.* at ¶ 10. The Receiver now requests Court approval of the Settlement Agreement, including the Stipulated Judgment, Promissory Note, and Deed of Trust.

## II.  DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an

equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad."  With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial.  *See* Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates.  *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); *see also* Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy").  A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable."  *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise negotiated by a court-appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors."  *In re MGS Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises.  In passing on the proposed compromise, the Court should consider the following:

    a.  The probability of success in litigation;
    b.  The difficulties, if any, to be encountered in the matter of collection;
    c.  The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and
    d.  The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

1    Here, the Receiver has weighed the costs and likely benefit of continuing the
2 action against Mr. Friedman, including adding Mrs. Friedman as a defendant,
3 obtaining a judgment, and enforcing a judgment therefrom.  Preparation of a motion
4 for summary judgment would involve considerable expense.  While the Receiver
5 would very likely prevail, the collectability of a judgment is the primary concern.

6    As discussed above, the Friedmans' assets and income are insufficient to
7 repay their full combined Profit Amount.  The Friedmans are elderly, retired, and
8 therefore have limited income.  Their primary assets consist of their home, a
9 condominium located in Las Vegas, their savings (cash, investment, and retirement
10 accounts), a loan made to a privately-held company, and a trailer purchased from
11 Oasis Studio Rentals, LLC with unknown value.

12    The Settlement Agreement generates $1,150,000 for the receivership estate
13 without further litigation or expense.  If the Receiver were to proceed with the
14 action against the Friedmans (including adding Mrs. Friedman as a defendant), it is
15 unlikely the net recovery would be greater than $1,150,000, and may well be
16 considerably less.  Moreover, if the Friedmans default on the payments due under
17 the Settlement Agreement, the Receiver can submit the Stipulated Judgment for
18 entry without further litigation.  The Receiver can also exercise his rights under the
19 Promissory Note and Deed of Trust, including foreclosing on the home, which has
20 no other debt on it.  The Receiver believes the Settlement Agreement is in the best
21 interests of the receivership estate, and therefore asks that it be approved.

### III. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement, including the Stipulated Judgment, Promissory Note, and Deed of Trust.

Dated: February 5, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Ted Fates*
TED FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN