1  DAVID R. ZARO (BAR NO. 124334)
   TED FATES (BAR NO. 227809)
2  TIM C. HSU (BAR NO. 279208)
   ALLEN MATKINS LECK GAMBLE
3    MALLORY & NATSIS LLP
   515 South Figueroa Street, Ninth Floor
4  Los Angeles, California 90071-3309
   Phone: (213) 622-5555
5  Fax: (213) 620-8816
   E-Mail: dzaro@allenmatkins.com
6          tfates@allenmatkins.com
           thsu@allenmatkins.com
7
   Attorneys for Receiver
8  WILLIAM J. HOFFMAN

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12 SECURITIES AND EXCHANGE          Case No. CV-14-07249-SJO (FFMx)
   COMMISSION,
13                                  **NOTICE OF MOTION AND
              Plaintiff,            MOTION FOR APPROVAL OF
14                                  SETTLEMENT WITH FRANCES
        v.                          McCAFFREY; MEMORANDUM OF
15                                  POINTS AND AUTHORITIES**
   NATIONWIDE AUTOMATED
16 SYSTEMS, INC.; JOEL GILLIS; and  Date:      April 4, 2016
   EDWARD WISHNER,                  Time:      10:00 a.m.
17                                  Ctrm:      1 - 2nd Floor
              Defendants,           Judge:     Hon. S. James Otero
18
   OASIS STUDIO RENTALS, LLC;
19 OASIS STUDIO RENTALS #2, LLC; and
   OASIS STUDIO RENTALS #3, LLC
20
              Relief Defendants.
21

22
23
24
25
26
27
28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

839715.01/SD

1  **TO ALL INTERESTED PARTIES:**

2  **PLEASE TAKE NOTICE** that on April 4, 2016, at 10:00 a.m. in

3  Courtroom 1 of the above-entitled Court, located at 312 North Spring Street,

4  Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"),

5  the Court-appointed permanent receiver for Nationwide Automated Systems, Inc.

6  ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio

7  Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will

8  and hereby does move the Court for an order approving a settlement agreement with

9  Frances McCaffrey ("Motion").

10  This Motion is based on this Notice of Motion and Motion, the attached

11  Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the

12  documents and pleadings already on file in this action, and upon such further oral

13  and documentary evidence as may be presented at the time of the hearing.

14  **Procedural Requirements:**  If you oppose this Motion, you are required to

15  file your written opposition with the Office of the Clerk, United States District

16  Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same

17  on the undersigned no later than 21 calendar days prior to the hearing.

18  IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the

19  above date, the Court may grant the requested relief without further notice.  This

20  motion is made following the conference of counsel pursuant to L.R. 7-3, which

21  took place on October 29, 2015.

22

23  Dated:  March 1, 2016                          ALLEN MATKINS LECK GAMBLE
                                                    MALLORY & NATSIS LLP

24

25                                                  By:        */s/ Ted Fates*
                                                        _____

26                                                      TED FATES
                                                        Attorneys for Receiver
27                                                      WILLIAM J. HOFFMAN

28

**MEMORANDUM OF POINTS AN AUTHORITIES**

**I.     BACKGROUND FACTS**

On September 17, 2014, the Securities and Exchange Commission
("Commission") filed a complaint against Defendants Nationwide Automated
Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint").  The
SEC Complaint alleges NASI raised money from investors by selling them
Automated Teller Machines ("ATMs"), leasing the ATMs back from investors,
managing the ATMs for the investors, and paying the investors "rents" that were
guaranteed to total at least 20% of the purchase price paid for the ATMs per year.
In actuality, NASI did not sell any ATMs to investors, but instead fabricated and
sold fictitious ATMs with fabricated serial numbers and locations.  The "rents" paid
to investors who purchased fictitious ATMs, as well as referral fees paid to investors
and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary
receiver over NASI, its subsidiaries and affiliates ("Receivership Entities").  Dkt.
No. 17.  On October 29, 2014, the Court entered a Preliminary Injunction Order,
making the Receiver's appointment permanent.  Dkt. No. 42.  Among other things,
the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover,
and marshal for the benefit of creditors and investors of the Receivership Entities
any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback
claims against, among others, investors who profited from NASI's investment
scheme ("Net Winners").  Dkt. No. 64.  The motion ("Clawback Procedures
Motion") included a request that the Receiver be authorized to settle clawback
claims for 70% of the net profit received by each Net Winner (or 75% if the Net
Winner elects to pay in 12 monthly installments).  On April 21, 2015, the Court
granted the Clawback Procedures Motion.  Dkt. No. 72.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

839715.01/SD

1    In the course of his investigation and accounting, the Receiver learned that

2  Frances McCaffrey, an investor, received transfers from the Receivership Entities in

3  excess of amounts paid to the Receivership Entities.  The net profit amount she

4  received is $1,419,861.50 ("Profit Amount").  Declaration of Aaron J. Kudla

5  ("Kudla Decl.") at ¶ 2.

6    On August 8, 2015, pursuant to the order approving the Clawback Procedures

7  Motion, the Receiver mailed a demand letter to Ms. McCaffrey, stating her Profit

8  Amount and giving her the option to settle the matter without litigation for 70% of

9  her Profit Amount.  *Id.* at ¶ 3.  Ms. McCaffrey was unable to accept the settlement

10  offer, so the Receiver advised her of the option to submit a financial hardship

11  application with extensive financial documentation demonstrating her net worth,

12  assets, and income.  *Id.* at ¶ 4.

13    On October 6, 2015, the Receiver filed a complaint asserting claims against

14  Ms. McCaffrey for return of the Profit Amount as representing one or more

15  fraudulent transfers under the California Uniform Fraudulent Transfer Act

16  ("McCaffrey Clawback Action").  Case No. 2:15-cv-07843.  Ms. McCaffrey

17  engaged counsel and filed an answer to the Complaint on November 11, 2015.

18  (Dkt. No. 14.)

19    Over the course of approximately two months, Ms. McCaffrey submitted a

20  Financial Hardship Application and the required supporting financial documentation

21  ("Financial Hardship Application") to the Receiver, requesting that the Receiver

22  review her financial condition to determine if an exception to the Court-approved

23  settlement parameters was warranted.  Kudla Decl. at ¶ 5.

24    The Financial Hardship Application reveals that Ms. McCaffrey has limited

25  net worth, assets, and income.  Ms. McCaffrey is 64 years old and has a medical

26  condition that limits her ability to work.  She owns her home, although the home has

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

839715.01/SD                                                    -2-

1  an existing mortgage and home equity line of credit on it.  She has limited income,

2  some cash savings, and some retirement savings.[1]  Kudla Decl. at ¶ 6.

3    Although the Profit Amount is very large – $1,419,861.50 – the transfers of

4  profit to Ms. McCaffrey occurred over a six-year period and, without much other

5  income, Ms. McCaffrey was effectively living off the transfers she received.

6  Moreover, the profits are disproportionate in relation to Ms. McCaffrey's assets and

7  net worth because the majority of the Profit Amount was paid in the form of

8  commissions for recruiting other investors to NASI, as opposed to returns on

9  investments.  Ms. McCaffrey didn't have the ability to purchase a large number of

10  ATMs.  Instead, she recruited other investors and received profits for doing so.  *Id.*

11  at ¶ 7.

12    Based on the Financial Hardship Application, the Receiver determined that

13  Ms. McCaffrey would be unable to satisfy a judgment in the Profit Amount and

14  therefore a reduced settlement outside the Court approved settlement parameters is

15  reasonable and appropriate given Ms. McCaffrey's extremely limited net worth,

16  income, and assets.  *Id.* at ¶ 8.  Accordingly, the Receiver and Ms. McCaffrey,

17  through their respective counsel, negotiated a settlement agreement ("Settlement

18  Agreement"), subject to Court approval, under which Ms. McCaffrey will pay a total

19  of $100,000 to the Receiver within seven business days of the Court's approval of

20  the Settlement Agreement.  *Id.*  A copy of the Settlement Agreement is attached to

21  the Kudla Declaration as Exhibit 1.

22    In the event Ms. McCaffrey defaults under the Settlement Agreement, she has

23  signed a stipulated judgment in favor of the Receiver in the full Profit Amount

24  ("Stipulated Judgment").  Kudla Decl., ¶ 9.  The Stipulated Judgment is to be held

25

26

27

28

[1] Out of respect for Ms. McCaffrey's privacy, the details of her personal finances are not publicly stated herein.  However, if the Court would like additional information, such information can be provided for *in camera* review.

1   by the Receiver and not filed or enforced unless and until Ms. McCaffrey defaults

2   on her payment under the Settlement Agreement. *Id.*

3                          **II.    DISCUSSION**

4       A federal equity receiver's power to compromise claims is subject to court

5   approval.  As noted by the Ninth Circuit Court of Appeals in *S.E.C. v. Hardy*,

6   803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an

7   equity receivership and to determine the appropriate action to be taken in the

8   administration of the receivership is extremely broad."  With regard to settlements

9   entered into by a federal equity receiver, the Court's supervisory role includes

10  reviewing and approving those settlements in light of federal court policy to

11  promote settlements before trial. *See* Fed. R. Civ. P. 16(c), Advisory Committee

12  Notes.

13      Federal courts of equity often look to bankruptcy law for guidance in the

14  administration of receivership estates. *See SEC v. Capital Consultants, LLC*,

15  397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*,

16  98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*,

17  273 F.3d 657, 665 (6th Cir. 2001); *see also* Local Civil Rule 66-8 ("a receiver shall

18  administer the estate as nearly as possible in accordance with the practice in the

19  administration of estates in bankruptcy").  A bankruptcy court may approve a

20  compromise of claims asserted by or against the estate if the compromise is "fair

21  and equitable." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*,

22  839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise

23  negotiated by a court-appointed fiduciary "is an exercise of discretion that should

24  not be overturned except in cases of abuse leading to a result that is neither in the

25  best interest of the estate nor fair and equitable for the creditors." *In re MGS*

26  *Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

27      The Court has great latitude in approving compromises.  In passing on the

28  proposed compromise, the Court should consider the following:

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

839715.01/SD                                    -4-

      a. The probability of success in litigation;

      b. The difficulties, if any, to be encountered in the matter of collection;

      c. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

      d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the costs and likely benefit of continuing the action against Ms. McCaffrey and enforcing a judgment therefrom.  Preparation of a motion for summary judgment would involve considerable expense for the receivership estate.  While the Receiver is confident he would prevail, the collectability of a judgment against Ms. McCaffrey is the primary concern.

As stated above, Ms. McCaffrey's assets and income are very limited. Therefore, it is unlikely the Receiver would be able to collect more than Ms. McCaffrey has agreed to pay via the Settlement Agreement and the expenses of obtaining and enforcing a judgment could even exceed the recovery.  The Settlement Agreement, on the other hand, generates $100,000 for the receivership estate without further litigation or expense.  If Ms. McCaffrey defaults on the payments due under the Settlement Agreement, the Receiver can submit the Stipulated Judgment for entry without further litigation expense.  The Receiver believes the Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved.  *Id.* at ¶ 10.

It should be noted that Ms. McCaffrey's financial circumstances are truly unique amongst the various Net Winners in this case.  In Ms. McCaffrey's case, much of her Profit Amount was in the form of fees or commissions paid to her for referring investors to NASI, as opposed to returns on purchases of fictitious ATMs. The Receiver expects there will be very few, if any, other Net Winners with similarly low net worth in relation to their Profit Amount.  Although there may be other Net Winners for whom a reduced settlement is warranted due to their financial

1  condition, very few, if any, other Net Winners will warrant a settlement of such a

2  small percentage of their Profit Amount. *Id.* at ¶ 11.

3  ### III.   CONCLUSION

4      For the foregoing reasons, the Receiver requests an order approving the

5  Settlement Agreement.

6  Dated:  March 1, 2016          ALLEN MATKINS LECK GAMBLE
                           MALLORY & NATSIS LLP

7

8                    By:  */s/ Ted Fates*

9                       TED FATES
                     Attorneys for Receiver
                     WILLIAM J. HOFFMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28