ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,

Defendants,

OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3,

Relief Defendants.

Case No. CV-14-07249-SJO (FFMx)

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH HARVEY TURELL AND LINDA TURELL; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: May 23, 2016
Time: 10:00 a.m.
Ctrm: 1 - 2nd Floor
Judge: Hon. S. James Otero

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on May 23, 2016, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with Harvey Turell, individually and as Trustee of the Harvey and Linda Turell Family Trust and as Trustee of the Harvey Turell 2015 Qualified Personal Residence Trust dated August 6, 2015, and Linda Turell, individually and as Trustee of the Linda Turell 2015 Qualified Personal Residence Trust dated August 6, 2015 ("Turells") ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated: April 20, 2016

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: /s/ Edward Fates
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

## MEMORANDUM OF POINTS AN AUTHORITIES

## I. BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC Complaint alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things, the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

In the course of his investigation and accounting, the Receiver learned that the Turells received transfers from the Receivership Entities in excess of amounts they paid to the Receivership Entities. The Turells received a net profit of $864,238 ("Profit Amount"). Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 2.

On June 15, 2015, pursuant to the order approving the Clawback Procedures Motion, the Receiver mailed a demand letter to the Turells stating their Profit Amount and giving them the option to settle the matter without litigation for 70% of their Profit Amount. The settlement had to be accepted within 60 days of the date of the letter. *Id.* at ¶ 3. Through counsel, the Turells informed the Receiver they were unable to accept the settlement offer, so the Receiver advised them of the option to submit a financial hardship application with extensive financial documentation demonstrating their net worth, assets, and income. *Id.* at ¶ 4.

On or about August 21, 2015, the Turells submitted a Financial Hardship Application and supporting financial documentation ("FHA") to the Receiver requesting the Receiver review their financial condition to determine if an exception to the Court-approved settlement parameters was warranted. Documentation missing from the FHA was then collected from the Turells over a period of months ending on December 5, 2015. *Id.* at ¶ 5.

On September 1, 2015, because the 70% settlement had not been accepted and because of concerns regarding the seven year statute of repose, the Receiver filed his Complaint asserting claims against the Turells for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act, Case No. 2:15-cv-06720-SJO-FFM ("Turell Clawback Action"). Turell Clawback Action, Dkt. No. 1. The Turells were served with the Complaint, through their counsel, on September 8, 2015. Turell Clawback Action, Dkt. Nos. 13, 17.

On or about September 30, 2015, due to the Turells' submission of their Financial Hardship Application, the Receiver and the Turells, through their

respective counsel, stipulated to extend the deadline to respond to the Complaint while the Receiver gathered documents missing from the FHA from the Turells. Turell Clawback Action, Dkt. Nos. 14, 15. On October 5, 2015, the Court approved the stipulation and extended the Turells' deadline to respond to November 30, 2015. Turell Clawback Action, Dkt. No. 16.

After being informed of the Receiver's claims for disgorgement of profits in early August 2015, the Turells took action to divide and transfer interest in the Property to separate qualified personal residence trusts in order to avoid the claims of creditors, including the Receiver's claims. On that basis, on December 15, 2015, the Receiver filed a First Amended Complaint ("FAC"). Turell Clawback Action, Dkt. No. 20. The Turells were served with the FAC, through their counsel, on December 17, 2015. Turell Clawback Action, Dkt. Nos. 24, 25. On January 7, 2016, the Turells filed an answer to the FAC. Turell Clawback Action, Dkt. No. 26.

On February 26, 2016, the Turells filed a motion to approve the hardship settlement ("Hardship Settlement Motion"). Turell Clawback Action, Dkt. No. 31. Due to the Turells agreeing to submit further financial hardship information, on or about March 3, 2016, the Receiver and the Turells, through their counsel, stipulated to continue the hearing date and briefing schedule on the Hardship Settlement Motion. Turell Clawback Action, Dkt. No. 32. On March 9, 2016, the Court approved the stipulation and continued the hearing on the Hardship Settlement Motion to March 28, 2016. Turell Clawback Action, Dkt. No. 33.

The Financial Hardship Application revealed that the Turells separate and community property assets and income, are insufficient to repay their full Profit Amount. The Turells are elderly and retired, and therefore have limited income. Their primary assets consist of their home, a single family residence located in Calabasas, California encumbered by two mortgages, their savings (cash, investment, and retirement accounts), and a non-controlling interest in a business. Additionally, Mrs. Turell has significant health issues. *Id*. at ¶ 6.

Accordingly, the Receiver and the Turells negotiated a settlement agreement ("Settlement Agreement"), subject to Court approval ("Approval Order"), pursuant to which the Turells will pay $390,000 to the Receiver by the later of (a) within three business days of entry of an Approval Order, or (b) May 14, 2016. *Id.* at ¶ 7. A copy of the Settlement Agreement is attached to the Kudla Declaration as Exhibit A.

In the event the Turells default under the Settlement Agreement, they have also signed a stipulated judgment in favor of the Receiver in the full Profit Amount - $864,238 ("Stipulated Judgment"). The Stipulated Judgment, a copy of which is attached to the Kudla Declaration as Exhibit B, is to be held by the Receiver and not filed or enforced unless and until the Turells default on their payment obligation under the Settlement Agreement. *Id.* at ¶ 8. The Receiver now requests Court approval of the Settlement Agreement, including the Stipulated Judgment.

## II. DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial. *See* Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*,

273 F.3d 657, 665 (6th Cir. 2001); *see also* Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy"). A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The approval of a proposed compromise negotiated by a court-appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises. In passing on the proposed compromise, the Court should consider the following:

a. The probability of success in litigation;

b. The difficulties, if any, to be encountered in the matter of collection;

c. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the likely costs and benefits of continuing the action against the Turells, obtaining a judgment, and enforcing a judgment therefrom. Preparation of a motion for summary judgment would involve considerable expense. While the Receiver would very likely prevail, the collectability of a judgment is the primary concern.

As discussed above, the Turells' assets and income are insufficient to repay their full Profit Amount. The Turells are elderly, retired, and therefore have limited income. Their primary assets consist of their home, a single family residence located in Calabasas, California, their savings (cash, investment, and retirement accounts), and a non-controlling interest in a business.

The Settlement Agreement generates $390,000 for the receivership estate without further litigation or expense. If the Receiver were to proceed with the action against the Turells, it is unlikely the net recovery would be greater than $390,000, and may well be considerably less. Moreover, if the Turells default on the payments due under the Settlement Agreement, the Receiver can submit the Stipulated Judgment for entry without further litigation. The Receiver believes the Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved.

## III. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement, including the Stipulated Judgment.

Dated: April 20, 2016

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN