1  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   TIM C. HSU (BAR NO. 279208)
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
            thsu@allenmatkins.com
6
   EDWARD G. FATES (BAR NO. 227809)
7  501 West Broadway, 15th Floor
   San Diego, California 92101-3541
8  Phone: (619) 233-1155
   Fax: (619) 233-1158
9  E-Mail: tfates@allenmatkins.com

10  Attorneys for Receiver
    WILLIAM J. HOFFMAN

11

12              UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14                  WESTERN DIVISION

15  SECURITIES AND EXCHANGE          Case No. CV-14-07249-SJO (FFMx)
    COMMISSION,
16                                   **NOTICE OF MOTION AND**
              Plaintiff,             **MOTION FOR APPROVAL OF**
17                                   **SETTLEMENT WITH WILLIAM**
         v.                          **FIRESTONE AND RELATED**
18                                   **PARTIES; MEMORANDUM OF**
    NATIONWIDE AUTOMATED             **POINTS AND AUTHORITIES**
19  SYSTEMS, INC.; JOEL GILLIS; and
    EDWARD WISHNER,                  Date:    July 11, 2016
20                                   Time:    10:00 a.m.
              Defendants,            Ctrm:    1 - 2nd Floor
21                                   Judge:   Hon. S. James Otero
    OASIS STUDIO RENTALS, LLC;
22  OASIS STUDIO RENTALS #2, LLC;
    and OASIS STUDIO RENTALS #3, LLC
23
              Relief Defendants.
24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

842806.01/SD

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on July 11, 2016, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with William Firestone, individually, as Trustee of the Firestone Family Trust, and as Trustee of the Firestone Family Decedents B Trust, and Randall Firestone, individually and as Trustee of the Firestone Irrevocable Trust ("Firestone Parties") ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated:  June 13, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:  ___*/s/ Edward Fates*___
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The Receiver seeks approval of financial hardship settlement with net winner William Firestone ("Mr. Firestone"), two trusts he controls, his son, Randall Firestone, and one trust Randall Firestone controls.  Mr. Firestone, the trusts he controls, and his dissolved entity, Firestone Holdings, Inc., received profits from the NASI Ponzi scheme in the total amount of $2,343,906.  Mr. Firestone engaged counsel and moved to dismiss the complaint, asserting several defenses.  Although Mr. Firestone still has a pending motion to dismiss, his defenses have largely been rejected by orders entered in the clawback case against Mr. Firestone and other clawback cases.

In February 2016, Mr. Firestone agreed to submit a financial hardship application and supporting documents ("FHA"), on the condition the Receiver agree to participate in a private mediation.  On April 22, 2016, after the FHA was submitted, the parties participated in a mediation and were able to reach a settlement, subject to Court approval.  The Receiver believes the proposed settlement, which generates a cash recovery of $1,300,000, is in the best interests of the receivership estate and therefore requests that it be approved.

## II.     BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint").  The SEC alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year.  In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations.  The "rents" paid to investors who

1    purchased fictitious ATMs, as well as referral fees paid to investors and agents,

2    were paid from the amounts raised from other investors.

3        On September 30, 2014, the Court appointed the Receiver as temporary

4    receiver over NASI, its subsidiaries and affiliates ("Receivership Entities").  Dkt.

5    No. 17.  On October 29, 2014, the Court entered a Preliminary Injunction Order,

6    making the Receiver's appointment permanent.  Dkt. No. 42.  Among other things,

7    the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover,

8    and marshal for the benefit of creditors and investors of the Receivership Entities

9    any and all assets of the receivership estate.

10       On March 17, 2015, the Receiver moved for authority to pursue clawback

11   claims against, among others, investors who profited from NASI's investment

12   scheme ("Net Winners").  Dkt. No. 64.  The motion ("Clawback Procedures

13   Motion") included a request that the Receiver be authorized to settle clawback

14   claims for 70% of the net profit received by each Net Winner (or 75% if the Net

15   Winner elects to pay in 12 monthly installments).  On April 21, 2015, the Court

16   granted the Clawback Procedures Motion.  Dkt. No. 72.

17       In the course of his investigation and accounting, the Receiver learned that

18   Mr. Firestone, individually and/or as Trustee of the Firestone Family Trust, and

19   Firestone Holdings, Inc. received transfers from the Receivership Entities in excess

20   of any amounts paid or value provided to the Receivership Entities.  The total net

21   profit paid is $2,343,906 ("Profit Amount").  Declaration of Aaron J. Kudla ("Kudla

22   Decl.") at ¶ 2.

23       On August 5, 2015, pursuant to the Court's order approving the Clawback

24   Procedures Motion (Dkt. No. 72), the Receiver mailed a demand letter to

25   Mr. Firestone stating his Profit Amount and giving him the option to settle the

26   matter without litigation for 70% of the Profit Amount.  The settlement had to be

27   accepted within 60 days of the date of the letter.  *Id.* at ¶ 3.

28

On October 30, 2015, because the 70% settlement had not been accepted, the Receiver filed his Complaint asserting claims against Mr. Firestone, individually, as Trustee of the Firestone Family Trust, and as shareholder of the dissolved corporation, Firestone Holdings, Inc., and Firestone Holdings, Inc., a California corporation, for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act, Case No. 2:15-cv-8498-SJO-FFM ("Firestone Clawback Action").  Firestone Clawback Action, Dkt. No. 1.  Mr. Firestone and Firestone Holdings, Inc. were served with the Complaint, through Mr. Firestone's counsel, on November 9, 2015.  Firestone Clawback Action, Dkt. Nos. 10, 11.

Through their respective counsel, the Receiver and Mr. Firestone discussed the facts of the case, legal arguments, and the possibility of settlement.  During those discussions, it became clear that an amendment to the Complaint to assert a claim against Mr. Firestone as the "subsequent transferee" of fraudulent transfers made to Firestone Holdings, Inc. was appropriate.  Kudla Decl., ¶ 4.  Accordingly, the Receiver filed his First Amended Complaint ("FAC") on November 30, 2016.  Firestone Clawback Action, Dkt. No. 13.

On December 17, 2015, Mr. Firestone moved to dismiss the FAC, asserting the statute of limitations as a defense.  Firestone Clawback Action, Dkt. No. 17.  The motion was granted with instructions for the Receiver to amend the Complaint with allegations of when the claims were discovered.  Firestone Clawback Action, Dkt. No. 24.  The Receiver amended the complaint accordingly and filed his Second Amended Complaint ("SAC") on February 4, 2016.  Firestone Clawback Action, Dkt. No. 25.

On February 16, 2016, Mr. Firestone moved to dismiss the SAC, asserting the same statute of limitations defense.  Firestone Clawback Action, Dkt. No. 27.  At the same time, however, Mr. Firestone, through his counsel, stated he would submit a financial hardship application and supporting documents ("FHA"), provided the

1   Receiver would agree to participate in a private mediation.  The Receiver agreed to

2   a private mediation, on the condition the complete FHA was submitted in advance

3   of the mediation.  Kudla Decl., ¶ 5.

4        Accordingly, the parties stipulated to continue the motion to dismiss and

5   related briefing while they focused on mediation.  Firestone Clawback Action, Dkt.

6   No. 31.  The FHA submitted by Mr. Firestone shows that, although he has

7   significant assets, including cash and LLC membership interests held in his trusts,

8   those assets are insufficient to repay the large Profit Amount in full.  Mr. Firestone

9   is 95 years old, retired, and has quite serious health issues.  Kudla Decl., ¶ 6.

10        The mediation was held on April 22, 2016, at which time the parties reached a

11   settlement and signed a settlement term sheet, subject to execution of the necessary

12   settlement documents and approval by the Court.  Over the course of the last month,

13   the parties have worked to document and execute the settlement, which includes a

14   Settlement Agreement, Stipulated Judgment, Pledge Agreement, Certificate of

15   Trust, Consent of Trust Beneficiaries, and UCC-1 Financing Statement ("Settlement

16   Documents").  *Id.* at ¶ 7.

17   ### III.   SETTLEMENT TERMS

18        Pursuant to the Settlement Documents, which are attached to the Kudla

19   Declaration as Exhibits A-D, the Firestone Parties will pay the receivership estate a

20   total of $1,300,000.  The initial settlement payment of $900,000 must be made

21   within 20 days of Court approval.  The remaining $400,000 must be paid within one

22   year of Court approval.  The Firestone Parties have also executed a Stipulated

23   Judgment for the full Profit Amount (less payments made under the Settlement

24   Agreement), which will be held by the Receiver and not filed or enforced unless and

25   until there is a default under the Settlement Agreement.

26        To secure the payment obligation, Mr. Firestone, as trustee of the Firestone

27   Family Decedents B Trust ("Trust B"), has pledged Trust B's membership interests

28   ("Membership Interests") in certain limited liability companies ("LLCs").  The

LLCs each own real estate. All distributions from the LLCs on account of the Membership Interests, other than ordinary course distributions, will go directly to the Receiver until the settlement obligation is paid in full (*i.e.,* if an LLC real property is sold, the distribution on account of the Membership Interest will go to the Receiver). The Receiver will also file a UCC-1 financing statement in the appropriate jurisdictions to perfect the security interest in the Membership Interests. In order to avoid the need for probate court approval, Mr. Firestone obtained the consents of all beneficiaries of the trusts prior to executing the Settlement Documents.

## IV.   DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial. See Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates. See SEC v. Capital Consultants, LLC, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); see also Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy"). A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*,

839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise negotiated by a court appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors."  *In re MGS Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises.  In passing on the proposed compromise, the Court should consider the following:

    a.     The probability of success in litigation;

    b.     The difficulties, if any, to be encountered in the matter of collection;

    c.     The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

    d.     The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the likely costs and benefits of continuing the action against Mr. Firestone and his trusts, obtaining a judgment, and enforcing a judgment.  Preparation of a motion for summary judgment would involve considerable expense.  While the Receiver would very likely prevail, the collectability of a judgment is the primary concern.

As discussed above, the assets and income of Mr. Firestone and the trusts he controls are insufficient to repay the full Profit Amount.  Mr. Firestone is elderly, retired, and has quite serious health issues.  His primary assets consist of retirement savings and interests in two trusts, which hold cash and the LLC Membership Interests.

The Settlement Agreement generates $1,300,000 for the receivership estate without further litigation or expense.  If the Receiver were to proceed with the Firestone Clawback Action, it is unlikely the net recovery would be greater than $1,300,000, and may well be considerably less.  Moreover, if Mr. Firestone and the

1 | trusts default on the payments due under the Settlement Agreement, the Receiver
2 | can submit the Stipulated Judgment for entry without further litigation and/or
3 | foreclose on the Membership Interests and liquidate them.  The Receiver believes
4 | the Settlement Agreement is in the best interests of the receivership estate, and
5 | therefore asks that it be approved.  Kudla Decl., ¶ 8.

## V.  CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement, including the Stipulated Judgment and Pledge Agreement.

Dated:  June 13, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:  */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN