ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH ANN AND DONALD NOEL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 1, 2016<br>Time: 10:00 a.m.<br>Ctrm: 1 - 2nd Floor<br>Judge: Hon. S. James Otero |

843510.01/SD

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on August 1, 2016, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with Ann and Donald Noel ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated:  June 24, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

843510.01/SD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Receiver seeks approval of a financial hardship settlement with Net Winners Ann and Donald Noel ("Noels"). The Noels received profits from the NASI Ponzi scheme in the total amount of $312,800 ("Profit Amount"). The Noels hired an attorney and in January 2016, and submitted a financial hardship application and supporting documents ("FHA"). The FHA revealed that the Noels are unable to pay the full Profit Amount and, in fact, have very limited income and assets. The parties negotiated terms and reached a settlement, subject to Court approval. The Receiver believes the proposed settlement, which generates a cash recovery of $5,000, is in the best interests of the receivership estate and therefore requests that it be approved.

## II. BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things,

the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners").  Dkt. No. 64.  The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments).  On April 21, 2015, the Court granted the Clawback Procedures Motion.  Dkt. No. 72.

In the course of his investigation and accounting, the Receiver learned that the Noels received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities.  The total Profit Amount paid is $312,800.  Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 2.

On December 17, 2015, pursuant to the Court's order approving the Clawback Procedures Motion (Dkt. No. 72), the Receiver mailed a demand letter to Ann Noel (in whose name the account was placed) stating her Profit Amount and giving her the option to settle the matter without litigation for 70% of the Profit Amount.  The settlement had to be accepted within 60 days of the date of the letter.  *Id.* at ¶ 3.

Through their counsel, on or about January 26, 2016, the Noels submitted an FHA to the Receiver, requesting the Receiver review their financial condition to determine if an exception to the Court-approved settlement parameters was warranted.  *Id.* at ¶ 4.

The FHA reveals the Noels' sole monthly income totals $2,100 from social security payments and a Veteran's Administration disability stipend paid to Mr. Noel.  *Id.* at ¶ 5.  The Noels are elderly – Mr. Noel is almost 80 and has serious health concerns.  Neither of the Noels receive any employment income and the real property they own is their primary residence with very little equity.  *Id.*  The FHA

1  also reflects the Noels' monthly expenses total in excess of $4,211 per month, which
2  includes payments on a reverse mortgage on their home. *Id.*  The Noels invested at
3  the very beginning of the NASI scheme (1996-1997), and therefore, although they
4  received significant profits, the profits were paid over many years and were used by
5  the Noels for their ordinary living expenses. *Id.*

6  Based on the FHA, the Receiver made the determination that the Noels would
7  be unable to satisfy a judgment in the Profit Amount and therefore a reduced
8  settlement outside the Court approved settlement parameters is reasonable and
9  appropriate given the Noels extremely limited net worth, income, and assets. *Id.* at
10 ¶ 6.

### III.   SETTLEMENT TERMS

The Receiver and the Noels, through their counsel, negotiated a settlement agreement ("Settlement Agreement"), subject to Court approval, a copy of which is attached to the Kudla Declaration as Exhibit 1.  Under the Settlement Agreement, the Noels will pay the receivership estate a total of $5,000.  The initial settlement payment of $500 must be made within three business days of entry of the Court's approval of the Settlement Agreement ("Approval Order").  The remaining $4,500 must be paid in nine equal monthly installments of $500 starting on the first day of the month following entry of the Approval Order. *Id.* at ¶ 7.  The Noels have also executed a Stipulated Judgment, a copy of which is attached to the Kudla Declaration as Exhibit 2, for the full Profit Amount (less payments made under the Settlement Agreement), which will be held by the Receiver and not filed or enforced unless and until there is a default under the Settlement Agreement.

### IV.   DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval.  As noted by the Ninth Circuit Court of Appeals in *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the

administration of the receivership is extremely broad."  With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial.  See Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates.  See *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); see also Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy").  A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable."  *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise negotiated by a court appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises.  In passing on the proposed compromise, the Court should consider the following:

    a.    The probability of success in litigation;

    b.    The difficulties, if any, to be encountered in the matter of collection;

    c.    The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

    d.    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the likely costs and benefits of commencing an action against Mrs. Noel, obtaining a judgment, and enforcing a judgment. Preparation of a motion for summary judgment would involve considerable expense. While the Receiver would very likely prevail, the collectability of a judgment is the primary concern.

As stated above, the Noels' monthly income is limited to social security payments totaling $2,100 per month and a Veteran's Administration disability stipend paid to Mr. Noel. The Noels do not receive any employment income that could be garnished, nor do they have real property or other assets of value that could be levied upon. *Id.* at ¶ 8. Furthermore, the Noels have a substantial amount of debt and monthly expenses that consume most of their limited income. *Id.* Based on the above, it is unlikely the Receiver would be able to collect more than the small amount the Noels have agreed to pay via the Settlement Agreement and the expenses of obtaining and enforcing a judgment would likely exceed the recovery by a substantial margin.

The Settlement Agreement generates $5,000 for the receivership estate without any litigation. If the Noels default on the payments due under the Settlement Agreement, the Receiver can submit the Stipulated Judgment for entry without incurring litigation expenses. The Receiver believes the Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved. *Id.* at ¶ 9.

It should be noted that the Noels financial circumstances are truly unique amongst the various Net Winners in this case. The Receiver expects there will be very few, if any, other Net Winners with a net worth, assets, and income as extremely low as theirs, combined with their advanced age and lack of earning capacity. Although there may be other Net Winners for whom a reduced settlement is warranted due to their financial condition, very few, if any, other Net Winners will warrant a settlement of such a small amount. *Id.* at ¶ 10.

## V. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement, including the Stipulated Judgment.

Dated: June 24, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN