ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH DENVER AND AFSANEH DALE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 19, 2016<br>Time: 10:00 a.m.<br>Ctrm: 1 - 2nd Floor<br>Judge: Hon. S. James Otero |

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

845155.01/SD

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on September 19, 2016, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with Denver and Afsaneh Dale ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:**  If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated:  August 19, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:  */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

845155.01/SD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Receiver seeks approval of a financial hardship settlement with Net Winners Denver and Afsaneh Dale ("Dales"). The Dales received profits from the NASI Ponzi scheme in the total amount of $1,574,840.64 ("Profit Amount"). The Dales hired an attorney and in January 2016 submitted a financial hardship application and supporting documents ("FHA"). The FHA reveals that the Dales are unable to pay the full Profit Amount and have limited income and assets. The parties negotiated terms and reached a settlement, subject to Court approval. The Receiver believes the proposed settlement, which generates a cash recovery of $150,000, is in the best interests of the receivership estate and therefore requests it be approved.

## II. BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things,

the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

In the course of his investigation and accounting, the Receiver learned the Dales received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. The total Profit Amount paid is $1,574,840.64. Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 2.

Pursuant to the Court's order approving the Clawback Procedures Motion (Dkt. No. 72), the Receiver mailed a demand letter to the Dales stating their Profit Amount and giving them the option to settle the matter without litigation for 70% of the Profit Amount. The settlement had to be accepted within 60 days of the date of the letter. *Id.* at ¶ 3.

The Dales, through their counsel, submitted an FHA with extensive financial documentation demonstrating their net worth, assets, and income and requesting the Receiver review their financial condition to determine if an exception to the Court-approved settlement parameters was warranted. *Id.* at ¶ 4.

### III.   SETTLEMENT TERMS

The FHA reveals that the Dales' assets and income are insufficient to repay their full Profit Amount. The Dales are elderly and mostly retired and therefore have limited income. Their primary assets consist of their home, a condominium located in Thousand Oaks, California, and two investment properties, their savings

1 (cash, investment, and retirement accounts), and a small consulting business. The
2 home and investment properties are all encumbered by sizable mortgages, with two
3 mortgages on the home. The investment properties have not generated any income
4 and, in the aggregate, have operated at a loss the last few years. *Id.* at ¶ 5.

5       Accordingly, the Receiver and the Dales negotiated a settlement agreement
6 ("Settlement Agreement"), subject to Court approval ("Approval Order"), pursuant
7 to which the Dales will pay a total of $150,000 to the Receiver - $10,000 to be paid
8 within ten days of the Dales receipt of written notice of entry of the Approval Order
9 and the remaining $140,000 to be paid within one year of entry of the Approval
10 Order ("Final Payment Date"). The Dales may pay the remaining $140,000 (or part
11 thereof) at any time prior to the Final Payment Date, in their sole discretion. *Id.* at
12 ¶ 6.

13       To secure payment of the settlement amount, the Dales have executed a
14 Promissory Note and Deed of Trust on their home and the investment properties in
15 favor of the Receiver. The Receiver will record the Deed of Trust upon entry of the
16 Approval Order. *Id.* at ¶ 7. A copy of the Settlement Agreement is attached to the
17 Kudla Declaration as Exhibit 1. Copies of the Promissory Note and Deed of Trust
18 are attached to the Settlement Agreement as Exhibits A and B.

19       In the event the Dales default under the Settlement Agreement, the Dales have
20 also signed a stipulated judgment in favor of the Receiver in the full Profit Amount
21 $1,574,840.64 ("Stipulated Judgment"). *Id.* at ¶ 8. The Stipulated Judgment, a copy
22 of which is attached to the Settlement Agreement as Exhibit C, is to be held by the
23 Receiver and not filed or enforced unless and until the Dales default on their
24 payments under the Settlement Agreement. *Id.* The Receiver now requests Court
25 approval of the Settlement Agreement, including the Stipulated Judgment,
26 Promissory Note, and Deed of Trust. *Id.*

## IV. DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial. See Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates. See *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); see also Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy"). A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The approval of a proposed compromise negotiated by a court appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266 67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises. In passing on the proposed compromise, the Court should consider the following:

    a.    The probability of success in litigation;

    b.    The difficulties, if any, to be encountered in the matter of collection;

1         c.      The complexity of the litigation involved and the expense,
2 inconvenience, and delay necessarily attending; and

3         d.      The paramount interest of the creditors and a proper deference to their
4 reasonable views in the premises.

5 *Woodson*, 839 F.2d at 620.

6       Here, the Receiver has weighed the likely costs and benefits of commencing
7 an action against the Dales, obtaining a judgment, and enforcing a judgment.
8 Preparation of a motion for summary judgment would involve considerable expense.
9 While the Receiver would very likely prevail, the collectability of a judgment is the
10 primary concern. Kudla Decl. at ¶ 9.

11       As discussed above, the Dales' assets and income are insufficient to repay
12 their full Profit Amount. The Dales are elderly and mostly retired and therefore
13 have limited income. Their primary assets consist of their home, a condominium
14 located in Thousand Oaks, California, and two investment properties, their savings
15 (cash, investment, and retirement accounts), and a small consulting business. The
16 home and investment properties are all encumbered by sizable mortgages, with two
17 mortgages on the home.

18       The Settlement Agreement generates $150,000 for the receivership estate
19 without any litigation. *Id.* at ¶ 10. If the Receiver were to proceed with the filing of
20 an action against the Dales, it is unlikely the net recovery would be greater than
21 $150,000 and may well be considerably less. *Id.* Moreover, if the Dales default on
22 the payments due under the Settlement Agreement, the Receiver can submit the
23 Stipulated Judgment for entry without further litigation. *Id.* The Receiver can also
24 exercise his rights under the Promissory Note and Deed of Trust, including
25 foreclosing on the real properties held by the Dales. *Id.* The Receiver believes the
26 Settlement Agreement is in the best interests of the receivership estate, and therefore
27 asks that it be approved. *Id.*

28

## V. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement, including the Stipulated Judgment, Promissory Note, and Deed of Trust.

Dated: August 19, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN