ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,

Defendants,

OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC

Relief Defendants.

Case No. CV-14-07249-SJO (FFMx)

**DECLARATION OF AARON J. KUDLA IN SUPPORT OF THE RECEIVER'S MOTION FOR APPROVAL OF SETTLEMENT WITH SEYMOUR AND BARBARA PHILLIPS**

Date: October 31, 2016
Time: 10:00 a.m.
Ctrm: 1 - 2nd Floor
Judge: Hon. S. James Otero

I, Aaron J. Kudla, declare:

1. I am a Certified Public Accountant and attorney at Trigild, Inc., the company of William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"). I make this declaration in support of the Receiver's Motion for Approval of Settlement with Seymour and Barbara Phillips. I have personal knowledge of the facts stated herein, and if called upon to do so, I could and would personally and competently testify to them.

2. In August 2015, the Phillips contacted the Receiver's counsel, through their attorney and accountant, who stated the Phillips wished to settle the claims against them. The accounting of the Phillips' transfers to and from NASI had not yet been completed, and therefore we advised the Phillips that the Receiver would send them a demand letter when the accounting was completed and they could settle the claims at that time.

3. Once the accounting of the Phillips' transfers was completed, I determined they received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. The total Profit Amount paid to them is $297,804.67.

4. Pursuant to the Court's order approving the Clawback Procedures Motion (Dkt. No. 72), I mailed a demand letter to the Phillips stating their Profit Amount and giving them the option to settle the matter without litigation for 70% of the Profit Amount. The settlement had to be accepted within 60 days of the date of the letter.

5. The Phillips did not respond, however, so a complaint was filed against them in July 2016. After being served with the Complaint, the Phillips contacted the

Receiver, reiterated their desire to settle, and explained that they did not receive the demand letter.

6. In light of the Phillips' efforts to settle the claims against them before the Receiver's demand letter was sent, the Receiver has agreed, subject to Court approval, to settle the claims for 70% of their Profit Amount ($208,463.26) even though they did not accept the 70% settlement offer in the 60-day time period applicable to all Net Winners. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

7. The Phillips' desire and intention to settle the Receiver's claims against them is evident from the fact that they contacted the Receiver in advance of his demand letter being sent to them, acknowledged that they are Net Winners, and stated their intention to settle. Although they failed to accept the 70% settlement offer in the required 60-day window, the delay appears to be due to the fact that they did not receive the demand letter. The Phillips moved their residence after the demand letter was sent, so it is possible the demand letter was lost in the mail or inadvertently discarded.

8. The Settlement Agreement generates 70% of the Profit Amount without any further litigation. The Phillips have wired the proposed settlement amount ($208,436.26) to the receivership bank account, which is being held by the Receiver in trust pending approval of this Motion. Under the Phillips' unique circumstances, the Receiver believes the Settlement Agreement is fair and reasonable and in the best interests of the receivership estate, and therefore asks that it be approved.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 26th day of September 2016, at San Diego, California.

AARON J. KUDLA

# EXHIBIT A

## SETTLEMENT & RELEASE AGREEMENT

This SETTLEMENT & RELEASE AGREEMENT ("**Agreement**"), dated as of September 13, 2016, is made by and between WILLIAM HOFFMAN of Trigild, Inc. ("**Receiver**"), in his capacity as Court-appointed permanent receiver for NATIONWIDE AUTOMATED SYSTEMS, INC., and its subsidiaries and affiliates, and SEYMOUR G. PHILLIPS, an Individual, SEYMOUR G. PHILLIPS, CO-TRUSTEE OF THE PHILLIPS FAMILY TRUST, BARBARA J. PHILLIPS, an Individual, BARBARA J. PHILLIPS, CO-TRUSTEE OF THE PHILLIPS FAMILY TRUST (collectively, "**Transferee**").

## RECITALS

A. On September 17, 2014, the Securities and Exchange Commission ("**Commission**") filed a Complaint in the United States District Court for the Central District of California ("**District Court**") against Defendants Nationwide Automated Systems, Inc. ("**NASI**"), Joel Gillis and Edward Wishner. Concurrently with filing the Complaint, the Commission filed an Ex Parte Application for a Temporary Restraining Order ("**TRO**"), including the appointment of a temporary receiver for NASI, its subsidiaries and affiliates ("Receivership Entities").

B. The District Court granted the Ex Parte Application and entered the TRO on September 30, 2014, including appointment of the Receiver on a temporary basis. On October 29, 2014, the Court entered a Preliminary Injunction Order, including appointment of the Receiver on a permanent basis.

C. The Receiver alleges that during the last seven years, Transferee received **$297,804.67** ("**Profit Amount**") from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. The Receiver has asserted claims against Transferee for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act. Transferee has disputed the Receiver's claims.

D. The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1. Court Approval. All aspects of this Agreement are subject to approval by the District Court by way of an order approving this Agreement that is not subject to stay ("Court Approval"). The Receiver will promptly seek Court Approval upon execution of this Agreement by all parties.

2. Payment. Transferee shall pay to the Receiver $208,463.26 [70% of the Profit Amount] by wire transfer in one lump sum paid within three business days of Court Approval. (the "Payment"). The Receiver shall provide wire transfer information to the Transferees. The

Receiver agrees to hold the Payment in trust and such funds shall not be available for distribution by the Receiver for any reasons, until the Court entered an order for Court Approval as defined in paragraph 1, above. In the event the Court does not enter an order for Court Approval by November 30, 2016, then this Agreement shall be null and void. The Receiver shall immediately return the entire Payment to the Transferee within 3 business days of 1) the Court denial of a motion to approve this Agreement, or 2) the failure of the Court to enter an order by November 30, 2016, whichever is sooner.

3. Mutual Release. On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferee on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the Transfers, all of which are hereinafter called, "**Released Claims**."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true. Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein. It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown. The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

4. Voluntary Signing. Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

5. Independent Counsel. Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

6. Governing Law and Venue. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

7. Waiver/Amendment. No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement. Amendment of this Agreement may be made only by written agreement signed by the parties.

8. Fax and Counterparts. This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original.

9. Attorneys' Fees and Costs. The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof. If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

10. Notices. Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:

Seymour and Barbara Phillips
555 Barrington Ave., Apt 207
Los Angeles, CA 90049

With a copy to:

Sharon Z. Weiss
Bryan Cave LLP
120 Broadway, Suite 300
Santa Monica, CA 90401
Attn: Ted Fates, Esq.

To the Receiver:
William Hoffman, Receiver
c/o Allen Matkins
501 W. Broadway, 15th Floor
San Diego, CA 92101
Attn: Ted Fates, Esq.

TRANSFEREE:

By: ______________________
SEYMOUR G. PHILLIPS, an Individual

By: ______________________
SEYMOUR G. PHILLIPS, CO-TRUSTEE OF THE PHILLIPS FAMILY TRUST

By: ______________________
BARBARA J. PHILLIPS, an Individual

By: ______________________
BARBARA J. PHILLIPS, CO-TRUSTEE OF THE PHILLIPS FAMILY TRUST

WILLIAM HOFFMAN OF TRIGILD, INC., COURT-APPOINTED PERMANENT RECEIVER FOR NATIONWIDE AUTOMATED SYSTEMS, INC., AND ITS SUBSIDIARIES AND AFFILIATES

By: ______________________
WILLIAM HOFFMAN, Receiver