ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax:   (213) 620-8816
E-Mail: dzaro@allenmatkins.com
         thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax:   (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>    Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>    Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENTS WITH<br><br>(A) CAROLYN R. AND THOMAS P. THOMPSON, AND<br><br>(B) DAVID BISHOP, PATTY BISHOP, AND PLANET IMPORT, INC.;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:   December 5, 2016<br>Time:  10:00 a.m.<br>Ctrm:  10C, 10th Floor<br>Judge: Hon. S. James Otero |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 5, 2016, at 10:00 a.m. in Courtroom 10C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving settlement agreements with (a) Carolyn R. and Thomas P. Thompson, and (b) David Bishop, Patty Bishop, and their company Planet Import, Inc. ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition, if in paper format and exempted from electronic filing, with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This motion is made following conference of counsel pursuant to Local Rule 7-3.

Dated: November 4, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
DAVID R. ZARO
EDWARD G. FATES
TIM C. HSU

By: /s/ *TIM C. HSU*
TIM C. HSU

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1059217.02/LA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Receiver seeks approval of two separate settlements with net winners (a) Carolyn R. and Thomas P. Thompson, individually and as Trustees of the Thompson Revocable Family Trust (the "Thompsons"), and (b) David Bishop, Patty Bishop, and their company Planet Import, Inc. (the "Bishops").

The Thompsons received profits from the NASI Ponzi scheme in the total amount of $369,234.00, but have requested and submitted an application for a reduced settlement on the basis of financial hardship. Similarly, the Bishops received profits in the total amount of $63,681.00, and have submitted an application for reduced settlement for financial hardship.

The Receiver has reviewed the financial hardship applications submitted by the Thompsons and the Bishops, which reveal that the Thompsons and the Bishops are unable to pay the full amount of profits they received and have limited income and assets such that an reduced settlement on the basis of hardship is warranted. The parties have since negotiated terms and reached settlement agreements, subject to Court approval, pursuant to which the Thompsons will pay $29,315.00, and the Bishops will pay $25,000.00 to the receivership. The Receiver believes the proposed settlements, which generate a total cash recovery for the receivership of $54,315.00, are in the best interests of the receivership estate, and therefore requests the settlements be approved.

## II. BACKGROUND FACTS

**A. The Receiver's Appointment And Authority To Pursue Net Winners.**

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC alleges NASI raised money from investors by selling them Automated Teller

Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. Dkt. No. 3. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. *Id.* The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors. *Id.*

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things, the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate. *Id.*

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). *Id.* On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

**B.     The Thompsons' Hardship Application And Settlement Terms.**

The Receiver completed his accounting of the Thompsons' transfers and determined they received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 3. The total amount of net profit paid to them is $369,234.00. *Id.*

Pursuant to the Court's order approving the Clawback Procedures Motion, the Receiver mailed a demand letter on February 10, 2016 to the Thompsons stating their amount of profit and giving them the option to settle the matter without litigation for 70% of that amount. *Id.* at ¶ 4. The settlement had to be accepted within 60 days of the date of the letter. *Id.*

In April 2016, the Thompsons contacted the Receiver, through their attorney, and stated their wish to settle the claims against them on the basis of a financial hardship. *Id.* at ¶ 4. In response, the Receiver provided counsel with a hardship application. *Id.* at ¶ 4. However, the Thompsons did not did not submit their application and did not otherwise respond to the Receiver's communication, so a complaint for fraudulent transfer was filed against them on May 9, 2016. *Id.* at ¶ 4.

After the Receiver's complaint was filed, the Thompsons again contacted the Receiver, reiterated their desire to submit for a hardship settlement, and submitted their financial hardship application along with extensive financial documentation demonstrating their limited net worth, assets, and income, and requesting the Receiver review their financial condition to determine if an exception to the Court-approved settlement parameters was warranted. *Id.* at ¶ 5.

As reflected in the records submitted, the Thompsons are elderly, have limited income derived solely from social security, and their net monthly income is negative. *Id.* at ¶ 6. The Thompsons also have only limited assets in the form of a real property personal residence, and investment and retirement accounts. *Id.* The real property is significantly encumbered by two mortgages and the investment and retirement accounts contain only limited funds. *Id.* The Thompsons records also reflect that the Thompsons own no other significant assets. *Id.*

Based on the above, and after weighing the anticipated costs and risks associated with pursuing the pending action to judgment and seeking collection—which may not yield more net benefit to the estate than the amount the Thompsons will pay pursuant to the terms of their settlement—the Receiver determined that a

reduced settlement with the Thompsons is appropriate given their limited income and assets. *Id.* at ¶ 7.

Accordingly, the Receiver and the Thompsons negotiated a settlement agreement ("Thompson Settlement Agreement"), subject to Court approval, pursuant to which the Thompsons will pay a total of $29,315.00 to the Receiver within five business days from entry of an order approving the Thompson Settlement Agreement. *Id.* at ¶ 8, Ex. 1.

### C. The Bishops' Hardship Application And Settlement Terms.

The Receiver completed his accounting of the Bishops' transfers and determined they received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. The total Profit Amount paid to them is $63,681.00. *Id.* at ¶ 9.

Pursuant to the Court's order approving the Clawback Procedures Motion, the Receiver mailed a demand letter on July 12, 2016 to the Bishops stating their Profit Amount and giving them the option to settle the matter without litigation for 70% of that amount. The settlement had to be accepted within 60 days of the date of the letter. *Id.* at ¶ 10.

After receiving the Receiver's demand, the Bishops contacted the Receiver and stated their wish to settle the claims against them on the basis of a financial hardship. *Id.* at ¶ 11. In response, the Receiver provided the Bishops with a hardship application. *Id.* Thereafter, the Bishops submitted their completed application, along with extensive financial documentation demonstrating their limited net worth, assets, and income, for the Receiver to determine whether an exception to the Court-approved settlement parameters was warranted. *Id.*

As reflected in the records submitted, the Bishops' sole source of income is from their small business but business revenue has declined and their estimated monthly expenses exceed their project monthly income. *Id.* at ¶ 12. In addition, although the Bishops own real property, the property is their personal residence and

1  is significantly encumbered by a mortgage and a balanced owned on a home-equity
2  line of credit. *Id.* The Bishops also have two children whom they support with one
3  still in high school. *Id.*
4        Based on the above, and after weighing the anticipated costs and risks
5  associated with pursuing an action to judgment and seeking collection—which may
6  not yield more net benefit to the estate than the amount the Bishops will pay
7  pursuant to the terms of their settlement—the Receiver determined that a reduced
8  settlement with the Bishops is appropriate given their limited income and assets. *Id.*
9  at ¶ 13.
10       Accordingly, the Receiver and the Bishops negotiated a settlement agreement
11 ("Bishop Settlement Agreement"), subject to Court approval ("Approval Order"),
12 pursuant to which the Bishops will pay a total of $25,000.00 to the Receiver within
13 seven calendar days from entry of an order approving the Bishop Settlement
14 Agreement. *Id.* at ¶ 14, Ex. 2. In addition, the Bishops agreed to and executed a
15 Stipulated Judgment of Disgorgement for $63,681.00—representing the full amount
16 of profits they received—which may be enforced by the Receiver if the Bishops fail
17 to pay the settlement amount as required. *Id.*

### III.  DISCUSSION

19       A federal equity receiver's power to compromise claims is subject to court
20 approval. As noted by the Ninth Circuit Court of Appeals in *SEC v. Hardy*,
21 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an
22 equity receivership and to determine the appropriate action to be taken in the
23 administration of the receivership is extremely broad." With regard to settlements
24 entered into by a federal equity receiver, the Court's supervisory role includes
25 reviewing and approving those settlements in light of federal court policy to
26 promote settlements before trial. See Fed. R. Civ. P. 16(c), Advisory Committee
27 Notes.
28

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates.  See *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); see also Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy").  A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable."  *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise negotiated by a court appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266 67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises.  In passing on the proposed compromise, the Court should consider the following:

    a.    The probability of success in litigation;

    b.    The difficulties, if any, to be encountered in the matter of collection;

    c.    The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

    d.    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the costs and likely benefit of continuing the action against the Thompsons and enforcing a judgment therefrom.  While the Receiver is confident he would ultimately prevail in his action against the Thompsons, preparation of a motion for summary judgment would involve considerable expense for the receivership estate, and the collectability of a judgment

against the Thompsons remains a primary concern.  As stated above, the Thompsons have very limited assets and income.  Therefore, it is unlikely the Receiver would be able to collect more from a judgment than what the Thompsons have agreed to pay pursuant to the Thompson Settlement Agreement, and the expenses of obtaining and enforcing a judgment could even exceed the ultimate recovery.  The Thompson Settlement Agreement, on the other hand, generates an immediate $29,315.00 for the receivership estate without further litigation or expense.  Accordingly, the Receiver believes the Thompson Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved.

Similarly, the Receiver has weighed the costs and likely benefit of pursuing an action against the Bishops and enforcing a judgment therefrom.  However, as with the Thompsons, the Bishops have very limited assets and income.  Thus, while the Receiver is confident he would ultimately prevail in pursuing such an action against the Bishops, it would be unlikely that the Receiver could collect more than what the Bishops have agreed to pay in settlement.  The Bishop Settlement Agreement, on the other hand, generates an immediate $25,000.00 for the receivership estate without litigation or expense and the payment obligation is further secured by the Stipulated Judgment of Disgorgement.  Accordingly, and as with the Thompsons, the Receiver believes the Bishop Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved.

## IV.   CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Thompson Settlement Agreement and the Bishop Settlement Agreement.

| | | |
|---|---|---|
| 1 | Dated: November 4, 2016 | ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP |
| 2 | | DAVID R. ZARO |
| 3 | | EDWARD G. FATES<br>TIM C. HSU |
| 4 | | |
| | | By: /s/ *TIM C. HSU* |
| 5 | | TIM C. HSU |