ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>DECLARATION OF AARON J. KUDLA IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENTS WITH<br><br>(A) CAROLYN R. AND THOMAS P. THOMPSON, AND<br><br>(B) DAVID BISHOP, PATTY BISHOP, AND PLANET IMPORT, INC.<br><br>Date:  December 5, 2016<br>Time:  10:00 a.m.<br>Ctrm:  10C, 10th Floor<br>Judge: Hon. S. James Otero |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1059218.01/LA

# DECLARATION OF AARON J. KUDLA

I, Aaron J. Kudla, declare:

1. I am a Certified Public Accountant and attorney at Trigild, Inc., the company of William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"). I make this declaration in support of the Receiver's Motion for Approval of Settlements with (A) Carolyn R. and Thomas P. Thompson, and (B) David Bishop, Patty Bishop, and Planet Import, Inc. I have personal knowledge of the facts stated herein, and if called upon to do so, I could and would personally and competently testify to them.

2. In connection with my review and analysis of business and other records relating to the Receivership Entities, I determined that investors Carolyn R. and Thomas P. Thompson, individually and as Trustees of the Thompson Revocable Family Trust ("Thompsons"), received transfers from the Receivership Entities in excess of amounts paid to the Receivership Entities. The Thompsons received a net profit of $369,234.00.

3. On or about February 10, 2016, I mailed a demand letter to the Thompsons, stating the amount of profit they received and giving them the option to settle the matter without litigation for 70% of that amount. The settlement had to be accepted within 60 days of the date of the letter.

4. In April 2016, the Thompsons responded to my letter, through their attorney, and stated their wish to settle the claims against them on the basis of a financial hardship. In response, I provided counsel with a hardship application. However, the Thompsons did not did not submit their application and did not otherwise respond to the my communication, so a complaint for fraudulent transfer was filed against them on May 9, 2016.

5. After the complaint against the Thompsons was filed, the Thompsons again contacted me, reiterated their desire to submit for a hardship settlement, and submitted their financial hardship application along with extensive financial documentation demonstrating their limited net worth, assets, and income, and requesting a review of their financial condition to determine if an exception to the Court-approved settlement parameters was warranted.

6. I reviewed the Thompsons' financial hardship application on behalf of the Receiver. The Thompsons' application reveals that they are elderly, have limited income derived solely from social security, and their net monthly income is negative. The Thompsons also have only limited assets in the form of a real property personal residence, and investment and retirement accounts. The real property is significantly encumbered by two mortgages and the Thompsons' investment and retirement accounts contain only limited funds. The records submitted by the Thompsons also reflect that the Thompsons own no other significant assets.

7. Based on the Thompsons' financial hardship application, and on behalf of the Receiver, I determined that the Thompsons would be unable to satisfy a judgment in the amount of the profits they received. Therefore, and after weighing the anticipated costs and risks associated with pursuing the pending action to judgment and seeking collection—which may not yield more net benefit to the estate than the amount the Thompsons will pay pursuant to the terms of their settlement—I determined on behalf of the Receiver that a reduced settlement outside the Court approved settlement parameters is reasonable and appropriate given the Thompsons' limited net worth, income, and assets.

8. Accordingly, the Receiver and the Thompsons, through their respective counsel, negotiated a settlement agreement ("Thompson Settlement Agreement"). Under the Thompson Settlement Agreement, the Thompsons will pay a total of $29,315.00 to the Receiver within five business days of the Court's approval of the

Thompson Settlement Agreement. A true and correct copy of the Thompson Settlement Agreement is attached hereto as **Exhibit 1**.

9. As with the Thompsons, and in connection with my review and analysis of business and other records relating to the Receivership Entities, I determined that investors David Bishop, Patty Bishop, and their company Planet Import, Inc. (the "Bishops"), received transfers from the Receivership Entities in excess of amounts paid to the Receivership Entities. The Bishops received a net profit of $63,681.00.

10. On or about July 12, 2016, I mailed a demand letter to the Bishops, stating the amount of profit they received and giving them the option to settle the matter without litigation for 70% of that amount. The settlement had to be accepted within 60 days of the date of the letter.

11. After receiving my demand, the Bishops responded to my letter, and stated their wish to settle the claims against them on the basis of a financial hardship. In response, I provided the Bishops with a hardship application. Thereafter, the Bishops submitted their completed application, along with extensive financial documentation demonstrating their limited net worth, assets, and income, and requesting a review of their financial condition to determine whether an exception to the Court-approved settlement parameters was warranted.

12. I reviewed the Bishops' financial hardship application on behalf of the Receiver. The Bishops' application reveals that the Bishops' sole source of income is from their small business but business revenue has declined and their current monthly expenses exceed their current monthly income. In addition, although the Bishops own real property, the property is their personal residence and is significantly encumbered by a mortgage and a balanced owed on a home-equity line of credit. The Bishops also have two children whom they support with one still in high school.

13. Based on the Bishops' financial hardship application, and on behalf of the Receiver, I determined that the Bishops would be unable to satisfy a judgment in the amount of the profits they received. Therefore, and after weighing the anticipated costs and risks associated with pursuing an action to judgment and seeking collection—which may not yield more net benefit to the estate than the amount the Bishops will pay pursuant to the terms of their settlement—I determined on behalf of the Receiver that a reduced settlement outside the Court approved settlement parameters is reasonable and appropriate given the Bishops' limited net worth, income, and assets.

14. Accordingly, the Receiver and the Bishops, through their respective counsel, negotiated a settlement agreement ("Bishops Settlement Agreement"). Under the Bishops Settlement Agreement, the Bishops will pay a total of $25,000.00 to the Receiver within seven business days of the Court's approval of the Bishops Settlement Agreement. In addition, the Bishops agreed to and executed a Stipulated Judgment of Disgorgement for $63,681.00—representing the full amount of profits they received—which may be enforced by the Receiver if the Bishops fail to pay the settlement amount as required. True and correct copies of the Bishops Settlement Agreement and related Stipulated Judgment of Disgorgement is attached hereto as **Exhibit 2**.

15. The Receiver believes the Thompson Settlement Agreement and the Bishops Settlement Agreement are in the best interests of the receivership estate, and therefore asks that they be approved.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 1st day of November 2016, at San Diego, California.

_____
AARON J. KUDLA

EXHIBIT 1

## SETTLEMENT & RELEASE AGREEMENT

This SETTLEMENT & RELEASE AGREEMENT ("**Agreement**"), dated as of _Oct. 24_, 2016, is made by and between WILLIAM HOFFMAN of Trigild, Inc. ("**Receiver**"), in his capacity as Court-appointed permanent receiver for NATIONWIDE AUTOMATED SYSTEMS, INC., and its subsidiaries and affiliates, and CAROLYN R. THOMPSON, individually and as Trustee of THE THOMPSON REVOCABLE FAMILY TRUST, and THOMAS P. THOMPSON, individually and as Trustee of THE THOMPSON REVOCABLE FAMILY TRUST (collectively, "**Transferee**").

### RECITALS

A. On September 17, 2014, the Securities and Exchange Commission ("**Commission**") filed a Complaint in the United States District Court for the Central District of California ("**District Court**") against Defendants Nationwide Automated Systems, Inc. ("**NASI**"), Joel Gillis and Edward Wishner. Concurrently with filing the Complaint, the Commission filed an Ex Parte Application for a Temporary Restraining Order ("**TRO**"), including the appointment of a temporary receiver for NASI, its subsidiaries and affiliates ("**Receivership Entities**").

B. The District Court granted the Ex Parte Application and entered the TRO on September 30, 2014, including appointment of the Receiver on a temporary basis. On October 29, 2014, the Court entered a Preliminary Injunction Order, including appointment of the Receiver on a permanent basis.

C. The Receiver alleges that during the last seven years, Transferee received payments from the from the Receivership Entities ("Transfers") in the amount of **$369,234.00** ("**Profit Amount**") in excess of any amounts paid or value provided to the Receivership Entities. The Receiver has asserted claims against Transferee for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act. Transferee has disputed the Receiver's claims.

D. The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1. Court Approval. All aspects of this Agreement are subject to approval by the District Court by way of an order approving this Agreement ("Court Approval"). The Receiver will promptly seek Court Approval upon execution of this Agreement by all parties.

2. Payment. Transferee shall pay to the Receiver $29,315.00 in one lump sum paid within five business days of Court Approval.

EXHIBIT 1
PAGE 6

3. <u>Mutual Release</u>. On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferee on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the Transfers, all of which are hereinafter called, "**Released Claims**."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true. Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein. It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown. The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

4. <u>Voluntary Signing</u>. Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

5. <u>Independent Counsel</u>. Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

6. <u>Governing Law and Venue</u>. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

7. <u>Waiver/Amendment</u>. No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach of any provision of this Agreement is not a

waiver of any other breach of the same or of any other provision of this Agreement. Amendment of this Agreement may be made only by written agreement signed by the parties.

       8.     Counterparts. This Agreement may be executed by email, fax and/or in counterparts and, if so executed, each counterpart shall have the full force and effect of an original.

       9.     Attorneys' Fees and Costs. The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof. If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

       10.    Notices. Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:

Thomas Thompson
10222 E. Southwind Lane #1055
Scottsdale, AZ 85262

With a copy to:

Kevin Bonner
Fennemore Craig, P.C.
2394 E. Camelback, Ste. 600
Phoenix, AZ 85016

To the Receiver:

William Hoffman, Receiver
c/o Allen Matkins
501 W. Broadway, 15th Floor
San Diego, CA 92101
Attn: Ted Fates, Esq.

-3-

EXHIBIT 1
PAGE 8

TRANSFEREE:

By: _____
CAROLYN R. THOMPSON, an Individual

By: _____
CAROLYN R. THOMPSON, TRUSTEE
OF THE THOMPSON REVOCABLE
FAMILY TRUST

By: _____
THOMAS P. THOMPSON, an Individual

By: _____
THOMAS P. THOMPSON, TRUSTEE OF
THE THOMPSON REVOCABLE FAMILY
TRUST


WILLIAM HOFFMAN OF TRIGILD, INC.,
COURT-APPOINTED PERMANENT RECEIVER
FOR NATIONWIDE AUTOMATED SYSTEMS,
INC., AND ITS SUBSIDIARIES AND
AFFILIATES


By: _____
WILLIAM HOFFMAN, Receiver

2144769 1/099501.0023

-5-

EXHIBIT 1
PAGE 9

EXHIBIT 2

## SETTLEMENT & RELEASE AGREEMENT

This SETTLEMENT & RELEASE AGREEMENT ("**Agreement**"), dated as of October 20, 2016, is made by and between WILLIAM HOFFMAN of Trigild, Inc. ("**Receiver**"), in his capacity as Court-appointed permanent receiver for NATIONWIDE AUTOMATED SYSTEMS, INC., and its subsidiaries and affiliates, and DAVID BISHOP, an Individual, PATTY BISHOP, an Individual, and PLANET IMPORT, INC., a California corporation (collectively, "**Transferee**").

## RECITALS

A.    On September 17, 2014, the Securities and Exchange Commission ("**Commission**") filed a Complaint in the United States District Court for the Central District of California ("**District Court**") against Defendants Nationwide Automated Systems, Inc. ("**NASI**"), Joel Gillis and Edward Wishner. Concurrently with filing the Complaint, the Commission filed an Ex Parte Application for a Temporary Restraining Order ("**TRO**"), including the appointment of a temporary receiver for NASI, its subsidiaries and affiliates ("Receivership Entities").

B.    The District Court granted the Ex Parte Application and entered the TRO on September 30, 2014, including appointment of the Receiver on a temporary basis. On October 29, 2014, the Court entered a Preliminary Injunction Order, including appointment of the Receiver on a permanent basis.

C.    The Receiver alleges that during the last seven years, Transferee received **$63,681.00** ("**Profit Amount**") from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. The Receiver has asserted claims against Transferee for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Voidable Transactions Act. Transferee has disputed the Receiver's claims.

D.    The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1.    Payment. Transferee shall pay $25,000 to the Receiver within seven (7) calendar days of entry of an order by the District Court approving this Agreement.

2.    Stipulated Judgment. Contemporaneous with the execution of this Agreement, Transferee has signed the Stipulated Judgment for Disgorgement in favor of the Receiver for the full Profit Amount attached hereto as Exhibit A and delivered the same to the Receiver ("**Stipulated Judgment**"). The Receiver shall hold the Stipulated Judgment and not seek to have it entered or enforced against Transferee unless and until Transferee defaults on the payment(s) due pursuant to Section 1 above and fails to cure such default within three business days of being notified of the default by the Receiver or his counsel. If such default occurs and is

EXHIBIT 2
PAGE 10

not cured within three business days of Transferee receiving notice, the Receiver may, in his sole discretion, take all steps necessary to have the Stipulated Judgment entered and enforced against Transferee by all available means.

3. Mutual Release. On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferee on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the Transfers, all of which are hereinafter called, "**Released Claims**."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true. Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein. It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown. The releases herein given shall be and remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

4. Voluntary Signing. Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

5. Independent Counsel. Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

6. Governing Law and Venue. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

7. <u>Waiver/Amendment</u>. No breach of any provision of this Agreement can be waived unless in writing. Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement. Amendment of this Agreement may be made only by written agreement signed by the parties.

8. <u>Fax and Counterparts</u>. This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original.

9. <u>Attorneys' Fees and Costs</u>. The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof. If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

10. <u>Notices</u>. Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:
David Bishop, Patty Bishop and Planet Import, Inc.
c/o KAEDIAN LLP
895 Dove Street, Suite 350
Newport Beach, CA 92660
Attn: Teresa Cespedes Alarcon, Esq

To the Receiver:
William Hoffman, Receiver
c/o Allen Matkins
501 W. Broadway, 15th Floor
San Diego, CA 92101
Attn: Ted Fates, Esq.

TRANSFEREE:

By: _____
    DAVID BISHOP, an Individual

By: _____
    PATTY BISHOP, an Individual

PLANET IMPORT, INC., a California corporation:

By: _____

Name: David L. Bishop

Its: _____


WILLIAM HOFFMAN OF TRIGILD, INC.,
COURT-APPOINTED PERMANENT RECEIVER
FOR NATIONWIDE AUTOMATED SYSTEMS,
INC., AND ITS SUBSIDIARIES AND
AFFILIATES

By: _____
    WILLIAM HOFFMAN, Receiver

EXHIBIT 2
PAGE 13

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM HOFFMAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM HOFFMAN, FEDERAL EQUITY RECEIVER FOR NATIONWIDE AUTOMATED SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID BISHOP, an Individual, PATTY BISHOP, an Individual, and PLANET IMPORT, INC., a California corporation, <br><br> Defendants. | Case No. xxx <br><br> **STIPULATED JUDGMENT OF DISGORGEMENT** |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

846955.01/SD

EXHIBIT 2
PAGE 14

## STIPULATED JUDGMENT OF DISGORGEMENT

1. On October 29, 2014, and pursuant to a Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver ("Appointment Order"), entered in the action styled *Securities and Exchange Commission, Plaintiff vs. Nationwide Automated Systems, Inc., Joel Gillis, and Edward Wishner, Defendants, and Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, Relief Defendants*, United States District Court, Central District of California, Case No. 14-cv-07249-SJO (FFMx) ("SEC Action"), William Hoffman ("Receiver") was appointed as permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI") and its subsidiaries and affiliates. On November 18, 2014, the Court confirmed that Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC are affiliates of NASI and therefore included in the receivership (collectively with NASI, the "Receivership Entities").

2. Pursuant to the terms of the Appointment Order, the Receiver is charged with, among other things, investigating the activities of the Receivership Entities, gathering and recovering assets of the Receivership Entities, including pursuing claims to recover those assets, as necessary. Specifically, Section XII of the Appointment Order vests the Receiver with, among other authority, the "full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control" all property of the Receivership Entities.

3. The Securities and Exchange Commission has alleged in the SEC Action that Defendants NASI, Gillis, and Wishner operated a Ponzi scheme. Defendants Gillis and Wishner has also been criminally indicted on charges of wire

1  fraud and conspiracy and have entered guilty pleas in the criminal case. After
2  obtaining and analyzing business and other records relating to the Receivership
3  Entities, the Receiver has independently concluded that Defendants operated a Ponzi
4  scheme and that returns paid to investors in NASI were paid not from actual income
5  on investments, but from funds received from later investors.

6      4.    In connection with his review and analysis of business and other records
7  relating to the Receivership Entities, the Receiver determined that DAVID BISHOP,
8  an Individual, PATTY BISHOP, an Individual, and PLANET IMPORT, INC., a
9  California corporation (collectively, "BISHOP") received a total of $63,681.00, in
10 payments from the Receivership Entities in excess of their total investment in or
11 other value provided to the Receivership Entities.

12     5.    Based on the conclusions, determinations, and admissions above, the
13 Receiver sent BISHOP a disgorgement demand, requesting that BISHOP return the
14 amount of $63,681.00 to the receivership estate.

15     6.    BISHOP agrees the Receiver is entitled to a judgment of disgorgement
16 in the amount of $63,681.00 and consents to entry of such judgment against
17 BISHOP, including as against all of their community property and separate property.

18
19 **IT IS SO STIPULATED.**
20
21 Dated: _____, 2016    ALLEN MATKINS LECK GAMBLE
                                      MALLORY & NATSIS LLP
22
23                              By: _____
                                   EDWARD G. FATES
24                                   Attorneys for Receiver
                                   WILLIAM HOFFMAN
25
26 Dated: 10-20-, 2016           By: _____
                                   DAVID BISHOP, an Individual
27
28

EXHIBIT 2
PAGE 16

1 | Dated: 10-20- , 2016     By: _____
2 |                        PATTY BISHOP, an Individual
3 |
4 | Dated: 10-20- , 2016     By: _____
5 |                        PLANET IMPORT, INC., a California corporation
6 |
7 |                        Name: David Bishop
8 |                        Title: President

(Lines 9–28 blank)

EXHIBIT 2
PAGE 17