1  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   TIM C. HSU (BAR NO. 279208)
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
           thsu@allenmatkins.com
6
   EDWARD G. FATES (BAR NO. 227809)
7  501 West Broadway, 15th Floor
   San Diego, California 92101-3541
8  Phone: (619) 233-1155
   Fax: (619) 233-1158
9  E-Mail: tfates@allenmatkins.com

10 Attorneys for Receiver
   WILLIAM J. HOFFMAN
11

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14                           **WESTERN DIVISION**

15 | SECURITIES AND EXCHANGE          | Case No. CV-14-07249-SJO (FFMx)
   | COMMISSION,
16 |                                   | **RECEIVER'S ELEVENTH**
   |          Plaintiff,               | **INTERIM REPORT AND**
17 |                                   | **RECOMMENDATIONS**
   |     v.
18 |                                   | Ctrm: 1 - 2nd Floor
   | NATIONWIDE AUTOMATED              | Judge: Hon. S. James Otero
19 | SYSTEMS, INC.; JOEL GILLIS; and
   | EDWARD WISHNER,
20 |
   |          Defendants,
21 |
   | OASIS STUDIO RENTALS, LLC;
22 | OASIS STUDIO RENTALS #2, LLC; and
   | OASIS STUDIO RENTAL #3, LLC,
23 |
   |          Relief Defendants.

William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC ("Relief Defendants"), and their subsidiaries and affiliates, including Studios Maui Productions, LLC dba Akamai RV ("Receivership Entities"), hereby submits this eleventh report on his activities and findings to date, as well as his recommendations for the continued administration of the receivership estate ("Report"). This Report focuses on the Receiver's activities during the first quarter of 2017.

## I. EXECUTIVE SUMMARY

The Receiver has continued to carry out his duties under the Court's Preliminary Injunction Order, including taking necessary and appropriate actions to secure, preserve, and protect the assets of the Receiverships Entities. The Receiver has also continued operations of NASI's ATM business, as authorized by the Court. As previously discussed, the ATM business generates a steady, but modest amount of revenue.

As he did in the fourth quarter of 2016, the Receiver spent significant time in the first quarter on (a) pursuing Clawback Claims (as defined below) in the form of demand letters, Court-authorized settlements, and complaints filed against investors and other third parties who received profits from the Ponzi scheme ("Net Winners"); (b) efforts to identify, recover, and protect the assets of the Oasis Studio Rentals entities and their affiliates, including efforts to recover amounts owed to the entities or transferred from them to third parties; (c) communication with investors and reviewing documents provided, (d) reconstruction of accounting necessary for Clawback Claims, (e) reviewing and analyzing investor financial hardship applications and supporting financial documents, and (f) providing accounting and document support for the ongoing litigation against City National Bank and related parties.

The Receiver has continued his forensic accounting and investigation as necessary and appropriate to identify assets and potential claims to recover investor profits, referral fees, and other transfers to third parties ("Clawback Claims"). In April 2015, the Receiver obtained authority from the Court to pursue Clawback Claims, as well as approval of proposed procedures for such claims. To date, the Receiver has settled with 197 Net Winners pursuant to the Court-approved settlement procedures, for a total recovery of $31,306,835, with another $796,672 due in settlement payments. Recoveries from Net Winners, through the pursuit of Clawback Claims, will make up the majority of what is available to distribute to investors from the receivership estate (other than what is recovered through the City National Bank litigation). Accordingly, the pursuit of Clawback Claims, which to date has been very successful, should continue to be a primary focus.

As discussed below, the Receiver recommends the receivership remain in place as he continues to manage the ATM operations, investigate and recover assets, pursue Clawback Claims and settlements as necessary and appropriate, all with the goal of maximizing the value in the receivership estate for the benefit of investor victims.

## II. ATM OPERATIONS AND POTENTIAL SALE

The Receiver has continued operations of the NASI ATM machines, which consist of 148 ATMs operating at various hotels and other locations around the country and 91 non-operating ATMs that are outdated or need substantial repairs. Further, the Receiver's staff has continued business relationships with the ATM service vendors and the ATM locations to maximize the revenue into the receivership estate.

Revenue and expenses from ATM operations vary on a monthly basis depending on the amount of transactions for each ATM. During the first quarter, 10 ATMs were removed from hotels and other locations due to terminated leases and age of the ATM machines. The costs of upgrading these ATM machines would

likely exceed the revenue from them, so the Receiver determined not to upgrade them.

Gross revenues for January, February and March 2017 were $107,858, 98,712, and 98,782, respectively. The monthly net income from ATM operations (after payments to the ATM servicers and locations) was $6,525, $5,019, and $4,680, respectively, for a total of $16,224. The average monthly net income for the quarter was $5,408.

The revenue and net income is seasonal and is substantially higher during the second and third quarters as compared to the first and fourth quarters. This is due to higher demand resulting from summer vacations and travel.

**III. OASIS STUDIO RENTALS**

The Oasis Studio Rentals entities ("Oasis Entities") ran a business whereby they leased mobile dressing rooms (trailers) and trucks to transport the trailers to film and television studios to be used by actors and others on set during production. The Oasis Entities appear to have been funded almost entirely by NASI. At one point in time, the Oasis Entities owned most of the trucks and trailers. However, some of the trucks and trailers were apparently sold to various third parties with leaseback agreements to the Oasis Entities. The Receiver continues to investigate the true ownership and location of certain trucks and trailers.

On November 18, 2014, the Court entered its Order Approving the Receiver's First Report and Recommendations, which confirmed that the Oasis Entities are affiliates of NASI, and therefore within the scope of the receivership. Accordingly, the Receiver immediately took steps to identify, locate, and secure the assets of the Oasis Entities. Although the exact location and revenue generated by each vehicle is still being investigated, the Receiver continues to take necessary actions with the goals of: (1) identifying all vehicles purchased with NASI or Oasis funds, (2) tracing the purchase and sale of each vehicle to and from the Oasis Entities, (3) identifying income generated from vehicles owned or leased by the Oasis Entities and the

recipients of these funds, (4) obtaining possession of the vehicles owned by Oasis Entities, (5) pursing potential claims against third parties who improperly benefited from the leasing and/or sale of vehicles owned by Oasis Entities, and (6) selling vehicles owned by the Oasis Entities to maximize the recovery for the receivership estate.

In order to achieve the goals outlined above, the Receiver has (a) worked with counsel to subpoena records from numerous financial institutions and other sources, (b) provided significant forensic accounting and analysis of multiple bank accounts, cleared checks, wire transfers, checks deposited and existing contracts, (c) requested, obtained and reviewed DMV records showing the chain of registered title of vehicles identified by the Receiver, (d) reviewed and analyzed subpoena responses and supporting documents from dozens of suspected affiliated entities, including Fiji Rentals, LLC, and (e) worked to settle potential claims.

Prior to the receivership, the day-to-day operations of Oasis vehicles, including the arrangements to lease trailers to the studios, were managed by Robert Keller, Jr. ("Keller") with assistance from Defendant Ed Wishner's staff. The Receiver's counsel has served over a dozen subpoenas to parties associated with Keller, including the current entity Keller leases vehicles with studios, Fiji Rentals. The Receiver has received partial accounting and documents from a few parties, but significant accounting and requested documentation has not been provided. The Receiver has taken several depositions in order to gather more facts relating to potential claims against Keller, Fiji Rentals, and Fiji Rentals' principal, Damian Perillo. Among other things, it appears that Keller and Perillo have taken trailers that were being managed by Oasis pursuant to leases with their owners and converted the management/rental of those trailers to Fiji Rentals.

The Receiver prepared a complaint and issued a demand to Keller, Perillo, and Fiji Rentals for recovery of large amounts wrongfully taken from NASI and Oasis. In response to the letter, Perillo and Fiji Rentals produced certain requested

documents. The Receiver then made a follow-up settlement demand, which Keller, Perillo, and Fiji Rentals did not accept. Accordingly, the Receiver filed his complaint in Los Angeles Superior Court on July 12, 2016.

### A. Studios Maui

In a meeting with the Receiver, Wishner stated the Oasis Entities have as many as six trailers located in Hawaii under the name Studios Maui Productions ("Studios Maui"). The Receiver traced and confirmed the purchase of a business owning up to four vehicles, Akamai RV, from accounts owned by Oasis and NASI that were leased by Studios Maui. During a discussion between the Receiver's staff and counsel and Wishner, Wishner confirmed (a) the purchase of Akamai RV, (b) the shipment of two additional trailers owned by Oasis Entities from California to Hawaii and leased by Studios Maui, and (c) two additional trailers may have been purchased by Studios Maui. The day-to-day operations of Studios Maui were handled by Branscombe Richmond ("Richmond"), who resides in Hawaii.

After numerous attempts to contact Richmond and obtain information, the Receiver filed a motion to confirm the status of Studios Maui as an affiliate of NASI and the Oasis Entities, and therefore a receivership entity. Dkt. No. 93. The motion also asked for an order directing Richmond to turn over the assets, accounts, and records of Studios Maui to the Receiver. After the motion was filed, Richmond engaged counsel, who contacted the Receiver's counsel. Through counsel, the Receiver was able to arrange for Richmond to produce documents and information, as well as for an appraiser to inspect the four remaining trailers owned by Studios Maui located in Hawaii. The motion was then granted on September 15, 2015. Dkt. No. 97. The appraiser completed the appraisal during the first quarter of 2016. Unfortunately, the trailers are old, have not been maintained, and have very limited value. Richmond agreed to purchase two of the trailers for a total of $9,250. The Receiver continues to communicate with Richmond to reach a settlement or sell the

remaining two trailers through a third party re-seller to maximize the recovery therefrom.

## IV. FORENSIC ACCOUNTING

The Preliminary Injunction Order requires the Receiver to "make an accounting, as soon as practicable, to the Court and the SEC of the assets and financial condition of Defendant Nationwide Automated Systems, Inc." Dkt. No. 42, Part XII.E. Accordingly, the Receiver has undertaken to perform such an accounting. The Receiver has made progress in the review of available financial, accounting and banking records to reconstruct transactions of NASI, the Oasis Entities and other affiliated entities.

Reconstruction of financial and accounting documents is a central task to (a) determine who received funds from the Receivership Entities and how much they received, (b) prepare necessary tax filings, (c) determine the proper amount of profits of investors, and (d) determine the proper amounts of losses of investors. The Receiver's accounting personnel has worked diligently to create an accurate check register showing the checks paid by NASI to investors that cleared, not bounced, which is a critical and time-consuming task.

Due to the large size and length of time the Ponzi scheme operated, an enormous amount of information is required to be traced and verified. Reliable information about NASI's check register and similar information was either not available or not accurate, which required the Receiver's accounting personnel to reconstruct the ledger of transactions. Information from bank statements and cleared checks were used to create a schedule of checks paid by NASI to investors. On average, over 2,000 checks were paid by NASI to investors on a monthly basis in 2014.

In addition to the ongoing accounting of transactions in order to pursue Clawback Claims against select investors and third parties, the Receiver's staff is working to determine the amounts of losses later investors sustained. The Receiver

will continue to complete the forensic accounting required to pursue Clawback Claims for investor profits, referral fees, and other transfers, as well as the investor loss analysis.

## V. PENDING CLAWBACK CASES

As discussed above, the Receiver has settled with 197 Net Winners for a total recovery to the receivership estate of $31,306,835, with another $796,672 due in settlement payments still to be made. Another 150 demand letters to Net Winners are currently outstanding. The rate of settlements in relation to total expired demand letters (60-day deadline has expired) sent to Net Winners is very high – 62.8% (184 settlements without a complaint being filed and 13 settlements after a complaint was filed). The rate of settlements in relation to total demand letters mailed to Net Winners as of the date of this Report, including unexpired demands, is also quite high – 49.0%. Of course, not all Net Winners accept the Court-approved settlement proposal included in the demand letter and therefore complaints must be filed. To date, 37 complaints have been filed and 17 cases remain active.

Overall, the rate of cases filed (37) in relation to total expired demand letters (including settlements and outstanding demands) is remarkably low – only 9.2%. Further, the rate of currently active cases (17) in relation to total claims is even lower – only 4.2%. Only one case has made it past the discovery stage to a summary judgment motion. This case resulted in summary judgment being fully granted in favor of the Receiver and a final judgment being entered. Accordingly, the Receiver's pursuit of Clawback Claims has not only been very successful to date, but has also been extremely efficient.

## VI. CLAIMS AGAINST CITY NATIONAL BANK

For almost the entire duration of the NASI Ponzi scheme, which started in the late 1990s, the company ran its banking transactions through accounts at City National Bank ("CNB"). In addition, at least two CNB executives invested, directly or through a related entity, in NASI and therefore became familiar with NASI's

operations and purported investment returns. In light of these facts, the Receiver has gathered documents and investigated potential claims against City National Bank.

On May 4, 2016, the Court approved the Receiver's engagement of Newhouse Law Group and Girardi | Keese LLP as co-special counsel ("Special Counsel") to represent the Receiver in pursuing claims against CNB and related parties. Dkt. No. 150. On June 21, 2016, the Receiver filed his complaint against CNB, Royal Bank of Canada, a Canadian bank, Patrick Brian Fitzwilliams, and Betty Saleh Fitzwilliams in Los Angeles Superior Court, Case No. BC 624542. CNB filed a demurrer to the Receiver's complaint, which is pending.

As previously discussed, Special Counsel continues to work closely and coordinate efforts with class counsel in the related Los Angeles Superior Court actions against City National Bank entitled *Nairn v. City National Bank* (Case No. BC 606667), *Allison v. City National Bank* (Case No. BC 634285), as well as the federal court action pending in this Court entitled *Madison v. City National Bank*, Case No. 16-CV-00502-SJO (FFMx). In November 2016, the Receiver, Special Counsel, and the attorneys in the related cases attended a global mediation with CNB. Settlement discussions continue as of the date of this report.

In the *Nairn* case, the Los Angeles Superior Court granted a motion to dismiss based on Anti-SLAPP, which ruling is now on appeal. CNB has indicated it will file a similar motion to dismiss in the *Allison* case. The *Madison* case, which is in Federal Court, is awaiting a status conference, which was delayed because of the mediation.

### VII. POST-RECEIVERSHIP RECEIPTS AND DISBURSEMENTS

At the time the Receiver was appointed on September 30, 2014, NASI had approximately $461,000 in cash. Since then, the balance in the receivership estate has grown rapidly, primarily due to recoveries through Clawback Claims. By the end of 2015, the balance had increased to $5,695,473, by the end of the first quarter

of 2016, the balance had grown to $12,597,772, by the end of the second quarter of 2016, the balance had grown to $17,489,655, by the end of the third quarter of 2016, the balance had grown to $23,761,295, and by the end of the fourth quarter of 2016, the balance had grown to $27,893,271.

During the first quarter, (a) business operations received positive cash flow of $16,224 (total business income of $305,352 minus total business expenses of $289,128), (b) the Receiver obtained a total of $1,978,221 from Clawback Claims, (c) interest payments of $10,056 were received for Receivership funds deposited, and (d) total disbursements of $290,320 were paid to the Receiver and his Counsel for Court-approved fees and expenses incurred during the fourth quarter 2017 (their ninth fee applications, which were approved during the first quarter), resulting in an ending balance of $29,602,444, as of March 31, 2017. A Standardized Fund Accounting Report is attached hereto as Exhibit A.

In addition, the Receiver has already had significant recoveries from Clawback settlements in April 2017. An additional $674,385 has been recovered.

## VIII. INVESTOR COMMUNICATIONS

The Receiver has taken many steps to inform investors about the receivership, including establishing a website (www.nasi-receivership.com), a dedicated telephone line (858-242-1161), and a dedicated e-mail address (receiver@nasi-receivership.com). The website is designed to be investors' primary source of information about the receivership and provides basic information about receiverships, answers to commonly asked questions, status updates, pleadings filed in the case, and Court orders. In addition, the website has an investor questionnaire designed to obtain information from investors, including their contact information, investment amounts, ATM locations, and price paid per ATM. The investor questionnaire is a cost-effective method of obtaining information from investors, which the Receiver can then cross-reference and confirm or supplement with existing information. Thus far 1,263 investors have completed and submitted

investor questionnaires. The Receiver will continue to update the receivership website and review information and documents provided by investors. The Receiver's staff will also continue to monitor the Receivership's voicemail line, email address, fax line, and website questionnaires and respond accordingly. Investors are reminded to promptly contact the Receiver's office and provide their new contact information if their contact information changes.

As discussed above, the Receiver continues to devote considerable time and focus to the pursuit of Clawback Claims. However, as the pursuit of Clawback Claims winds down (which is expected to occur toward the end of the second quarter or beginning of the third quarter this year), the Receiver anticipates filing a motion for approval of procedures for the administration of claims of investors with net losses from the Ponzi scheme. Once such procedures have been approved by the Court, the Receiver will send notices to investors with instructions regarding the claims process.

## IX. RECOMMENDATIONS

The Receiver recommends the receivership continue and his investigation and accounting be allowed to proceed.

### A. ATM Operations

As discussed above, the ATM operations generate a modest amount of net revenue ($5,408 per month during the first quarter). This revenue stream should be preserved for as long as the ATM business generates positive revenue. Accordingly, the Receiver intends to continue operating the ATMs pursuant to existing agreements with the Servicers and ATM Locations.

### B. Clawback Claims

The Court has authorized the Receiver to pursue Clawback Claims and approved the Receiver's proposed procedures for prosecuting such claims. As discussed above, recoveries from Clawback settlements have been very successful to date. The Receiver will continue to pursue such claims and file complaints

against profiting investors who choose not to accept the Court-approved settlement offer.

### C. Claims Process

The Receiver will evaluate the most efficient and effective method of receiving and analyzing investor and creditor claim information and, at the appropriate time, will seek Court approval of procedures for the administration of claims. At this time, accounting work as to investor net losses is continuing.

## X. CONCLUSION

Based on the foregoing, the Receiver requests an order approving this Report and his recommendations discussed above.

Dated: May 5, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
William Hoffman

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for**
Equity Receivership over Nationwide Automated Systems, et al. - Cash Basis
Receivership; Civil Court Docket No. 44
Reporting Period 01/01/2017 through 03/31/2017

**Fund Accounting (See Instructions):**

|  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|
| **Line 1** | **Beginning Balance (As of 01/01/2017)** | $ 27,893,271 |  |  |
|  | **Increases in Fund Balance** |  |  |  |
| **Line 2** | **Business Income** | $ 305,353 |  |  |
| **Line 3** | **Cash and Securities** |  |  |  |
| **Line 4** | **Interest/Dividend Income** | $ 10,056 |  |  |
| **Line 5** | **Business Asset Liquidation** |  |  |  |
| **Line 6** | **Personal Asset Liquidation** |  |  |  |
| **Line 7** | **Third-Party Litigation Income** | $ 1,978,221 |  |  |
| **Line 8** | **Miscellaneous - Other** |  |  |  |
|  | **Total Funds Available (Lines 1-8)** |  |  | $ 30,186,901 |
|  | **Decreases in Fund Balance:** |  |  |  |
| **Line 9** | **Disbursements to Investors** |  |  |  |
| **Line 10** | **Disbursements to Receivership Operations** |  |  |  |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $ (290,320) |  |  |
| Line 10b | *Business Asset Expenses* | $ (294,137) |  |  |
| Line 10c | *Personal Asset Expenses* |  |  |  |
| Line 10d | *Investment Expenses* |  |  |  |
| Line 10e | *Third-Party Litigation Expenses* |  |  |  |
|  | 1. Attorney Fees |  |  |  |
|  | 2. Litigation Expenses |  |  |  |
|  | *Total Third-Party Litigation Expenses* |  |  |  |
| Line 10f | *Tax Administrator Fees and Bonds* |  |  |  |
| Line 10g | *Federal and State Tax Payments* | $ - |  |  |
|  | **Total Disbursements for Receivership Operations** |  | $ (584,457) |  |
| **Line 11** | **Disbursments for Distribution Expenses Paid by the Fund** |  |  |  |
| Line 11a | Distribution Plan Development Expenses: |  |  |  |
|  | 1. Fees |  |  |  |
|  |     Fund Administrator |  |  |  |
|  |     Distribution Agents |  |  |  |
|  |     Consultants |  |  |  |
|  |     Legal Advisors |  |  |  |
|  |     Tax Advisors |  |  |  |
|  | 2. Administrative Expenses |  |  |  |
|  | 3. Miscellaneous |  |  |  |
|  | *Total Plan Development Expeneses* |  |  |  |
| Line 11b | Distribution Plan Implementation Expenses: |  |  |  |
|  | 1. Fees: |  |  |  |
|  |     Fund Administrator |  |  |  |
|  |     IDC |  |  |  |
|  |     Distribution Agents |  |  |  |
|  |     Legal Advisors |  |  |  |
|  |     Tax Advisors |  |  |  |
|  | 2. Adminstrative Expenses |  |  |  |
|  | 3. Investor Identification: |  |  |  |
|  |     Notice/Publishing Approved Plan |  |  |  |
|  |     Claimant Identification |  |  |  |
|  |     Claims Processing |  |  |  |
|  |     Web Processing |  |  |  |
|  |     Web Site Maintenance/Call Center |  |  |  |
|  | 4. Fund Administrator Bond |  |  |  |
|  | 5. Miscellaneous |  |  |  |
|  | 6. Federal Account for Investor Restitution |  |  |  |
|  | (FAIR) Reporting Expenses |  |  |  |
|  | *Total Plan Implementation Expenses* |  |  |  |
|  | **Total Disbursements for Distribution Expenses Paid by the Fund** |  |  |  |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|
| Line 12 | Disbursments to Court/Other: | | | | |
| | Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | | | |
| | Line 12b | Federal Tax Payments | | | |
| | | Total Disbursements to Court/Other: | | | |
| | | Total Funds Disbursed (Lines 9-11): | | | $ (584,457) |
| Line 13 | Ending Balance (As of 03/31/2017) | | | | $ 29,602,444 |
| Line 14 | Ending Balance of Fund - Net Assets | | | | |
| | Line 14a | Cash & Cash Equivalents | $ 29,602,444 | | |
| | Line 14b | Investments | | | |
| | Line 14c | Other Assets or Uncleared Funds | | | |
| | | Total Ending Balance of Fund - Net Assets | | | $ 29,602,444 |

**Other Supplemental Information:**

*Report Items NOT To Be Paid by the Fund:*

| Line 15 | Disbursements for Plan Administration Expenses Not Paid by the Fund: |
|---|---|
| Line 15a | Plan Development Expensess Not Paid by the Fund: |
| | 1. Fees |
| |    Fund Administrator |
| |    IDC |
| |    Distribution Agents |
| |    Consultants |
| |    Legal Advisors |
| |    Tax Advisors |
| | 2. Adminsitrative Expenses: |
| | 3. Investor Identification: |
| |    Notice/Publishing Approved Plan |
| |    Claimant Identification |
| |    Claims Processing |
| |    Web Site Maintenance/Call Center |
| | 4. Fund Administrator Bond |
| | 5. Miscellaneous |
| | 6. FAIR Reporting Expenses |
| | *Total Plan Implementation Expenses Not Paid by the Fund* |
| Line 15c | Tax Administrators Fees & Bonds Not Paid by the Fund |
| | Total Disbursments for Plan Administration Expenses Not Paid by the Fund |
| Line 16 | Disbursements to Court/Other Not Paid by the Fund: |
| Line 16a | Investment Expenses/CRIS Fees |
| Line 16b | Federal Tax Payments |
| | Total Disbursements to Court/Other Not Paid by the Fund |
| Line 17 | DC & State Tax Payments |
| Line 18 | No. of Claims: |
| Line 18a | # of Claims Received This Reporting Period.................... |
| Line 18b | # of Claims Received Since Inception of Fund.................... |
| Line 19 | No. of Claimants/Investors: |
| Line 19a | # of Claimants/Investors Paid This Reporting Period................ |
| Line 19b | # of Claimants/Investors Pard Since Inception of Fund............ |

Receiver:

*William J. Hoffman* of Trigild, Inc.

Date: April 27, 2017

# PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is 501 West Broadway, 15th Floor, San Diego, California 92101-3541.

On May 5, 2017, I served on interested parties in said action the within:

> **RECEIVER'S ELEVENTH REPORT AND RECOMMENDATIONS**

☒ **BY U.S. MAIL:** by placing a true copy thereof in sealed envelope(s), addressed as indicated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service in San Diego County on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Jeffrey D. Nadel<br>Jeffrey D Nadel Law Offices<br>16000 Ventura Boulevard, Suite 908<br>Encino, California 91436 | Attorney for Third Party Claimant<br>Alejandro "Alex" Trejo<br><br>Tel: (818) 784-4914 |

☐ **BY OVERNIGHT DELIVERY:** by placing a true copy thereof in sealed envelope(s), addressed as indicated below. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in a box or other facility regularly maintained by express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in sealed envelopes or packages designated by the express service carrier, with fees for overnight delivery paid or provided for.

☐ **BY ELECTRONIC MAIL:** by electronic mail direct to the attorney(s) of records and/or the person or persons as stated above. I am readily familiar with this firm's Microsoft Outlook electronic mail system and this document/these documents were duly served electronically on the date stated above, and the transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 5, 2017, at San Diego, California.

| Edward G. Fates | /s/ Edward Fates |
|---|---|
| (Type or print name) | (Signature) |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

854546.01/SD