ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH EMILIO AND ELIZABETH MALUJE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  September 18, 2017<br>Time:  10:00 a.m.<br>Ctrm:  10C - 10th Floor<br>Judge:  Hon. S. James Otero |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

858261.01/SD

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on September 18, 2017, at 10:00 a.m. in Courtroom 10C of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement with Emilio and Elizabeth Maluje ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition and serve the same on the undersigned no later than 21 calendar days prior to the hearing. If filing in paper format or exempted from electronic filing, the filing must be submitted with the Office of the Clerk, United States District Court, at 312 North Spring Street, Los Angeles, California 90012.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This motion is made following conference of counsel pursuant to Local Rule 7-3.

Dated: August 16, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: _/s/ Edward Fates_
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Receiver seeks approval of a settlement with Emilio and Elizabeth Maluje. The Malujes, directly and indirectly, received or were paid profits from the NASI Ponzi scheme in the total amount of $78,193, but have requested and submitted an application for a reduced settlement on the basis of a financial hardship.

The Receiver has reviewed the financial hardship application submitted by the Malujes, which reveals that they are unable to pay the full amount of profits they received and have limited income and assets such that a reduced settlement on the basis of hardship is warranted. The parties have since negotiated terms and entered into a settlement agreement, subject to Court approval, pursuant to which the Malujes will pay $29,000 to the receivership in total, with payment to be made through an initial payment of $2,500 and the balance of $26,500 due within 12 months of Court-approval. The Receiver believes the proposed settlement, which generates an immediate cash recovery for the receivership of $2,500 and an additional $26,500 within 12 months, is in the best interests of the receivership estate, and therefore requests the settlement be approved.

## II.   BACKGROUND FACTS

### A.   The Receiver's Appointment and Authority to Pursue Net Winners

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis, and Edward Wishner ("SEC Action"). The SEC alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. Dkt. No. 3. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold

**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

858261.01/SD

fictitious ATMs with fabricated serial numbers and locations. *Id.* The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors. *Id.*

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things, the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate. *Id.*

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). *Id.* On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

**B.     The Hardship Application and Settlement Terms**

The Receiver completed his accounting of transfers to the Malujes and determined they received transfers from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities. Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 2. The total amount of net profit paid is $78,193. *Id.*

Pursuant to the Court's order approving the Clawback Procedures Motion, the Receiver mailed a demand letter on January 19, 2017, to the Malujes stating the amount of profit and providing the option to settle the matter without litigation for 70% of that amount. *Id.* at ¶ 3. The Malujes did not accept the offer, but indicated their desire to settle the claims on the basis of a financial hardship. *Id.* For this

purpose, the Malujes submitted a financial hardship application along with extensive financial documentation demonstrating their limited net worth, assets, and income, and requested the Receiver review their financial condition to determine if an exception to the Court-approved settlement parameters was warranted. *Id.* at ¶ 4. As reflected in the information submitted, the Malujes are nearly 80 years old and have very limited income consisting solely of retirement income, including social security. *Id.* at ¶ 5. The Malujes also have very little other assets against which the Receiver could pursue any significant recovery. *Id.*

Based on the above, and after weighing the anticipated costs associated with pursuing any legal action for judgment and seeking collection - which may not yield more net benefit to the estate than the amount the Malujes will pay pursuant to the terms of the settlement - the Receiver determined that a reduced settlement with the Malujes is appropriate given their very limited income and the lack of any significant assets against which recovery may be pursued. *Id.* at ¶ 6.

Accordingly, the Receiver and the Malujes negotiated and entered into a settlement agreement ("Settlement Agreement"), subject to Court approval, pursuant to which the Malujes agree to pay $29,000 to the receivership in total, with payment to be made through an initial payment of $2,500 with the balance of $26,500 due within 12 months of Court-approval of the settlement. *Id.* at ¶ 7, Ex. 1. The Malujes' payment obligation under the Settlement Agreement is secured by a Stipulated Judgment in the full amount of their profit ($78,193) such that if they default on their settlement payments and fail to cure such default, the Receiver can take steps to have the Stipulated Judgment entered by the Court and enforced. A true and correct copy of the Settlement Agreement and Stipulated Judgment are attached to the Kudla Declaration as Exhibit A.

### III.   DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *SEC v. Hardy*,

1  803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an
2  equity receivership and to determine the appropriate action to be taken in the
3  administration of the receivership is extremely broad."  With regard to settlements
4  entered into by a federal equity receiver, the Court's supervisory role includes
5  reviewing and approving those settlements in light of federal court policy to
6  promote settlements before trial.  See Fed. R. Civ. P. 16(c), Advisory Committee
7  Notes.

8       Federal courts of equity often look to bankruptcy law for guidance in the
9  administration of receivership estates.  See *SEC v. Capital Consultants, LLC*,
10 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*,
11 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*,
12 273 F.3d 657, 665 (6th Cir. 2001); *see also* Local Civil Rule 66-8 ("a receiver shall
13 administer the estate as nearly as possible in accordance with the practice in the
14 administration of estates in bankruptcy").  A bankruptcy court may approve a
15 compromise of claims asserted by or against the estate if the compromise is "fair
16 and equitable."  *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*,
17 839 F.2d 610, 620 (9th Cir. 1988).  The approval of a proposed compromise
18 negotiated by a court appointed fiduciary "is an exercise of discretion that should
19 not be overturned except in cases of abuse leading to a result that is neither in the
20 best interest of the estate nor fair and equitable for the creditors."  *In re MGS*
21 *Marketing*, 111 B.R. 264, 266 67 (B.A.P. 9th Cir. 1990).

22      The Court has great latitude in approving compromises.  In passing on the
23 proposed compromise, the Court should consider the following:

24     a.    The probability of success in litigation;
25     b.    The difficulties, if any, to be encountered in the matter of collection;
26     c.    The complexity of the litigation involved and the expense,
27           inconvenience, and delay necessarily attending; and
28

d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the costs and likely benefits of pursuing legal action against the Malujes and enforcing a judgment against them. While the Receiver is confident he would prevail in such an action, obtaining and enforcing a judgment would involve considerable expense. More importantly, the collectability of a judgment against the Malujes remains a primary concern given their limited income and assets. As stated above, The Malujes have very limited monthly income and a limited amount of other assets against which the Receiver could pursue recovery. Therefore, it is unlikely the Receiver would be able to collect more from a judgment than what the Malujes have agreed to pay pursuant to the Settlement Agreement, and the expenses of obtaining and enforcing a judgment could even exceed the ultimate recovery. The Settlement Agreement, on the other hand, generates a recovery of $29,000 in total for the receivership estate without litigation or further expense. Accordingly, the Receiver believes the Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved.

## IV. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement.

Dated: August 16, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN