1  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   TIM C. HSU (BAR NO. 279208)
3  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
4  Phone:  (213) 622-5555
   Fax:  (213) 620-8816
5  E-Mail:  dzaro@allenmatkins.com
            thsu@allenmatkins.com
6
   ALLEN MATKINS LECK GAMBLE
7      MALLORY & NATSIS LLP
   EDWARD G. FATES (BAR NO. 227809)
8  One America Plaza
   600 West Broadway, 27th Floor
9  San Diego, California 92101-0903
   Phone:  (619) 233-1155
10 Fax:  (619) 233-1158
   E-Mail:  tfates@allenmatkins.com
11
   Attorneys for Receiver
12 WILLIAM J. HOFFMAN

13               UNITED STATES DISTRICT COURT

14               CENTRAL DISTRICT OF CALIFORNIA

15                     WESTERN DIVISION

16 | SECURITIES AND EXCHANGE | Case No. CV-14-07249-SJO (FFMx) |
   | COMMISSION, | |
17 | | **NOTICE OF MOTION AND** |
   | Plaintiff, | **MOTION FOR APPROVAL OF** |
18 | | **PROCEDURES FOR THE** |
   | v. | **ADMINISTRATION OF INVESTOR** |
19 | | **AND CREDITOR CLAIMS** |
   | NATIONWIDE AUTOMATED | **AGAINST THE RECEIVERSHIP** |
20 | SYSTEMS, INC.; JOEL GILLIS; and | **ESTATE** |
   | EDWARD WISHNER, | |
21 | | Date:      December 4, 2017 |
   | Defendants, | Time:      10:00 a.m. |
22 | | Ctrm:      10C |
   | OASIS STUDIO RENTALS, LLC; | Judge:     Hon. S. James Otero |
23 | OASIS STUDIO RENTALS #2, LLC; | |
   | and OASIS STUDIO RENTALS #3, LLC | |
24 | | |
   | Relief Defendants. | |
25

26

27

28

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 4, 2017, at 10:00 a.m. in Courtroom 10C of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California, 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving procedures for the administration of investor and creditor claims against the receivership estate ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:**  If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice.

Dated:  October 31, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:     */s/ Edward Fates*

EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

As the Court-appointed permanent Receiver, the Receiver's primary charge is to secure, preserve, and protect the assets of the Receivership Entities for the benefit of investors and creditors.  The Receiver is currently holding over $34 million in cash and that amount continues to increase as additional recoveries are made, primarily through clawback settlements and judgments.  The Receiver's forensic accounting of transfers to and from investors is sufficiently complete for him to identify the approximately 1,350 investors (or investor groups) with losses from their investments and the amounts of their losses.

Therefore, procedures for the administration of investor and creditor claims against the receivership estate should be established.  By way of this Motion, the Receiver seeks approval of procedures for the efficient receipt, review, and determination of claims against the receivership estate.  Once all claims have been received and reviewed, and reasonable efforts have been made to resolve any and all claim disputes, the Receiver will file a further motion seeking approval of all claim amounts (including determination of disputed claims), approval of a plan of distribution, and authorization to make interim distributions to investors and creditors with allowed claims.

The claim procedures proposed herein are designed to strike an appropriate balance between providing investors and creditors with a reasonable and fair opportunity to assert their claims and have their claims determined by the Court, on the one hand, and conserving judicial and receivership estate resources on the other hand.  Accordingly, the Receiver asks that the Court approve the proposed procedures in its broad discretion regarding the administration of the receivership estate.

## II. FACTUAL BACKGROUND

On September 14, 2014, the Securities and Exchange Commission ("Commission") filed its Complaint against Nationwide Automated Systems, Inc. ("NASI"); Joel Gillis ("Gillis"); and Edward Wishner ("Wishner," collectively with NASI and Gillis, "Defendants") and Oasis Studio Rentals, LLC; Oasis Studio Rentals #2, LLC; and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates (collectively, "Receivership Entities").  The Commission simultaneously filed, *inter alia*, an Ex Parte Application for a Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; and (5) Appointing a Temporary Receiver, and Order to Show Cause Re Preliminary Injunction and Appointment of a Permanent Receiver.  On September 30, 2014, the Court issued the Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; and (5) Appointing a Temporary Receiver, and Order to Show Cause Re Preliminary Injunction and Appointment of a Permanent Receiver ("TRO") and appointed Mr. Hoffman as temporary receiver.  (Dkt. No. 17.)  Mr. Hoffman's appointment was made permanent pursuant to the Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver ("PI Order") stipulated to by the Commission, Gillis, and Wishner.

While the Ponzi scheme operated for more than 15 years, the funds raised from investors through ATM sale and leaseback transactions between January 2008 and August 2014 total more than $350 million.  The Commission's Complaint alleges NASI investors were informed they could purchase ATMs from NASI and then lease these machines back to NASI in return for "rent" of 50 cents per ATM transaction, with a guaranteed investment return of at least 20% per year.  However, during the period from January 2008 through August 2014, the vast majority of

1   NASI's revenue came from new investor funds; revenues generated from actual
2   ATM transactions represented less than 3% of NASI's revenue.  Thus, investor
3   funds were not being used to acquire, place, operate and maintain the purported
4   ATMs sold to investors, but were instead being used to pay returns guaranteed by
5   NASI and already owed to earlier investors.

6       The Receiver has been very successful in recovering funds for the benefit of
7   investors and creditors.  Specifically, the receivership estate started with a balance
8   of approximately $481,000 and now has more than $34 million cash on hand.  As a
9   result, the Receiver is in a position to distribute a large sum of money to investors
10  and creditors with allowed claims.

11  **III.    PROPOSED CLAIM PROCEDURES**

12       **A.    <u>Investor Claims</u>**

13       Through his ongoing forensic accounting, the Receiver has identified
14  investors with net losses from the NASI Ponzi scheme.  There are approximately
15  1,350 such investors and their collective losses are approximately $124 million.  To
16  maximize efficiency with respect to the administration of investor claims, the
17  Receiver proposes to send each investor a notice together with a schedule showing
18  their individual transactions with the Receivership Entities (deposits and
19  disbursements) and their proposed net claim amount.[1]  The claim notice package
20  will also include an IRS Form W-9 to be completed and mailed back to the Receiver
21  for tax reporting purposes.  In order to send the notices to most current addresses,
22  investors are encouraged to provide their updated contact information by visiting the
23  Receiver's website (www.nasi-receivership.com) and clicking on the "Investor
24
25

---

26  [1]   The Receiver will not send claim notices to profiting investors (a) who have
        acknowledged receiving a profit from the NASI Ponzi scheme by virtue of
27      returning a portion of such profits to the Receiver pursuant to a settlement
        agreement, (b) against whom a judgment on a clawback claim has been entered,
28      or (c) have filed a personal bankruptcy case in which the Receiver has an allowed
        claim for return of their profits from the NASI Ponzi scheme.

1  Questionnaire" link on the right hand side of the home page and enter the requested
2  information.

3       Investors will then have 60 days from the date of the notice to dispute their
4  proposed claim amount in writing and provide documentation supporting their
5  calculation as to their claim amount.  If investors agree with their proposed claim
6  amount, they will not need to take any action and their proposed allowed claim
7  amount will be recommended to the Court for approval.  All investors, however,
8  must complete and return the IRS Form W-9 in order to have an allowed claim and
9  receive distributions.

10       *It is important to understand that proposed claim amounts are not the same*
11  *as distribution amounts.  A claim is simply the basis on which distributions from the*
12  *receivership estate will be calculated.  Actual distribution amounts will be a*
13  *percentage of each investor's allowed claim.*

14       The Receiver will review all investor claim disputes and attempt to resolve
15  them with the applicable investors.  If, however, any claim disputes cannot be
16  resolved, the Receiver will file a motion seeking approval of all allowed claim
17  amounts and will ask the Court to resolve such claim disputes ("Claims Approval
18  Motion").  The applicable investors can state their positions in opposition to the
19  motion, the Receiver can respond, and the Court can determine the allowed claim
20  amounts.

21      **B.**    **<u>Creditor Claims</u>**

22       Over the course of the last three years since his appointment, the Receiver has
23  had contact with vendors and creditors that did business with or provided services to
24  the Receivership Entities prior to the Receiver's appointment.  The Receiver will
25  solicit claims from these known vendors and creditors and verify the amounts
26  asserted against the records of the Receivership Entities.  Like investors, all
27  creditors will be instructed to complete and return an IRS Form W-9 in order to
28  have an allowed claim and receive distributions.

As with investor claims, if disputes arise regarding creditor claims, the Receiver will attempt to resolve those disputes with the applicable creditors.  If any claim disputes cannot be resolved, the Receiver will file the Claims Approval Motion seeking approval of all allowed claim amounts and will ask the Court to resolve such disputes.  The applicable creditors can state their positions in opposition to the motion, the Receiver can respond, and the Court can determine the allowed claim amounts.

## C.   Claims Bar Date

In order to make interim distributions, the Receiver must have certainty about the aggregate amount of allowed claims.  As noted above, the Receiver proposes to send notices to investors (other than those described in footnote 1) and that such investors be given 60 days from the date of the notice to return their completed IRS Form W-9 and respond with any disputes concerning their proposed claim amounts.  All investor claim notices will be mailed out within 30 days of entry of an order on this Motion.  Therefore, all investor IRS Form W-9s and disputes regarding their claims must be received, at the latest, within 90 days of entry of the order on this Motion.

With respect to creditors, there also must be a deadline, or bar date, for submitting claims, after which the Receiver can be confident that the universe and magnitude of possible creditor claims is set.  Accordingly, the Receiver requests that the Court establish a date 90 days after entry of an order on this Motion as the date by which creditor claims against the Receivership Entities (including completed W-9 tax forms) must be submitted to the Receiver as a prerequisite to receiving a distribution from the estate.  The Receiver proposes providing notice of the claims bar date to all known creditors by mail and via posting to the receivership website (www.nasi-receivership.com).

## IV.   DISCUSSION

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief."  *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors."  *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986).  As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly.  *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.  The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.  A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also CFTC. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").  Accordingly, the Court has broad discretion in the administration of the receivership estate.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

859904.01/SD

-6-

### A.   Calculation of Claim Amounts

In cases in which the assets of the receivership estate are insufficient to pay investor direct losses, as is the case here, the appropriate method of calculating investor claims is the amount invested in the enterprise, less the amount received on account of the investment (also known as "money in, money out").  *See Capital Consultants*, 397 F.3d at 738 (describing a net claim calculation as "an administratively workable and equitable method of allocating the limited assets of the receivership"); *Topworth*, 205 F.3d at 1116.  Accordingly, all distributions or other amounts investors received from the Receivership Entities prior to the Receiver's appointment should be deducted from their claims such that their claim amounts reflect their actual net losses from their investments.

For the same reason, investor and creditor claims should not include amounts above and beyond their direct losses.  Indirect losses or consequential damages, such as interest, attorney fees, taxes paid on amounts received from the Ponzi scheme, IRA fees, opportunity costs, and other fees or costs incurred should not be added to allowed claims.  The assets of the receivership estate are woefully insufficient to pay investor and creditor direct losses, so allowing additional indirect losses to be tacked on to claims is not appropriate.  Moreover, the need to review and object to such claims would unnecessarily increase administrative expenses.

Therefore, investor distribution amounts should be calculated using the following two-step formula:

Step 1:  Investor's Pro Rata Loss =     Total Losses of All Investors/Creditors
         (shown as a fraction)          Investor's Allowed Claim Amount

Step 2:  Investor's Distribution Amount =   Total Distribution Amount
                                            X (multiplied by)
                                            Investor's Pro-Rata Loss

1      If, for example, an investor's allowed claim amount is $1.24 million and the

2  total losses of all investors/creditors is $124 million, the investor's *pro rata* loss is

3  1.00%, *i.e.,* $124 million divided by $1.24 million.  This investor would therefore be

4  entitled to 1.00% of all distributions made by the Receiver.  If, hypothetically, the

5  total amount distributed for the first distribution by the Receiver is $30 million, the

6  investor's interim distribution amount would be $300,000.

7      **B.**      **Determination of Claim Disputes**

8      District Courts have the power to use "summary procedures in allowing,

9  disallowing, and subordinating claims of creditors . . ."  *United States v. Arizona*

10  *Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984).  Therefore, all claim disputes should

11  be resolved via summary proceedings.

12      The proposed steps of the claims process are attached hereto as Exhibit A for

13  clarity and ease of reference.  Pursuant to the proposed process, investors and

14  creditors can dispute the Receiver's proposed allowed amount of their claims by

15  doing so directly with the Receiver, and if the disputes cannot be resolved, by

16  opposing the Receiver's Claims Approval Motion.  The Court can then hold a

17  hearing, if necessary, and consider the arguments of investors and creditors before

18  deciding their allowed claim amounts.  Plenary proceedings to resolve claim

19  disputes would unduly delay the administration of the case and consume

20  receivership estate resources.

21      Finally, as in a bankruptcy case, it should be a claimant's burden to establish a

22  valid claim against the receivership estate.  *See Lundell v. Anchor Constr.*

23  *Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000); *Revere Copper &*

24  *Brass, Inc. v. Adriance Machine Works, Inc.*, 76 F.2d 876, 878 (2d Cir. 1935)

25  (claimants failed to sustain burden of proving claims against receivership).

26  Therefore, if a claimant fails to present evidence to establish a valid claim against

27  the receivership estate, such claim should be disallowed.

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

859904.01/SD

# V.   CONCLUSION

The claim procedures proposed herein were formulated with the dual goals of (a) providing all investor and creditor claimants with a reasonable and fair opportunity to assert their claims and have their claims determined by the Court, and (b) establishing an efficient process that conserves judicial and receivership estate resources.  Therefore, the Receiver respectfully requests the Court grant the Motion and approve the procedures proposed herein for the administration of investor and creditor claims against the receivership estate.

Dated:  October 31, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:          /s/ Edward Fates
EDWARD G. FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

# EXHIBIT A

# EXHIBIT A

## PROPOSED CLAIM PROCEDURES

Note, these procedures have not yet been approved by the Court and may be revised if deemed appropriate by the Court.

- Within 30 days of entry of an order approving this Motion, the Receiver will send out claims notices to investors.  The claims notice will explain the claim procedures, state the proposed allowed claim amount for each investor, and provide the Receiver's calculation of the amount.

- If investors do not dispute the proposed allowed claim amount stated in their claims notice, they do not need to take any action.  The Receiver will file a motion for approval of all proposed allowed claim amounts ("Claims Approval Motion") and recommend that their claims be allowed in the amount stated in the claims notice.  If, on the other hand, investors dispute the proposed allowed claim amount stated in their claims notice, they will have 60 days from the date the claims notice is mailed to them to respond in writing to the Receiver's office, state their dispute, and provide copies of all documents supporting their calculation of their claims.

- The Receiver's office will review all disputes and documentation provided, contact investors who have disputed their claims, and attempt to resolve the claim disputes with them.

- For claim disputes that cannot be resolved by agreement between the Receiver and the investor, the Receiver state in the Claims Approval Motion that the claim is disputed, including the basis for the dispute.  Investors with disputed claims, if they choose, can oppose the Claims Approval Motion, and the Receiver can respond to any and all oppositions filed.  The deadline for investors to oppose the Claims Approval Motion will depend on the hearing date for the motion and will be stated in the motion.  The deadline for oppositions to motions is generally 21 days prior to the hearing date for the motion.

- The Court, in its discretion, can hold a hearing and consider the oral arguments of the Receiver and the applicable investors regarding disputed claims.  Whether or not a hearing is held, the allowed amounts of all claims, including disputed claims, will be decided by the Court in its order on the Claims Approval Motion.

As stated above, these procedures are only *proposed*, have not yet been approved by the Court, and may be revised if deemed appropriate by the Court.  However, any changes to the proposed procedures will be noted in the claims notice sent to investors (see first bullet point above).