ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTAL #3, LLC,<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**RECEIVER'S FOURTEENTH INTERIM REPORT AND RECOMMENDATIONS**<br><br>Ctrm: 1 - 2nd Floor<br>Judge: Hon. S. James Otero |

William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC ("Relief Defendants"), and their subsidiaries and affiliates, including Studios Maui Productions, LLC dba Akamai RV ("Receivership Entities"), hereby submits this fourteenth report on his activities and findings to date, as well as his recommendations for the continued administration of the receivership estate ("Report"). This Report focuses on the Receiver's activities during the fourth quarter of 2017.

## I. EXECUTIVE SUMMARY

The Receiver has continued to carry out his duties under the Court's Preliminary Injunction Order, including taking necessary and appropriate actions to secure, preserve, and protect the assets of the Receiverships Entities. The Receiver has also continued operations of NASI's ATM business, as authorized by the Court. As previously discussed, the ATM business generates a steady, but modest amount of revenue.

As he did in the third quarter of 2017, the Receiver spent significant time in the fourth quarter on (a) pursuing Clawback Claims (as defined below) in the form of demand letters, Court-authorized settlements, and complaints filed against investors and other third parties who received profits from the Ponzi scheme ("Net Winners"); (b) efforts to identify, recover, and protect the assets of the Oasis Studio Rentals entities and their affiliates, including efforts to recover amounts owed to the entities or transferred from them to third parties; (c) communication with investors and reviewing documents provided, (d) reconstruction of accounting necessary for Clawback Claims, (e) reviewing and analyzing investor financial hardship applications and supporting financial documents, (f) providing accounting and document support for the ongoing litigation against City National Bank and related

parties, and (g) formulating procedures for the efficient and effective administration of investor claims against the receivership estate.

The Receiver has continued his forensic accounting and investigation as necessary and appropriate to identify assets and potential claims to recover investor profits, referral fees, and other transfers to third parties ("Clawback Claims"). In April 2015, the Receiver obtained authority from the Court to pursue Clawback Claims, as well as approval of proposed procedures for such claims. To date, the Receiver has settled with 355 Net Winners pursuant to the Court-approved settlement procedures, for a total recovery of $38,727,635, with another $152,779 due in settlement payments. Recoveries from Net Winners, through the pursuit of Clawback Claims, will make up the majority of what is available to distribute to investors from the receivership estate (other than what is recovered through the City National Bank litigation). Accordingly, the pursuit of Clawback Claims, which to date has been very successful, should continue to be a primary focus.

As discussed below, the Receiver recommends the receivership remain in place as he continues to manage the ATM operations, investigate and recover assets, pursue Clawback Claims and settlements as necessary and appropriate, all with the goal of maximizing the value in the receivership estate for the benefit of investor victims.

## II. ATM OPERATIONS

The Receiver has continued operations of the NASI ATM machines, which consist of 122 ATMs operating at various hotels and other locations around the country and 117 non-operating ATMs that are outdated or need substantial repairs. Further, the Receiver's staff has continued business relationships with the ATM service vendors and the ATM locations to maximize the revenue into the receivership estate.

Revenue and expenses from ATM operations vary on a monthly basis depending on the amount of transactions for each ATM. During the fourth quarter,

7 ATMs were removed from hotel and other locations due to terminated leases and age of the ATM machines. The costs of upgrading these ATM machines would likely exceed the revenue from them, so the Receiver determined not to upgrade them.

Gross revenues for October, November, and December 2018 were $91,946, $89,530, and $81,929, respectively. The monthly net income from ATM operations (after payments to the ATM servicers and locations) was $4,190, $8,862, and $32, respectively, for a total of $13,084. The average monthly net income for the quarter was $4,361.

The revenue and net income is seasonal and is substantially higher during the second and third quarters as compared to the first and fourth quarters. This is due to higher demand resulting from summer vacations and travel.

### III. OASIS STUDIO RENTALS

The Oasis Studio Rentals entities ("Oasis Entities") ran a business whereby they leased mobile dressing rooms (trailers) and trucks to transport the trailers to film and television studios to be used by actors and others on set during production. The Oasis Entities appear to have been funded almost entirely by NASI. At one point in time, the Oasis Entities owned most of the trucks and trailers. However, some of the trucks and trailers were apparently sold to various third parties with leaseback agreements to the Oasis Entities. The Receiver continues to investigate the true ownership and location of certain trucks and trailers.

On November 18, 2014, the Court entered its Order Approving the Receiver's First Report and Recommendations, which confirmed that the Oasis Entities are affiliates of NASI, and therefore within the scope of the receivership. Accordingly, the Receiver immediately took steps to identify, locate, and secure the assets of the Oasis Entities. Although the exact location and revenue generated by each vehicle is still being investigated, the Receiver continues to take necessary actions with the goals of: (1) identifying all vehicles purchased with NASI or Oasis funds, (2) tracing

the purchase and sale of each vehicle to and from the Oasis Entities, (3) identifying income generated from vehicles owned or leased by the Oasis Entities and the recipients of these funds, (4) obtaining possession of the vehicles owned by Oasis Entities, (5) pursing potential claims against third parties who improperly benefited from the leasing and/or sale of vehicles owned by Oasis Entities, and (6) selling vehicles owned by the Oasis Entities to maximize the recovery for the receivership estate.

In order to achieve the goals outlined above, the Receiver has (a) worked with counsel to subpoena records from numerous financial institutions and other sources, (b) provided significant forensic accounting and analysis of multiple bank accounts, cleared checks, wire transfers, checks deposited, and existing contracts, (c) requested, obtained, and reviewed DMV records showing the chain of registered title of vehicles identified by the Receiver, (d) reviewed and analyzed subpoena responses and supporting documents from dozens of suspected affiliated entities, including Fiji Rentals, LLC, and (e) worked to settle potential claims.

Prior to the receivership, the day-to-day operations of Oasis vehicles, including the arrangements to lease trailers to the studios, were managed by Robert Keller, Jr. ("Keller") with assistance from Defendant Ed Wishner's staff. The Receiver's counsel has served over a dozen subpoenas to parties associated with Keller, including the current entity Keller leases vehicles with studios, Fiji Rentals. The Receiver has received partial accounting and documents from a few parties, but significant accounting and requested documentation has not been provided. The Receiver has taken several depositions in order to gather more facts relating to potential claims against Keller, Fiji Rentals, and Fiji Rentals' principal, Damian Perillo. Among other things, it appears that Keller and Perillo have taken trailers that were being managed by Oasis pursuant to leases with their owners and converted the management/rental of those trailers to Fiji Rentals.

1  The Receiver prepared a complaint and issued a demand to Keller, Perillo,
2  and Fiji Rentals for recovery of large amounts wrongfully taken from NASI and
3  Oasis.  In response to the letter, Perillo and Fiji Rentals produced certain requested
4  documents.  The Receiver then made a follow-up settlement demand, which Keller,
5  Perillo, and Fiji Rentals did not accept.  Accordingly, the Receiver filed his
6  complaint in Los Angeles Superior Court on July 12, 2016.  The action remains
7  pending.

**IV.    FORENSIC ACCOUNTING**

The Preliminary Injunction Order requires the Receiver to "make an accounting, as soon as practicable, to the Court and the SEC of the assets and financial condition of Defendant Nationwide Automated Systems, Inc."  Dkt. No. 42, Part XII.E.  Accordingly, the Receiver has undertaken to perform such an accounting.  The Receiver has made progress in the review of available financial, accounting and banking records to reconstruct transactions of NASI, the Oasis Entities and other affiliated entities.

Reconstruction of financial and accounting documents is a central task to (a) determine who received funds from the Receivership Entities and how much they received, (b) prepare necessary tax filings, (c) determine the proper amount of profits of investors, and (d) determine the proper amounts of losses of investors.  The Receiver's accounting personnel has worked diligently to create an accurate check register showing the checks paid by NASI to investors that cleared, not bounced, which is a critical and time-consuming task.

Due to the large size and length of time the Ponzi scheme operated, an enormous amount of information is required to be traced and verified.  Reliable information about NASI's check register and similar information was either not available or not accurate, which required the Receiver's accounting personnel to reconstruct the ledger of transactions.  Information from bank statements and cleared checks were used to create a schedule of checks paid by NASI to investors.

On average, over 2,000 checks were paid by NASI to investors on a monthly basis in 2014.

In addition to the ongoing accounting of transactions in order to pursue Clawback Claims against select investors and third parties, the Receiver's staff is working to determine the amounts of losses later investors sustained.  The Receiver will continue to complete the forensic accounting required to pursue Clawback Claims for investor profits, referral fees, and other transfers, as well as the investor loss analysis.

## V.  PENDING CLAWBACK CASES

As discussed above, the Receiver has settled with 355 Net Winners for a total recovery to the receivership estate of $38,727,635 with another $152,779 due in settlement payments still to be made.  Another 183 demand letters to Net Winners are currently outstanding.  The rate of settlements in relation to total demand letters sent to Net Winners for which the 60-day window to settle without litigation expired is very high – 61.1% (330 settlements without a complaint being filed and 24 settlements after a complaint was filed).  Of course, not all Net Winners accept the Court-approved settlement proposal included in the demand letter and therefore complaints must be filed.  To date, 63 complaints have been filed and 28 cases remain active.

Overall, the rate of cases filed (63) in relation to total expired demand letters (including settlements and outstanding demands) is remarkably low – only 10.8%.  Further, the rate of currently active cases (28) in relation to total claims is even lower – only 4.8%.  Accordingly, the Receiver's pursuit of Clawback Claims has not only been very successful to date, but has also been extremely efficient.

## VI.  CLAIMS AGAINST CITY NATIONAL BANK

For almost the entire duration of the NASI Ponzi scheme, which started in the late 1990s, the company ran its banking transactions through accounts at City National Bank ("CNB").  In addition, at least two CNB executives invested, directly

1 or through a related entity, in NASI and therefore became familiar with NASI's
2 operations and purported investment returns. In light of these facts, the Receiver
3 has gathered documents and investigated potential claims against City National
4 Bank.
5      On May 4, 2016, the Court approved the Receiver's engagement of Newhouse
6 Law Group and Girardi | Keese LLP as co-special counsel to represent the Receiver
7 in pursuing claims against CNB and related parties. Dkt. No. 150. On June 21,
8 2016, the Receiver filed his complaint against CNB, Royal Bank of Canada, a
9 Canadian bank, Patrick Brian Fitzwilliams, and Betty Saleh Fitzwilliams in
10 Los Angeles Superior Court. As previously communicated to this Court, for
11 efficiencies' sake, Special Counsel has continued to work closely and coordinate
12 efforts with Class Counsel in the matters of *Nairn v. City National Bank*, *Madison v.*
13 *City National Bank*, and *Allison v. City National Bank*. On September 30, 2017, a
14 class-action complaint was filed by non-California investors in federal court in
15 New York, styled as *Wilinksy et al. v. City National Bank, NA, et al.*, Case
16 No. 1:17-cv-07463-JGK. On November 17, 2016, and February 2, 2018, the
17 Receiver and Special Counsel attended a global mediation with CNB and settlement
18 discussions continue as of the date of this report.

19 **VII. POST-RECEIVERSHIP RECEIPTS AND DISBURSEMENTS**

20      At the time the Receiver was appointed on September 30, 2014, NASI had
21 approximately $461,000 in cash. Since then, the balance in the receivership estate
22 has grown rapidly, primarily due to recoveries through Clawback Claims. By the
23 end of 2015, the balance had increased to $5,695,473, by the end of 2016, the
24 balance had grown to $27,893,271, by the end of the first quarter of 2017, the
25 balance had grown to $29,602,444, by the end of the second quarter of 2017, the
26 balance had grown to $32,422,657, and by the end of the third quarter of 2017, the
27 balance had grown to $34,297,154.
28

During the fourth quarter of 2017, (a) business operations received positive cash flow of $13,084 (total business income of $263,405 minus total business expenses of $250,564), (b) the Receiver obtained a total of $1,927,569 from Clawback Claims, (c) interest payments of $12,864 were received for Receivership funds deposited, and (d) disbursements totaling $330,582 were paid to the Receiver and his Counsel for Court-approved fees and expenses incurred during the second quarter 2017 (their eleventh fee application, which were approved during the fourth quarter), resulting in an ending balance of $35,919,846, as of December 31, 2017. A Standardized Fund Accounting Report is attached hereto as Exhibit A.

In addition, the Receiver has already had significant recoveries from Clawback settlements in January and February 2018. An additional $183,284 has been recovered.

## VIII. INVESTOR COMMUNICATIONS

The Receiver has taken many steps to inform investors about the receivership, including establishing a website (www.nasi-receivership.com), a dedicated telephone line (858-242-1161), and a dedicated e-mail address (receiver@nasi-receivership.com). The website is designed to be investors' primary source of information about the receivership and provides basic information about receiverships, answers to commonly asked questions, status updates, pleadings filed in the case, and Court orders. In addition, the website has an investor questionnaire designed to obtain information from investors, including their contact information, investment amounts, ATM locations, and price paid per ATM. The investor questionnaire is a cost-effective method of obtaining information from investors, which the Receiver can then cross-reference and confirm or supplement with existing information. Thus far, more than 1,300 investor questionnaire submissions have been made via the Receiver's website. The Receiver will continue to update the receivership website and review information and documents provided by investors. The Receiver's staff will also continue to monitor the Receivership's

voicemail line, email address, fax line, and website questionnaires and respond accordingly. Investors are reminded to promptly contact the Receiver's office and provide their new contact information if their contact information changes.

As discussed above, the Receiver continues to devote considerable time and focus to the pursuit of Clawback Claims. Additionally, on January 9, 2018, the Receiver filed a renewed motion for approval of procedures for the administration of claims of investors with net losses from the Ponzi scheme (as well as the claims of other creditors). Dkt. No. 247. The motion was granted on February 7, 2018. Dkt. No. 256. The Receiver will send notices to investors and creditors with instructions regarding the claims process.

## IX. RECOMMENDATIONS

The Receiver recommends the receivership continue and his investigation and accounting be allowed to proceed.

### A. ATM Operations

As discussed above, the ATM operations generate a modest amount of net revenue ($4,361 per month during the second quarter). This revenue stream should be preserved for as long as the ATM business generates positive revenue. Accordingly, the Receiver intends to continue operating the ATMs pursuant to existing agreements with the Servicers and ATM Locations.

### B. Clawback Claims

The Court has authorized the Receiver to pursue Clawback Claims and approved the Receiver's proposed procedures for prosecuting such claims. As discussed above, recoveries from Clawback settlements have been very successful to date. The Receiver will continue to pursue such claims and file complaints against profiting investors who choose not to accept the Court-approved settlement offer.

### C. Claims Process

As noted above, the Court has approved the Receiver's renewed motion for approval of procedures for the administration of investor and creditor claims. The Receiver will initiate the claims process by sending claim notices and instructions to investors and creditors.

### D. Distributions

Once the claims process has been completed, the Receiver will seek approval of a plan of distributing receivership estate assets to investors and creditors with allowed claims and request authorization to make interim distributions pursuant to the plan.

## X. CONCLUSION

Based on the foregoing, the Receiver requests an order approving this Report and his recommendations discussed above.

Dated: February 14, 2018

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ *Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
William Hoffman

# EXHIBIT A

**STANDARDIZED FUND ACCOUNTING REPORT for**
Equity Receivership over Nationwide Automated Systems, et al. - Cash Basis
Receivership; Civil Court Docket No. 44
Reporting Period 10/01/2017 through 12/31/2017

Fund Accounting (See Instructions):

| | | | Detail | Subtotal | Grand Total |
|---|---|---|---:|---:|---:|
| Line 1 | Beginning Balance (As of 010/01/2017) | $ | 34,297,154 | | |
| | **Increases in Fund Balance** | | | | |
| Line 2 | Business Income | $ | 263,405 | | |
| Line 3 | Cash and Securities | | | | |
| Line 4 | Interest/Dividend Income | $ | 12,864 | | |
| Line 5 | Business Asset Liquidation | | | | |
| Line 6 | Personal Asset Liquidation | | | | |
| Line 7 | Third-Party Litigation Income | $ | 1,927,569 | | |
| Line 8 | Miscellaneous - Other | | | | |
| | Total Funds Available (Lines 1-8) | | | | $ 36,500,992 |
| | **Decreases in Fund Balance:** | | | | |
| Line 9 | Disbursements to Investors | | | | |
| Line 10 | Disbursements to Receivership Operations | | | | |
| Line 10a | *Disbursements to Receiver or Other Professionals* | $ | (330,582) | | |
| Line 10b | *Business Asset Expenses* | $ | (250,564) | | |
| Line 10c | *Personal Asset Expenses* | | | | |
| Line 10d | *Investment Expenses* | | | | |
| Line 10e | *Third-Party Litigation Expenses* | | | | |
| | 1. Attorney Fees | | | | |
| | 2. Litigation Expenses | | | | |
| | *Total Third-Party Litigation Expenses* | | | | |
| Line 10f | *Tax Administrator Fees and Bonds* | | | | |
| Line 10g | *Federal and State Tax Payments* | $ | - | | |
| | **Total Disbursements for Receivership Operations** | | | $ (581,146) | |
| Line 11 | Disbursments for Distribution Expenses Paid by the Fund | | | | |
| Line 11a | Distribution Plan Development Expenses: | | | | |
| | 1. Fees | | | | |
| |    Fund Administrator | | | | |
| |    Distribution Agents | | | | |
| |    Consultants | | | | |
| |    Legal Advisors | | | | |
| |    Tax Advisors | | | | |
| | 2. Administrative Expenses | | | | |
| | 3. Miscellaneous | | | | |
| | *Total Plan Development Expeneses* | | | | |
| Line 11b | Distribution Plan Implementation Expenses: | | | | |
| | 1. Fees: | | | | |
| |    Fund Administrator | | | | |
| |    IDC | | | | |
| |    Distribution Agents | | | | |
| |    Legal Advisors | | | | |
| |    Tax Advisors | | | | |
| | 2. Adminstrative Expenses | | | | |
| | 3. Investor Identification: | | | | |
| |    Notice/Publishing Approved Plan | | | | |
| |    Claimant Identification | | | | |
| |    Claims Processing | | | | |
| |    Web Processing | | | | |
| |    Web Site Maintenance/Call Center | | | | |
| | 4. Fund Administrator Bond | | | | |
| | 5. Miscellaneous | | | | |
| | 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | | |
| | *Total Plan Implementation Expenses* | | | | |
| | **Total Disbursements for Distribution Expenses Paid by the Fund** | | | | |

|  |  |  | Detail | Subtotal | Grand Total |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| Line 12 | **Disbursments to Court/Other:** | |
| Line 12a | *Investment Expenses/Court Registry Investment System (CRIS) Fees* | |
| Line 12b | Federal Tax Payments | |
| | **Total Disbursements to Court/Other:** | |
| | **Total Funds Disbursed (Lines 9-11):** | $ (581,146) |
| Line 13 | **Ending Balance (As of 12/31/2017)** | $ 35,919,846 |
| Line 14 | **Ending Balance of Fund - Net Assets** | |
| Line 14a | Cash & Cash Equivalents | $ 35,919,846 |
| Line 14b | Investments | |
| Line 14c | Other Assets or Uncleared Funds | |
| | **Total Ending Balance of Fund - Net Assets** | $ 35,919,846 |

**Other Supplemental Information:**

*Report Items NOT To Be Paid by the Fund:*

| | | |
|---|---|---|
| Line 15 | **Disbursements for Plan Administration Expenses Not Paid by the Fund:** |
| Line 15a | Plan Development Expensess Not Paid by the Fund: |
| | 1. Fees |
| |    Fund Administrator |
| |    IDC |
| |    Distribution Agents |
| |    Consultants |
| |    Legal Advisors |
| |    Tax Advisors |
| | 2. Adminsitrative Expenses: |
| | 3. Investor Identification: |
| |    Notice/Publishing Approved Plan |
| |    Claimant Identification |
| |    Claims Processing |
| |    Web Site Maintenance/Call Center |
| | 4. Fund Administrator Bond |
| | 5. Miscellaneous |
| | 6. FAIR Reporting Expenses |
| | *Total Plan Implementation Expenses Not Paid by the Fund* |
| Line 15c | Tax Administrators Fees & Bonds Not Paid by the Fund |
| | **Total Disbursments for Plan Administration Expenses Not Paid by the Fund** |
| Line 16 | **Disbursements to Court/Other Not Paid by the Fund:** |
| Line 16a | Investment Expenses/CRIS Fees |
| Line 16b | Federal Tax Payments |
| | **Total Disbursements to Court/Other Not Paid by the Fund** |
| Line 17 | **DC & State Tax Payments** |
| Line 18 | **No. of Claims:** |
| Line 18a | # of Claims Received This Reporting Period . . . . . . . . . . . . . . . . . . . . . . |
| Line 18b | # of Claims Received Since Inception of Fund . . . . . . . . . . . . . . . . . . . |
| Line 19 | **No. of Claimants/Investors:** |
| Line 19a | # of Claimants/Investors Paid This Reporting Period . . . . . . . . . . . . . . . |
| Line 19b | # of Claimants/Investors Pard Since Inception of Fund . . . . . . . . . . . . . |

Receiver:

*[signature]*

William J. Hoffman of Trigild, Inc.

Date: February 7, 2017