ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
          thsu@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  tfates@allenmatkins.com

Attorneys for Receiver
AARON J. KUDLA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-CJC-FFM<br><br>**NOTICE OF MOTION AND MOTION TO CONCLUDE RECEIVERSHIP AND FOR ORDER:**<br>**(1) AUTHORIZING RECEIVER TO MAKE FINAL DISTRIBUTIONS TO APPROVED CLAIMANTS AND ESTABLISH RESERVE;**<br>**(2) APPROVING FINAL ACCOUNTING AND REPORT;**<br>**(3) APPROVING DISPOSITION OF BOOKS AND RECORDS; AND**<br>**(4) CONDITIONALLY DISCHARGING RECEIVER; RECEIVER'S FINAL ACCOUNTING AND REPORT**<br><br>Date:       January 25, 2021<br>Time:      1:30 p.m.<br>Ctrm:      9B<br>Judge:     Hon. Cormac J. Carney |

TO THE HONORABLE CORMAC J. CARNEY, JUDGE OF THE UNITED STATES DISTRICT COURT, AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that on January 25, 2021, at 1:30 p.m. in Courtroom 9B of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701-4516, Aaron J. Kudla ("Receiver"), the Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court to conclude the receivership and for an order: (1) authorizing Receiver to make final distributions to approved claimants and establish a reserve; (2) approving the final accounting and report; (3) approving disposition of books and records; and (4) conditionally discharging the Receiver ("Motion"). The Receiver, his counsel, Allen Matkins, and certified public accountants, Duffy Kruspodin & Company, have filed their final fee applications concurrently herewith. The Motion and all relevant pleadings are available at the Receiver's website, www.nasi-receivership.com.

**Procedural Requirements**: If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West 4th Street, Santa Ana, California 92701-4516, and serve the same on the undersigned not later than 21 calendar days prior to the hearing. IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This Motion is made following the conference of counsel pursuant to L.R. 7-3.

Dated: December 17, 2020

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:     */s/ Edward G. Fates*
EDWARD G. FATES
Attorneys for Receiver AARON J. KUDLA

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................5

II.  RECEIVER'S FINAL ACCOUNTING AND REPORT ...........................6

   A.   Procedural History .......................................................6

   B.   Receiver's Forensic Accounting ......................................7

   C.   Clawback Claims ........................................................8

   D.   Recoveries From Other Assets ........................................8

      1.   Automated Teller Machines ("ATMs") ........................8

      2.   Oasis Studio Rentals and Studios Maui Production ...............9

      3.   Sale of Outstanding Judgments ...............................11

   E.   Claims and Interim Distribution Process .............................12

   F.   City National Bank Settlement .......................................12

   G.   Standardized Fund Accounting Report ...............................13

III. CLOSING MATTERS ........................................................14

   A.   Establishment of Reserve, Payment of Administrative
      Expenses and Proposed Final Distribution ..........................14

      1.   Establishment of Reserve ....................................14

      2.   Administrative Expenses .....................................14

      3.   Proposed Final Distribution ..................................15

      4.   Cancellation of Outstanding/Stale Checks .....................15

   B.   Destruction of Records ................................................16

   C.   Discharge of Receiver ................................................16

IV.  ARGUMENT ................................................................17

   A.   Broad Equitable Powers of the Court ................................17

   B.   Conclusion of Receivership and Discharge of Receiver ...............18

V.   MEET AND CONFER .......................................................19

VI.  CONCLUSION .............................................................19

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

905085.01/SD

-3-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*,
  205 F.3d 1107 (9th Cir. 1999) ................................................................. 17

*First Empire Bank-New York v. FDIC*,
  572 F.2d 1361 (9th Cir. 1978) ................................................................. 18

*SEC v. Capital Consultants, LLC*,
  397 F.3d 733 (9th Cir. 2005) .................................................................. 17

*SEC v. Elliot*,
  953 F.2d 1560 (11th Cir. 1992) ............................................................... 17

*SEC v. Hardy*,
  803 F.2d 1034 (9th Cir. 1986) ........................................................... 17, 18

*SEC v. Wencke*,
  622 F.2d 1363 (9th Cir. 1980) ................................................................. 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

Aaron J. Kudla, the Court-appointed Receiver herein, respectfully submits this Memorandum of Points and Authorities in Support of his motion to conclude the receivership and: (1) authorizing the Receiver to make final distributions to approved claimants and establish reserve; (2) approving the final accounting and report; (3) approving disposition of books and records; and (4) conditionally discharging the Receiver ("Motion").  The Receiver, his counsel and certified public accountants have filed their final fee applications concurrently herewith.

The former receiver, and since his appointment, the Receiver, has completed management of all assets of the receivership estate.  The most significant assets of the estate, claims to recover profits and other amounts paid out of the Ponzi scheme ("Clawback Claims"), have been pursued to the point where the costs of further pursuit/collection activity would very likely exceed any further recoveries (with the exception of the sale of a few remaining judgments pursuant to the Court's order authorizing the Receiver to sell such judgments).  Therefore, as there is no further material net benefit to be gained from maintaining the receivership, the Receiver requests that he be discharged and the case be closed, effective upon completion of the final closing tasks as described in Section III below.

In terms of recoveries for the benefit of investors with allowed claims, a total of $64,324,408 was recovered ("Total Recovery"), comprised of (a) $41,810,506 recovered by the former receiver and Receiver from monetizing the Receivership Entities' assets, including Clawback Claims, and (b) $22,406,490 distributed to the allowed net losing investors by the Claims Administrator (former receiver) from the City National Bank settlement (after payment of Court-approved legal fees and costs), as a result of the combined efforts of the former receiver, Receiver and investor class plaintiffs.

1   In addition to the $22,406,490 distributed for the CNB settlement, the former

2   receiver distributed $31,342,705 pursuant to the distribution plan approved by the

3   Court on April 25, 2019 (the "Distribution Plan") (Dkt. No. 347), and the Receiver

4   proposes a final distribution of $2,935,267, resulting in total distributions to

5   investors with allowed claims of $56,684,462, which translates to a total return of

6   45% of investor losses from the Ponzi scheme.  A financial summary showing the

7   receipts and disbursements from the receivership estate, including clawback

8   recoveries, operating review, and administrative expenses and other financial

9   information is attached hereto as Exhibit A.  The relief sought herein will allow the

10  Receiver to take the remaining steps necessary to conclude the receivership,

11  including making final distributions to approved claimants.

## II.   RECEIVER'S FINAL ACCOUNTING AND REPORT

### A.   Procedural History

14  This equity receivership involves a large and complex Ponzi scheme that is

15  the subject of the Complaint filed by the Securities and Exchange Commission

16  ("Commission").  The former receiver, William Hoffman of Trigild, Inc., was

17  appointed on a temporary basis on September 30, 2014, and on a permanent basis on

18  October 29, 2014.  Due to Mr. Hoffman's retirement, he was fully discharged as

19  receiver on February 24, 2020, and Mr. Kudla (also of Trigild, Inc.) was appointed

20  successor receiver.  Dkt. 383.

21  At the inception of the receivership, the Receivership Entities had very little

22  in terms of assets.  Company bank accounts held $484,002 and there was a relatively

23  small portfolio of automated teller machines ("ATMs") that produced a modest

24  stream of revenue.  It soon became clear that the only way to generate a meaningful

25  recovery for defrauded investors would be through the recovery of Ponzi scheme

26  profits and other transfers made to third parties.  It was also clear that the Receiver's

27  forensic accounting would be critical and would provide the foundation for the

28  pursuit of Clawback Claims.

## B.   Receiver's Forensic Accounting

The Preliminary Injunction Order required the former receiver (and since his appointment, the Receiver) to "make an accounting, as soon as practicable, to the Court and the SEC of the assets and financial condition of Defendant Nationwide Automated Systems, Inc." Dkt. No. 42, Part XII.E.  Accordingly, the former receiver tasked Mr. Kudla, who is a certified public accountant, and supporting accounting staff to perform such an accounting (collectively, "Receiver's Accounting Personnel").  The Receiver's Accounting Personnel gathered and reviewed available financial, accounting and banking records to reconstruct transactions of NASI, the Oasis Entities and other affiliated entities and reported the findings to the former receiver.

Reconstruction of financial and accounting documents was a central task (a) to determine who received funds from the Receivership Entities and how much they received, (b) to prepare necessary tax filings, (c) to determine the proper amount of profits of investors, and (d) determine the proper amounts of losses of investors.  The Receiver's Accounting Personnel worked diligently to create an accurate check register showing the checks paid by NASI to investors that cleared, not bounced, which was a critical and time-consuming task.

Due to the large size and length of time the Ponzi scheme operated, an enormous amount of information was required to be traced and verified.  Reliable information about NASI's check register and similar information was either not available or not accurate, which required the Receiver's Accounting Personnel to reconstruct the ledger of transactions.  Information from bank statements and cleared checks were used to create a schedule of checks paid by NASI to investors.  On average, over 2,000 checks were paid by NASI to investors on a monthly basis in 2014.

## C.   <u>Clawback Claims</u>

In April 2015, the former receiver obtained authority from the Court to pursue claims to recover investor profits, referral fees, and other transfers to third parties, as well as approval of proposed procedures for these Clawback Claims.  Since that time, the former receiver (and since his appointment, the Receiver) has resolved claims in favor of the receivership estate against 434 profiting investors and other third parties (373 settlements without a complaint filed, 43 settled after a filed complaint, 15 judgments and 3 bankruptcies) for a total recovery to the receivership estate of $40,457,744.

The rate of settlements in relation to total demand letters sent out is very high – 67.6% (373 settlements without a complaint being filed and 43 settlements after a complaint was filed).  Of course, not all profiting investors accepted the Court-approved settlement proposal included in the demand letter and therefore complaints had to be filed.  A total of 68 complaints were filed, all of which resulted in settlements or judgments in favor of the former receiver, with the exception of three cases that were stayed due to bankruptcies filed by the defendants.

Overall, the rate of cases filed (68) in relation to total demand letters is remarkably low – only 10.9%.  Accordingly, the pursuit of Clawback Claims, both by the former receiver and the Receiver, has not only been very successful, but also extremely efficient.

## D.   <u>Recoveries From Other Assets</u>

### 1.   Automated Teller Machines ("ATMs")

Although the automated teller machines ("ATMs") NASI sold to investors were entirely fictitious, NASI did have a relatively small number of real ATMs (approximately 240) that were operating in various hotels and casinos ("ATM Business") at the time of the former receiver's appointment.  The former receiver's staff operated the relatively small ATM Business from appointment until the ATM portfolio was sold on April 30, 2019.  During most of the period the former

receiver's staff operating the ATM Business, a positive monthly cash flow was produced, however, the income stream declined as time elapsed to the point where in some months the ATM Business generated a very small amount of net income and in other months, the ATM Business lost money. During the time the former receiver operated the ATM Business, the net income from the business totaled $662,732 ($6,570,421 in revenue and $5,907,689 in expenses). *See* Exhibit A, p. 4. To preserve receivership funds from monthly losses and to maximize recovery of receivership assets, the former receiver sought the Court's permission to market and sell the remaining ATMs to third-party buyers. The Court approved the sale of all remaining ATMs for $50,000 on April 16, 2019 (Dkt. No. 341) and escrow closed on April 30, 2019. The total recovery from the ATM Business operations and sale of the ATM portfolio was $712,732.

2.      Oasis Studio Rentals and Studios Maui Production

Oasis Studio Rentals, LLC, Oasis Studio Rentals 2, LLC, and Oasis Studio Rentals 3, LLC, ("Oasis Entities") ran a business whereby they leased mobile dressing rooms (trailers) and trucks to transport the trailers to film and television studios to be used by actors and others on set during production. The Oasis Entities appear to have been funded almost entirely by NASI. On November 18, 2014, the Court entered its Order Approving the Receiver's First Report and Recommendations, which confirmed that the Oasis Entities are affiliates of NASI, and therefore within the scope of the receivership. Accordingly, the Receiver immediately took steps to identify, locate, and secure the assets of the Oasis Entities. Significant investigations were conducted with the goals of: (1) identifying all vehicles purchased with NASI or Oasis funds, (2) tracing the purchase and sale of each vehicle to and from the Oasis Entities, (3) identifying income generated from vehicles owned or leased by the Oasis Entities and the recipients of these funds, (4) obtaining possession of the vehicles owned by Oasis Entities, (5) pursing potential claims against third parties who improperly benefited from the leasing and/or sale of

vehicles owned by Oasis Entities, and (6) selling vehicles owned by the Oasis Entities to maximize the recovery for the receivership estate.

Prior to the receivership, the day-to-day operations of Oasis vehicles, including the arrangements to lease trailers to the studios, were managed in the Los Angeles area by Robert Keller, Jr. ("Keller") with assistance from Defendant Ed Wishner's staff.  Through subpoenas issued to parties associated with Keller, including the current entity Keller leases vehicles with studios, Fiji Rentals, and forensic accounting of the Oasis Entities' bank accounts, the former receiver determined that Keller received funds from the Oasis Entities (which received funds from NASI) in excess of funds Keller put into the Oasis Entities.  Accordingly, the former receiver made a demand for Clawback funds against Keller, which was not settled within the Court-ordered timeframe, and the former receiver, through his counsel, filed a lawsuit against Keller.  Eventually, a settlement was reached, as part of which Keller paid $150,000 to the Receivership estate.

In addition to Oasis vehicles that were managed in California by Keller, at least two functional trailers were shipped to Hawaii and were being leased under the name Studios Maui Productions ("Studios Maui").  The Receiver traced and confirmed the purchase of a business owning up to four vehicles, Akamai RV, from accounts owned by Oasis and NASI that were leased by Studios Maui.  During a discussion between the Receiver's staff and counsel and Wishner, Wishner confirmed (a) the purchase of Akamai RV, (b) the shipment of two additional trailers owned by Oasis Entities from California to Hawaii and leased by Studios Maui, and (c) two additional trailers may have been purchased by Studios Maui. The day-to-day operations of Studios Maui were handled by Branscombe Richmond ("Richmond"), who resides in Hawaii.

After numerous attempts to contact Richmond and obtain information, the Receiver filed a motion to confirm the status of Studios Maui as an affiliate of NASI and the Oasis Entities, and therefore a receivership entity.  Dkt. No. 93.  The motion

also asked for an order directing Richmond to turn over the assets, accounts, and records of Studios Maui to the Receiver.  After the motion was filed, Richmond engaged counsel, who contacted the Receiver's counsel.  Through counsel, the Receiver was able to arrange for Richmond to produce documents and information, as well as for an appraiser to inspect the trailers located in Hawaii.  The motion was then granted on September 15, 2015.  Dkt. No. 97.  The market for rental trailers in Hawaii was very limited and the best option to obtain a recovery close to the appraised value would require shipping the vehicles to California.  However, the cost associated with shipping the trailers to California, storing them until sold, and uncertainty in finding a buyer decreased the expected net recovery from a sale.  In order to avoid incurring additional expenses and maximize the recovery, the former receiver sold the vehicles to Richmond for $9,250.

3.  Sale of Outstanding Judgments

At the conclusion of the pursuit of Clawback Claims, there were a total of 11 outstanding Clawback Judgments against investors who received profits or other amounts above and beyond the amounts they invested with NASI ("Clawback Judgments").  The total face amount of the Clawback Judgments was approximately $2.4 million.  The collectability of the Clawback Judgments was unknown and, while a recovery may have been possible on at least some of the Clawback Judgments, the enforcements costs and delay involved could be considerable.  The Receiver believed that delaying the final distribution of receivership estate assets and the conclusion of the receivership in order to enforce the Clawback Judgments was not warranted considering the costs and uncertain net recovery.  Accordingly, the Receiver submitted and the Court approved a marketing and sale procedure for the Clawback Judgments.  Dkt. No. 407.  The Receiver followed the procedures approved by the Court, including contacting a number of collection attorneys and other investors located in Southern California who purchase and enforce money judgments on a regular basis and listing the judgments on a national online

1  judgment website.  The Receiver then accepted the highest offer in the amount of
2  $60,000, entered into a purchase agreement for the sale of the judgments, assigned
3  all judgments to the buyer and was paid in full.

4      **E.      Claims and Interim Distribution Process**

5      In February 2018, the former receiver obtained approval of procedures for the
6  administration of claims against the receivership estate.  Dkt. 256.  In the following
7  months, claims notices were sent out to investors and other claimants, including
8  researching and locating addresses for investors and other claimants for whom
9  NASI's records did not provide a current address.

10     Of the approximately 1,579 claim notices that were mailed out to NASI
11  investors, 141 investors sent in a response disputing their claims.  The former
12  receiver reviewed the responses, including whatever documentation was provided,
13  and attempted to resolve the disputes with the applicable investors.  The process was
14  very successful; at the conclusion, only one claim dispute remained unresolved.  The
15  former receiver's recommendations as to allowed claims were accepted and adopted
16  by the Court in April 2019.  Dkt. 347.  As part of that order, the Court approved the
17  Distribution Plan and authorized the Receiver to make an initial round of
18  distributions to holders of allowed claims.

19     The former receiver proceeded to make the authorized distributions, including
20  issuing and tracking distribution checks, issuing wires to claimants located outside
21  of the country, and reissuing checks to claimants who had changed their address or
22  were unable to cash their checks for other reasons.  At the conclusion of this
23  process, the total amount distributed was $31,342,705 and only one check for
24  $315.07 remained uncashed.

25     **F.      City National Bank Settlement**

26     On May 4, 2016, the former receiver obtained permission from the Court file
27  a lawsuit against City National Bank ("CNB") and to engage special counsel to do
28  so.  The Receiver's action against CNB was filed in Los Angeles Superior Court and

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

905085.01/SD                                   -12-

1  was one of several cases filed against CNB relating to the NASI Ponzi scheme, with

2  the other cases being brought on behalf of investors.  The Receiver also filed

3  Clawback actions against Mark Soffa, a former NASI employee, and Brian

4  Fitzwilliams, a former CNB employee.  The Receiver's cases against Mr. Soffa and

5  Mr. Fitzwilliams were deemed to be related to the pending Los Angeles Superior

6  Court cases against CNB, which were coordinated before Judge William

7  Highberger.

8       In July 2018, the former receiver and the investors reached a global settlement

9  with CNB, Mr. Soffa, and Mr. Fitzwilliams.  Pursuant to the settlement agreement,

10  the receivership estate received $550,000 on account of its claims against Mr. Soffa,

11  and the investor class (for which the former receiver served as claims administrator)

12  received $33 million in settlement of the investors' and receivership estate's claims

13  against CNB and Mr. Fitzwilliams.  The Settlement Agreement, including the

14  contingent fee to be paid to counsel for the investors and special counsel for the

15  Receiver, was approved by this Court and the Los Angeles Superior Court.

16  Dkt. 299.  The net amount paid out to the investor class (after payment of attorney

17  fees and costs) was $22,406,490 with the remaining $107,413 of funds transferred to

18  the receivership estate to be combined in the Receiver's final distribution.  The

19  investors' claim amounts, which determined their pro rata share of the class

20  settlement funds, were the claim amounts set by this Court as part of the

21  receivership claims process discussed above.

22       **G.**    **Standardized Fund Accounting Report**

23       The Receiver's 24th Interim Report, filed on September 15, 2020, covers the

24  time period from April 1, 2020 through June 30, 2020.  Dkt. 416.  Attached hereto

25  as Exhibit C is a Standardized Fund Accounting Report for the receivership estate

26  for the time period July 1, 2020 through October 31, 2020.  As discussed below, a

27  final accounting regarding distributions to investors with allowed claims, the use of

28  reserve funds, and the turnover of any remaining monies to the United States

Treasury will be provided with the Receiver's final declaration after all remaining receivership tasks have been completed.

## III.   CLOSING MATTERS

### A.   Establishment of Reserve, Payment of Administrative Expenses and Proposed Final Distribution

#### 1.   Establishment of Reserve

The Receiver requests a reserve of funds in the amount of $1,685,700 to pay the former receiver and Receiver, their counsel, Allen Matkins, and certified public accountants, Duffy Kruspodin, as detailed in their final fee applications filed concurrently with this Motion, including (a) $1,358,258 in fees held back from interim fee applications (20% hold back), (b) $132.443 in fees and costs already incurred during the period from April 1, 2020 through October 31, 2020, and (c) up to $195,000 in fees and costs for remaining work to conclude the Receivership. Pursuant to the Court-approved Distribution Plan and by agreement with the Securities and Exchange Commission ("Commission"), the Receiver will pay any unused reserve funds to the United States Treasury at the conclusion of the receivership.

#### 2.   Administrative Expenses

If all final fee applications submitted herewith are approved and the fees and costs projected for remaining work to conclude of the receivership are actually incurred, the total administrative expenses for the receivership will be $7,663,126, or 11.9% of the Total Recovery.  The administrative expenses include (a) the combined fees and costs of the former receiver and Receiver, if all fee applications are approved, of $4,764,166, or about 7.4% of the Total Recovery, (b) fees and costs for the Receiver's counsel, Allen Matkins, if all fee applications are approved, of $2,636,646, or about 4.1% of the Total Recovery, (c) fees and costs for the Receiver's certified public accountants, Duffy Kruspodin, if all fee applications are approved, of $122,551, or about .2% of the Total Recovery, (d) fees and costs for

other professionals hired by the former receiver or Receiver of $79,443, or about .1% of Total Recovery, and (e) fees and costs paid to third-parties (other than professionals and include a distribution to non-investor priority claim and payments of federal and state taxes), amount to approximately $60,320, or .1% of the Total Recovery.

### 3. Proposed Final Distribution.

The Receiver proposes a final distribution of $2,935,267 million to the allowed net losing investors, which results in a total distribution to investors with allowed claims of $56,684,462 or approximately 45.0% of the combined net losses of all allowed net losing investors ($31,342,705 from the Receiver's interim distribution, $22,406,490 from the CNB settlement distribution, and $2,935,267 million from the Receiver's proposed final distribution). A breakdown of the remaining funds and final distribution amount is provided at page 15 of Exhibit A.

### 4. Cancellation of Outstanding/Stale Checks

There are a total of 47 uncashed and outstanding checks issued from receivership accounts. The checks, most of which are in amounts under $250, total $14,375.80. The checks were issued to the hotels and other locations where the ATMs owned by NASI were operated and represent the fees or monthly rent under the contracts with such locations. These checks have been outstanding for over a year and a half, and some of them go as far back as 2016. At this point, the Receiver believes the checks will most likely never be cashed. Accordingly, the Receiver requests authority to stop payment and cancel the outstanding checks (meaning any claims asserted by the payees for those amounts would also be disallowed) such that all receivership accounts can be fully reconciled, the balance of funds transferred to the United States Treasury, as discussed above, and then closed. A schedule reflecting the outstanding checks is attached hereto as Exhibit D.

**B.     Destruction of Records**

The Receiver presently stores files and records for the Receivership Entities' operations, personnel files, investor files, and miscellaneous documents, and electronic records.  The Receiver has met and conferred with counsel for the Commission, which does not wish to take possession of the records or object to them being destroyed.  Continuing to store the records does not benefit the claimants and involves monthly expense.  Accordingly, rather than reducing the funds available for distribution by amounts necessary to cover continuing storage costs, the Receiver seeks permission to destroy the records upon entry of the Discharge Order discussed below.

**C.     Discharge of Receiver**

The former receiver and Receiver have successfully completed all work required under the Appointment Orders.  The Receivership Entities' assets were marshalled, protected, and successfully monetized, the accounting was completed, and the claims of investors and others were adjudicated.  As such, it is appropriate for the Receiver to ask the Court to enter an order discharging her upon the following conditions:

1.     The Receiver shall cause the final distribution to approved claimants to be completed in accordance with the Claims Order (Dkt. 347) and Distribution Plan (Dkt. 337-1, Exhibit F);

2.     The Receiver shall complete the tasks outlined in this Motion, including the conducting a final distribution to investors with allowed claims, dissolving Receivership Entities, preparation of tax returns and other tax filings, and the payment of actual fees and expenses of the Receiver and his professionals;

3.     In accordance with the Distribution Plan, following 120 days after the final distribution to claimants, the Receiver shall turn over to the United States Treasury any balance of funds; and

4.      Within 180 days after the final distribution to approved claimants has been made, the Receiver shall file a declaration with the Court providing a final accounting regarding use of the Reserve funds, along with an order discharging the Receiver ("Discharge Order"), in the form attached hereto as Exhibit B, which Discharge Order may be entered by the Court without further notice or a hearing.

# IV.   ARGUMENT

## A.   Broad Equitable Powers of the Court

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief."  *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors."  *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly.  *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership.  *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.  The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.  A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").  Accordingly, the Court has broad equitable powers and discretion in the administration of the receivership estate and disposition of receivership assets.

### B.    Conclusion of Receivership and Discharge of Receiver

Federal District Courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of the same.  *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986).  Their power and discretion includes the authority to "make rules which are practicable as well as equitable."  *Id.* at 1039 (quoting *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).  In this case, the Court's supervision of the receivership is guided by these same rules.

The former receiver and Receiver have diligently carried out their Court-ordered duties, including assuming control of the enterprise, marshalling and selling assets, performing a forensic accounting, pursuing claims, providing detailed reports to the Court, conducting a claims and distribution process, and if this Motion and the fee applications filed herewith are granted, distributing nearly $2.9 million for a grand total claimant recovery of approximately $56,649,195, which amounts to about forty-five cents of each dollar of investor losses.  As there is no further material net benefit to be gained from maintaining this receivership, the Receiver requests that he be discharged and the case be closed, effective upon completion of the final closing tasks as described in Section III above.

Effective upon completion of the closing tasks, the Receiver requests the Discharge Order (attached hereto as Exhibit B) be entered, which order discharges the Receiver and fully releases him and his counsel of: (i) all duties under the Appointment Order, and (ii) any and all claims and liabilities associated with the

1  case and the Defendants.  In addition, the Receiver asks the Court to approve and
2  ratify all actions taken by the Receiver and his professionals in the performance of
3  the Receiver's Court-ordered duties.  The Receiver further requests the Court retain
4  exclusive jurisdiction over any and all new actions or claims related to the
5  receivership or work done by the Receiver and his professionals to carry out the
6  Receiver's Court-ordered duties.  It is necessary and appropriate to issue the
7  requested "conditional" discharge order.

8  ### V.    MEET AND CONFER

9        The Receiver has met and conferred with counsel for the Commission and has
10  been advised the Commission has no opposition to the relief requested herein.

11  ### VI.    CONCLUSION

12        For the foregoing reasons, the Receiver respectfully requests the Court grant
13  the Motion, authorize the Receiver to take the steps necessary to close the
14  receivership as laid out herein, and issue the proposed Discharge Order upon filing
15  of the Receiver's final declaration providing her final accounting of reserve funds.

16

17  Dated:  December 17, 2020

18                                                        By: _____
19                                                              AARON J. KUDLA
                                                              Receiver
20

21  Dated:  December 17, 2020                    ALLEN MATKINS LECK GAMBLE
                                                              MALLORY & NATSIS LLP
22
                                                              By: _____ /s/ Edward G. Fates
23                                                                  EDWARD G. FATES
                                                                  Attorneys for Receiver
24                                                                  AARON J. KUDLA
25

26

27

28

# EXHIBIT A

# Receiver Over NASI
## Recovery and Distributions to Investors
## Summary

| | | | Amount | | Attachment |
|---|---|---|---|---|---|
| **1** | **NET LOSSES** | | $ | 125,962,207 | |
| | | | | | |
| **2** | **RECOVERY** | | | | |
| | a | **Receivership Recovery** | $ | 41,810,506 | 33.2% | A |
| | b | **CNB Related Recovery (Net of Fees/Expenses)** | $ | 22,513,903 | 17.9% | A |
| | | **Total Recovery (Receivership and CNB Net)** | $ | 64,324,408 | 51.1% | |
| | | | | | |
| **3** | **ADMIN. FEES AND EXPENSES** | | | | |
| | a | **Professional Fees** | $ | 7,160,056 | 11.1% | B |
| | b | **Professional Expenses** | $ | 442,749 | 0.7% | B |
| | c | **Admin. Fees/Expenses to Third Parties** | $ | 60,320 | 0.1% | B |
| | | **Total Admin. Fees and Expenses** | $ | 7,663,126 | 11.9% | |
| | | | | | |
| **4** | **DISTRIBUTIONS TO INVESTORS** | | | | |
| | a | **Distribution to Investors: Receivership (Round 1)** | $ | (31,342,705) | 24.9% | |
| | b | **Distribution to Investors: Receivership (Round 2) (Est.)** | $ | (2,935,267) | 2.3% | C |
| | c | **Distribution to Investors: CNB** | $ | (22,406,490) | 17.8% | D |
| | | **Total Distributions to Investors** | $ | (56,684,462) | 45.0% | |

| | |
|---|---|
| **Return of Investor Loss (Net):** | **45.0%** |
| **Distribution to Investor/ Recovery:** | **88.1%** |

Updated 12/7/2020

# Receiver Over NASI
## Recovery and Distributions to Investors
### Summary

| | | | Amount | | Attachment |
|---|---|---|---:|---|:---:|
| 1 | **NET LOSSES** | $ | 125,962,207 | | |
| 2 | **RECOVERY** | | | | |
| | a | **Receivership Recovery** | $ | 41,810,506 | 33.2% | A |
| | b | **CNB Related Recovery (Net of Fees/Expenses)** | $ | 22,513,903 | 17.9% | A |
| | | **Total Recovery (Receivership and CNB Net)** | $ | 64,324,408 | 51.1% | |
| 3 | **ADMIN. FEES AND EXPENSES** | | | | |
| | a | **Professional Fees** | $ | 7,160,056 | 11.1% | B |
| | b | **Professional Expenses** | $ | 442,749 | 0.7% | B |
| | c | **Admin. Fees/Expenses to Third Parties** | $ | 60,320 | 0.1% | B |
| | d | **Emergency Reserve** | | #REF! | #REF! | B |
| | | **Total Admin. Fees and Expenses** | | #REF! | #REF! | |
| 4 | **DISTRIBUTIONS TO INVESTORS** | | | | |
| | a | **Distribution to Investors: Receivership (Round 1)** | $ | (31,342,705) | 24.9% | |
| | b | **Distribution to Investors: Receivership (Round 2) (Est.)** | $ | (2,900,000) | 2.3% | C |
| | | **Net Funds to Distribute (Incl. Emerg. Reserve)** | #REF! | | | |
| | c | **Distribution to Investors: CNB** | $ | (22,406,490) | 17.8% | D |
| | | **Total Distributions to Investors** | $ | (56,649,195) | 45.0% | |

| | |
|---|---:|
| **Return of Investor Loss (Net):** | **45.0%** |
| **Distribution to Investor/ Recovery:** | **88.1%** |

Exhibit A, Page 22

## Receiver Over NASI
## Recovery (Receivership and CNB)
## Attachment A

| | | | | | | | | Amount | Attachment |
|---|---|---|---|---|---|---|---|---|---|
| A | Receivership Recovery | | | | | | $ | 702,176 | |
| | 1 | Business Activities | | | | | $ | 702,176 | |
| | | a | Net Income: ATM Operations | | | $ | 662,732 | | | A-1 |
| | | | i | Revenue (ATM Operations) | $ 6,570,421 | | | | |
| | | | ii | Expenses (ATM Operations) | $ (5,907,689) | | | | |
| | | b | Net Income: Oasis Studio Rentals | | | $ | (10,556) | | | A-2 |
| | | | i | Revenue (OSR) | $ 16,122 | | | | |
| | | | ii | Expenses (OSR) | $ (26,678) | | | | |
| | | c | Other Recovery: Business Assets | | | $ | 50,000 | | |
| | | | i | Sale of ATMs (porfolio sale) | $ 50,000 | | | | |
| | 2 | Cash and Securities (Seized Bank Accounts) | | | | | $ | 484,002 | |
| | 3 | Interest Income | | | | | $ | 166,583 | |
| | 4 | Third-Party Litigation Income | | | | | $ | 40,457,744 | |
| | | i | Loan Repayment | | | $ | 187,000 | | |
| | | ii | Settlements: Installment Payments | | | $ | 7,536,049 | | |
| | | iii | Settlements: Lump Sum Payments | | | $ | 28,383,130 | | |
| | | iv | Financial Hardship Applications | | | $ | 3,582,315 | | |
| | | v | City National Bank-Soffa Settlement | | | $ | 550,000 | | |
| | | vi | OSR: Robert Keller Jr. Settlement | | | $ | 150,000 | | |
| | | vii | Studio Maui: Branscombe | | | $ | 9,250 | | |
| | | viii | Sale of Clawback Judgments | | | $ | 60,000 | | |
| | 5 | Restitution | | | | | $ | - | |
| | | i | Received from Sale of Gillis Residence | $ 396,752 | | | | |
| | | ii | Payment to US Distr. Court re Restitution | $ (396,752) | | | | |
| | | | Receivership Recovery | | | | | $ | 41,810,506 | |
| | | | | | | | | | |
| B | CNB Recovery (Net of Fees/Expenses) | | | | | | | | |
| | 1 | CNB Distribution to Investors: | | | | | $ | 22,406,490 | |
| | 2 | CNB Transfer to Receivership: | | | | | $ | 107,413 | |
| | | | Total CNB Recovery (Net) | | | | | $ | 22,513,903 | |
| | | | | | | | | | |
| | | Total Recovery (Receivership and CNB Net) | | | | | $ | 64,324,408 | |

Updated 12/7/2020

**Receiver Over NASI**
**ATM Operations by Receiver**
**Income Statement**
**Attachment A-1**

| Description | Sub-Amount | | Amount | |
|---|---|---|---|---|
| **INCOME - ATMs** | | | | |
| ATM Income | | | $ | 6,570,421 |
| **TOTAL INCOME** | | | **$** | **6,570,421** |
| | | | | |
| **EXPENSES - ATMs** | | | | |
| | | | | |
| **OPERATING EXPENSES - ATMs** | | | | |
| ATM Rent Fees (Locations) | | | **$** | **2,419,395** |
| Pre-Receiver Appointment | $ | 70,445 | | |
| Post-Receiver Appointment | $ | 2,348,950 | | |
| ATM Servicer Fees | | | **$** | **3,432,009** |
| Pre-Receiver Appointment | $ | 4,180 | | |
| Post-Receiver Appointment | $ | 3,427,829 | | |
| Bank Charges and Fees | | | **$** | **4,723** |
| Bank Charges - Misc. Charge | $ | 182 | | |
| Bank Charges - CNB Doc. Retrieval | $ | 4,541 | | |
| Communication Costs | | | **$** | **4,623** |
| Contract Services | | | **$** | **3,678** |
| Original Contract Services | $ | 1,986 | | |
| Pre-Receiver | $ | 868 | | |
| Reclass: Prof. Fee to Contract Services: Furniture Moving | $ | 824 | | |
| Ground Lease | | | **$** | **5,309** |
| Insurance - ATMs | | | **$** | **18,542** |
| Licenses & Permits | | | **$** | **1,981** |
| Office Supplies | | | **$** | **4,999** |
| Payroll Taxes | | | **$** | **12,290** |
| Repairs - Locks & Keys | | | **$** | **140** |
| **TOTAL OPERATING EXPENSES** | | | **$** | **5,907,689** |
| | | | | |
| **NET OPERATING INCOME** | | | | **662,732** |
| | | | | |
| **TOTAL EXPENSES** | | | **$** | **5,907,689** |
| | | | | |
| **NET INCOME** | | | **$** | **662,732** |

**Receiver Over NASI**
**Oasis Studio Rentals, LLC - Operations**
**Income Statement**
**Attachment A-2**

|  | | Amount |
|---|---|---|
| **INCOME - HoneyWagon Rental** | | |
| Rental Income | $ | 16,122 |
| **TOTAL INCOME** | **$** | **16,122** |
| | | |
| **OPERATING EXPENSES - HoneyWagons** | | |
| Bank Charges and Fees | $ | 116 |
| Insurance - HoneyWagons | $ | 11,471 |
| Refunds from Vendors | $ | (352) |
| Licenses & Permits | $ | 22 |
| **TOTAL OPERATING EXPENSES** | **$** | **11,257** |
| | | |
| **NET OPERATING INCOME** | | **4,865** |
| | | |
| **NON-OPERATING EXPENSES** | | |
| Income Tax | $ | 15,421 |
| **TOTAL NON-OPERATING EXPENSE** | **$** | **15,421** |
| | | |
| **TOTAL EXPENSES** | **$** | **26,678** |
| | | |
| **NET INCOME** | **$** | **(10,556)** |

Updated 12/7/2020

**Receiver Over NASI**
**Recovery and Distributions to Investors**
**Attachment B**
**Receivership Admin. Fees and Expenses**

**1   TOTAL RECOVERY (Receivership and CNB Net):**                    $     64,324,408

**2   PROFESSIONAL FEES AND EXPENSES (through completion):**

|  |  | Fees only | | Fees and Expenses | |
|---|---|---|---|---|---|
|  |  | **Total Amount (Start to Conclusion)** | **% of Total Recovery** | **Total Amount (Start to Conclusion)** | **% of Total Recovery** |
| a | **Receiver** | $     4,589,769 | 7.1% | $     4,764,166 | 7.4% |
| b | **Allen Matkins** | $     2,372,443 | 3.7% | $     2,636,646 | 4.1% |
| c | **Duffy Kruspodin (CPA)** | $     121,451 | 0.2% | $     122,551 | 0.2% |
| d | **Others** | $     76,394 | 0.1% | $     79,443 | 0.1% |
|  | **Total Prof. Fees** | $     7,160,056 | 11.1% | | |
|  | **Total Expenses** | $     442,749 | 0.7% | | |
|  | **Total Prof. Fees and Expenses** | $     7,602,806 | 11.8% | $     7,602,806 | 11.8% |

**3   ADMIN. EXPENSES (Third-Parties) (through 10/31/20):**

|  |  | **Total Amount (through 10/31/20)** | **% of Total Recovery** |
|---|---|---|---|
| a | **Claims Admin. Fee & Expense (third party)** | $     2,047 | 0.0% |
| b | **Distribution to Non-Investor (priority claim)** | $     12,079 | 0.0% |
| c | **Third-Party Litigation Expense** | $     3,806 | 0.0% |
| d | **Federal and State Taxes** | $     42,389 | 0.1% |
|  | **Total Admin. Expenses (Third-Parties)** | $     60,320 | 0.1% |
| **4** | **PROFESSIONAL FEES/EXPENSES AND ADMIN. EXPENSES** | $     7,663,126 | 11.9% |

**Receiver Over NASI**
**Recovery and Distributions to Investors**
**Attachment B-1**
**Professional Fees and Expenses (Summary)**

|  |  | Receiver | Allen Matkins | Duffy Kruspodin (CPA) | Others | Total |
|---|---|---|---|---|---|---|
| 1 | **Final Application Period:** |  |  |  |  |  |
|  | **(Attachment B-3)** |  |  |  |  |  |
|  | **Fees** | $ 91,255 | $ 22,136 | $ 13,982 | $ - | $ 127,374 |
|  | **Expense Reimb.** | $ 5,069 | $ - | $ - | $ - | $ 5,069 |
|  | **Total Fees and Exp. Reimb.** | $ 96,324 | $ 22,136 | $ 13,982 | $ - | $ 132,443 |
| 2 | **All Previous Fee Applications:** |  |  |  |  |  |
|  | **(Attachment B-2)** |  |  |  |  |  |
|  | **Fees Paid** | $ 3,520,411 | $ 1,846,645 | $ 65,975 | $ 76,394 | $ 5,509,425 |
|  | **Exp. Reimb. Paid** | $ 142,328 | $ 261,203 | $ 1,100 | $ 3,049 | $ 407,680 |
|  | **Total Fees and Exp. Reimb. Paid** | $ 3,662,739 | $ 2,107,848 | $ 67,075 | $ 79,443 | $ 5,917,105 |
| 3 | **Holdback of Funds (20%)** | $ 880,103 | $ 461,661 | $ 16,494 |  | $ 1,358,258 |
| 4 | **Estimate to Conclude:** |  |  |  |  | $ - |
|  | **(Attachment B-4)** |  |  |  |  |  |
|  | **Fees** | $ 98,000 | $ 42,000 | $ 25,000 | $ - | $ 165,000 |
|  | **Expense Reimb.** | $ 27,000 | $ 3,000 | $ - | $ - | $ 30,000 |
|  | **Total Fees and Exp. Reimb.** | $ 125,000 | $ 45,000 | $ 25,000 | $ - | $ 195,000 |
| 5 | **Total Fees (Excludes Expenses)** | $ 4,589,769 | $ 2,372,443 | $ 121,451 | $ 76,394 | $ 7,160,056 |
| 6 | **Total Expenses** | $ 174,397 | $ 264,203 | $ 1,100 | $ 3,049 | $ 442,749 |
| 7 | **Total Fees and Expenses** | $ 4,764,166 | $ 2,636,646 | $ 122,551 | $ 79,443 | $ 7,602,806 |

## Receiver Over NASI
## Net Funds to Distribute
## Attachment B-3
## Professional Fees and Expenses
## Fees and Expenses Not Included in Prior Fee Apps

**Professional Fees and Expenses:**

| 1 | Fees and Expenses Not In Prior Fee App | Fees | Expenses | Fees and Expenses | Attachment |
|---|---|---|---|---|---|
| a | **Receiver** | $ 91,255 | $ 5,069 | $ 96,324 | B-3-1/ B-3-2 |
| | (04/01/20 to 10/31/20) | | | | |
| b | **Allen Matkins** | $ 22,136 | $ - | $ 22,136 | |
| | (04/01/20 to 08/31/20) | | | | |
| c | **Duffy, Kruspodin & Company LLP (CPAs)** | $ 13,982 | $ - | $ 13,982 | |
| | (09/17/19 to 09/30/20) | | | | |
| | **Total (Not in Prior Fee Apps)** | **$ 127,374** | **$ 5,069** | **$ 132,443** | |

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-3-1**
**Receiver Professional Fees**
**April 1, 2020 to October 31, 2020 (Actual)**

| Category | Total for Q2 and Q3 2020 | | | October | | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Hours | Amount | | Hours | Amount | Hours | | Amount |
| **Case Administration:** | 23.0 | $ | 8,050.00 | 1.6 | $ 560.00 | 24.6 | $ | 8,610.00 |
| **Third Party Recoveries:** | 41.0 | $ | 14,350.00 | 16.3 | $ 5,705.00 | 57.3 | $ | 20,055.00 |
| **Accounting/ Auditing:** | 54.6 | $ | 9,642.50 | 72.6 | $ 13,210.00 | 127.2 | $ | 22,852.50 |
| **Status Report:** | 11.5 | $ | 3,757.50 | | | 11.5 | $ | 3,757.50 |
| **Tax Issues:** | 14.9 | $ | 5,215.00 | 11.3 | $ 3,955.00 | 26.2 | $ | 9,170.00 |
| **USAO Restitution Amounts** | 39.7 | $ | 13,895.00 | | | 39.7 | $ | 13,895.00 |
| **Wind Down** | - | $ | - | 36.9 | $ 12,915.00 | 36.9 | $ | 12,915.00 |
| Total: | **184.6** | **$** | **54,910.00** | | **$ 36,345.00** | 184.6 | $ | 91,255.00 |

| | Q2 | Q3 |
| --- | --- | --- |
| **Case Administration:** | $ 6,370.00 | $ 1,540.00 |
| **Third Party Recoveries:** | $ 12,705.00 | $ 1,645.00 |
| **Accounting/ Auditing:** | $ 4,425.00 | $ 5,217.50 |
| **Status Report:** | $ 1,505.00 | $ 2,252.50 |
| **Tax Issues:** | $ 2,170.00 | $ 3,045.00 |
| **USAO Restitution Amounts** | $ 2,240.00 | $ 11,655.00 |
| | $ 29,415.00 | $ 25,355.00 |

54,770.00

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-3-2**
**Receiver Expense Reimbursements**
**April 1, 2020 to Oct. 31, 2020 (Actual)**

|   | Category | Charge |
|---|---|---|
|   |   |   |
| 1 | Bank Fees | $ 2,588.01 |
| 2 | Computer Equipment and Software: | $ 1,593.50 |
| 3 | Miscellaneous Fees: | $ - |
| 4 | Photocopying: | $ 547.35 |
| 5 | Postage/ Overnight Expenses: | $ 142.06 |
| 6 | Storage of Documents | $ 197.86 |
|   | **Total Expense Reimbursements for Q2 and Oct 2020** | **$ 5,068.78** |
|   |   |   |
|   |   |   |

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-3-2**
**Receiver Expenses (Detailed)**
**April 1, 2020 to Oct. 31, 2020 (Actual)**

| Date | Description | Amount |
|---|---|---|
| **Bank Fees** | | |
| 04/30/20 | Bank Fee - April | $ 369.25 |
| 05/30/20 | Bank Fee - May | $ 366.61 |
| 06/30/20 | Bank Fee - June | $ 382.94 |
| 07/31/20 | Bank Fee - July | $ 365.70 |
| 08/31/20 | Bank Fee - August | $ 365.69 |
| 09/30/20 | Bank Fee - Sept. | $ 370.80 |
| 10/31/20 | Bank Fee - Oct. | $ 367.02 |
| **Total Bank Fees** | | **$ 2,588.01** |
| | | |
| **Computer Equipment and Software:** | | |
| 10/31/20 | MRI Software Fee ($150/month) (04/01/20 to 10/31/20) | $ 1,050.00 |
| 10/31/20 | Website Hosting (Annual) | $ 143.88 |
| 10/31/20 | Email License (@nasi-receivership.com) (Annual) | $ 71.88 |
| 10/31/20 | Leapfile Data Transfer ($20/month (04/01/20 to 10/31/20) | $ 140.00 |
| 10/31/20 | Background Research License ($26.82/month) (04/01/20 to 10/31/20) | $ 187.74 |
| **Total Computer Equipment and Software** | | **$ 1,593.50** |
| | | |
| **Photocopying:** | | |
| 04/30/20 | Copies - 654 BW @ .15 each = $98.10 | $ 98.10 |
| 05/31/20 | Copies - 542 BW @ .15 each = $81.30 | $ 81.30 |
| 06/30/20 | Copies - 704 BW @ .15 each = $105.60 | $ 105.60 |
| 07/31/20 | Copies - 206 BW @ .15 each = $30.90 | $ 30.90 |
| 08/31/20 | Copies - 235 BW @ .15 each = $35.25 | $ 35.25 |
| 09/30/20 | Copies - 437 BW @ .15 each = $65.55 | $ 65.55 |
| 10/31/20 | Copies - 871 BW @ .15 each = $130.65 | $ 130.65 |
| **Total Photocopying** | | **$ 547.35** |
| | | |
| **Postage/ Overnight Expenses:** | | |
| 04/30/20 | Postage - April | $ 11.00 |
| 04/30/20 | FedEx - April | $ 16.67 |
| 05/31/20 | Fedex - May | $ 66.08 |
| 05/31/20 | Postage - May | $ 0.73 |
| 06/30/20 | Postage - June | $ 22.75 |
| 10/31/20 | FedEx - Oct. | $ 24.83 |
| **Total Postage/ FedEx** | | **$ 142.06** |
| | | |
| **Storage of Documents:** | | |
| 04/30/20 | Storage Fee - April | $ 27.72 |
| 05/31/20 | Storage Fee - May | $ 28.64 |
| 06/30/20 | Storage Fee - June | $ 27.72 |
| 07/31/20 | Storage Fee - July | $ 27.72 |
| 08/31/20 | Storage Fee - August | $ 28.64 |
| 09/30/20 | Storage Fee - Sept | $ 28.71 |
| 10/31/20 | Storage Fee - Oct | $ 28.71 |
| **Total Storage** | | **$ 197.86** |
| | | |
| **Total Expense Reimbursements** | | **$ 5,068.78** |

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-4**
**Professional Fees and Expenses**
**Estimate to Conclude**

<u>**Professional Fees and Expenses:**</u>

| | | | **Fees** | | **Expenses** | | **Fees and Expenses** | **Attachment** |
|---|---|---|---|---|---|---|---|---|
| **1** | **Estimate to Conclude** | | | | | | | |
| | a | **Receiver** | $  98,000 | $ | 27,000 | $ | 125,000 | **B-4-1/ B-4-2** |
| | b | **Allen Matkins** | $  42,000 | $ | 3,000 | $ | 45,000 | |
| | c | **Duffy, Kruspodin & Company LLP (CPAs)** | $  25,000 | | | $ | 25,000 | |
| | | **Total Fees and Expense (Estimate to Completion)** | $  165,000 | $ | 30,000 | $ | 195,000 | |

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-4-2**
**Receiver Expenses (Summary)**
**Nov. 1, 2020 to Completion**

**Receiver Expenses (Nov. 1, 2020 to Completion)**

|   | **Description** | **Amount (Estimated)** |
|---|---|---|
| 1 | Bank Fees | $ 14,457.00 |
| 2 | Computer Equipment and Software: | $ 2,361.11 |
| 3 | Entity Dissolution | $ 1,564.00 |
| 4 | Photocopying: | $ 1,500.00 |
| 5 | Postage/ Overnight Expenses: | $ 1,973.63 |
| 6 | Storage and Destruction: | $ 1,246.40 |
| 7 | Taxes | $ 3,800.00 |
|   | **Total Receiver Expenses (Est.)** | $ 26,902.14 |

Updated 12/7/2020

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment B-4-2**
**Receiver Expenses (Detailed)**
**Nov. 1, 2020 to Completion**

| Description | 1-Time Fees | Monthly/ Occurence Fee | # of Months/ Occurrence | Total Fees |
|---|---|---|---|---|
| **Bank Fees** | | | | |
| Bank Fee - Distribution Fees | $ 6,000.00 | | | $ 6,000.00 |
| Bank Fee - Cancelled/Reissued Check Fees | | $ 30.00 | 150 | $ 4,500.00 |
| Bank Fee - Cleared Check Copies | | $ 0.20 | 1500 | $ 300.00 |
| Bank Fee - Monthly | | $ 365.70 | 10 | $ 3,657.00 |
| **Total Bank Fees** | | | | $ 14,457.00 |
| | | | | |
| **Computer Equipment and Software:** | | | | |
| MRI Software Fee | | $ 150.00 | 10 | $ 1,500.00 |
| Leapfile 1 User @ $20 each | | $ 20.00 | 10 | $ 200.00 |
| Receiver's Email License (Annual) | $ 59.88 | | | $ 59.88 |
| Website Domain Fee (Annual) | $ 333.03 | | | $ 333.03 |
| Background Research License | | $ 26.82 | 10 | $ 268.20 |
| **Total Computer Equipment and Software** | | | | $ 2,361.11 |
| | | | | |
| **Entity Dissolution** | | | | |
| NASI - CA Dissolution fees/charges | $ 391.00 | | | $ 391.00 |
| OSR - CA Dissolution fees/charges | $ 391.00 | | | $ 391.00 |
| OSR 2 - CA Dissolution fees/charges | $ 391.00 | | | $ 391.00 |
| ORS 3 - CA Dissolution fees/charges | $ 391.00 | | | $ 391.00 |
| **Total Entity Dissolution Fees/Charges** | | | | $ 1,564.00 |
| | | | | |
| **Photocopying:** | | | | |
| 1,000 B&W Copies @ $0.15 each | | $ 150.00 | 10 | $ 1,500.00 |
| **Total Photocopying** | | | | $ 1,500.00 |
| | | | | |
| **Postage/ Overnight Expenses:** | | | | |
| Postage and FedEx - Distribution | $ 1,373.63 | | | $ 1,373.63 |
| Postage - Monthly | | $ 60.00 | 10 | $ 600.00 |
| **Total Postage/ FedEx** | | | | $ 1,973.63 |
| | | | | |
| **Storage and Destruction:** | | | | |
| Storage Fee - Monthly | | $ 28.64 | 10 | $ 286.40 |
| Document Destruction Fee | | $ 8.00 | 120 | $ 960.00 |
| **Total Storage and Descruction** | | | | $ 1,246.40 |
| | | | | |
| **Taxes and Filing Fees** | | | | |
| California (2021) | $ 800.00 | | | $ 800.00 |
| 1099 Tax Filing | $ 2,500.00 | | | $ 2,500.00 |
| 1045 Tax Filing | $ 500.00 | | | $ 500.00 |
| **Total Taxes** | | | | $ 3,800.00 |
| | | | | |
| | | | | $ 26,902.14 |

Updated 12/7/2020

## Receiver Over NASI
## Net Funds to Distribute
## Attachment C

|  |  |  |  | Amount | Attachment |
|---|---|---|---|---|---|
| **A.** | **AVAILABLE FUNDS (All Sources):** | | | | |
|  | **1** | **Bank Account Balance (as of 10/31/20):** | $ | 4,555,968 | |
|  |  | a | **Standard Fund Accounting Report (07/01/20 to 10/31/20)** | | C-1 |
|  |  | b | **Bank Account Reconciliation** | | C-3 |
|  | **2** | **Clawback Recoveries Outstanding (Anticipated) (Increase Funds):** | $ | 65,000 | C-4 |
|  |  | **Total Available Funds (All Sources):** | $ | 4,620,968 | |
| **B.** | **RESERVE FUNDS:** | | | | |
|  | **1** | **Professional Fees and Expenses (Outstanding and Estim.):** | | | |
|  |  | a | **Through Q1 2020 (Holdback - 20% of Fee)** | $ | (1,358,258) | B-1 |
|  |  | b | **Not Included in Previous Fee Apps (Actual)** | $ | (132,443) | B-1 |
|  |  | c | **Estimated to Conclude** | $ | (195,000) | B-1 |
|  |  | **Total Prof. Fees and Expenses** | $ | (1,685,700) | |
|  |  | **Total Reserve Funds:** | $ | (1,685,700) | |
| **C.** | **NET FUNDS TO DISTRIBUTE TO INVESTORS (Round 2 - Final)** | | $ | 2,935,267 | |

Updated 12/7/2020

# Receiver Over NASI
## Net Funds to Distribution
## Attachment C-1
## SFAR for July 1, 2020 to October 31, 2020

| | | | | |
|---|---|---|---:|---:|
| **Beginning Balance (07/01/20)** | | | $ | **4,524,049.40** |
| | | | | |
| **Increases in Fund Balance:** | | | | |
| Interest/Dividend Income | $ | 165.80 | | |
| Third-Party Litigation Income | $ | 4,461.74 | | |
| Transfer from CNB Claims Administrator | $ | 107,413.24 | | |
| **Total Increases in Fund Balance** | **$** | **112,040.78** | | |
| | | | | |
| **Total Funds Available Before Disbursements** | | | $ | **4,636,090.18** |
| | | | | |
| **Decreases in Fund Balance:** | | | | |
| Disbursements to Receiver or Other Professionals | $ | (74,164.36) | | |
| Claims Administrative Fee (third party) | $ | (395.00) | | |
| Federal and State Taxes | $ | (5,563.19) | | |
| **Total Disbursements for Receivership Operations** | **$** | **(80,122.55)** | | |
| | | | | |
| **Ending Balance of Fund - Net Assets (10/31/20)** | | | $ | **4,555,967.63** |

Updated 12/7/2020

**Receiver Over NASI**
**Exhibit ___**
**Outstanding Checks**
**(As of 10/31/20)**

**Nationwide Automated Systems, Inc.:**

| Check No. | Check Date | Payee Name | | Amount |
|---|---|---|---|---|
| 3744 | 04/28/16 | SUNRISE LODGE NA000390 | $ | 25.50 |
| 3755 | 05/25/16 | BEST WESTERN - DOSWELL NA000087 | $ | 10.50 |
| 3851 | 05/25/16 | RAMADA INN - BOSSIER CTY - NA000132 | $ | 24.00 |
| 3916 | 05/26/16 | HOTEL INDIGO DALLAS - 878859 | $ | 417.00 |
| 3938 | 06/30/16 | TR 3500 MAPLE CORP | $ | 11.00 |
| 3939 | 06/30/16 | TR 3500 MAPLE CORP | $ | 68.00 |
| 3940 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 9.50 |
| 3941 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 34.00 |
| 3942 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 53.50 |
| 3949 | 06/30/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 930.50 |
| 3971 | 06/30/16 | UNCLE BUDS 377478 | $ | 0.50 |
| 3972 | 06/30/16 | UNCLE BUDS 377478 | $ | 7.00 |
| 4014 | 06/30/16 | HILTON - PHOENIX - 364231 | $ | 66.00 |
| 4041 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 31.00 |
| 4111 | 06/30/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 829.50 |
| 4216 | 07/27/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 30.00 |
| 4273 | 07/27/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 278.80 |
| 4289 | 07/27/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 972.00 |
| 4312 | 07/27/16 | REGENCY PLAZA NA000365 | $ | 32.50 |
| 4453 | 08/31/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 187.00 |
| 4461 | 08/31/16 | HILTON NORTHBROOK NA000048 | $ | 38.50 |
| 4468 | 08/31/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 1,020.50 |
| 4506 | 09/26/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 33.50 |
| 4562 | 09/26/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 204.00 |
| 4577 | 09/26/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 831.50 |
| 4599 | 09/26/16 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 17.75 |
| 4712 | 10/28/16 | HILTON GRAND VACATIONS - 907229 | $ | 106.00 |
| 4741 | 10/28/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 12.00 |
| 4796 | 10/28/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 246.50 |
| 5011 | 12/30/16 | TR 3500 MAPLE CORP | $ | 44.00 |
| 5101 | 12/30/16 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 2.00 |
| 5116 | 12/30/16 | BURBANK AIRPORT MARRIOTT HOTEL | $ | 1,332.00 |
| 5321 | 01/30/17 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 1.75 |
| 5359 | 02/24/17 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ | 155.00 |
| 5390 | 02/24/17 | TR 3500 MAPLE CORP | $ | 39.00 |
| 5487 | 03/30/17 | TR 3500 MAPLE CORP | $ | 53.00 |
| 5782 | 04/27/17 | SHERATON - HERNDON DULLES -727483 | $ | 107.00 |
| 5860 | 05/31/17 | DOUBLETREE GUEST SUITES - NA000243 | $ | 118.50 |
| 5972 | 06/27/17 | HILTON GARDEN INN - LAX EL SEGUNDO | $ | 46.50 |
| 6048 | 06/27/17 | HILTON - OHARE AIRPORT - NA000196 | $ | 526.50 |
| 6307 | 08/18/17 | HILTON - BALTIMORE - NA000276 | $ | 1,793.25 |
| 6333 | 08/18/17 | ONE CREEK GOLF CLUB NA000406 | $ | 16.00 |
| 6378 | 09/18/17 | HILTON GARDEN INN - LAX EL SEGUNDO | $ | 49.00 |
| 6466 | 09/18/17 | THE RESORT AT PELICAN HILL NA000363 | $ | 95.50 |

| **Check No.** | **Check Date** | **Payee Name** | **Amount** |
|---|---|---|---:|
| 6473 | 09/18/17 | THE RESORT AT PELICAN HILL NA000402 | $ 101.50 |
| 6616 | 11/22/17 | EL CONQUISTADOR RESORT-82541579 | $ 1,180.00 |
| 6657 | 11/22/17 | TR 3500 MAPLE CORP | $ 45.00 |
| 6659 | 11/22/17 | A LOFT CHARLESTON AIRPORT-NA000272 | $ 33.50 |
| 6734 | 12/19/17 | TR 3500 MAPLE CORP | $ 36.00 |
| 6775 | 12/19/17 | HILTON - COSTA MESA - NA000400 | $ 187.00 |
| 7015 | 02/15/18 | HILTON WAIKOLOA OCEAN TOWER 907157 | $ 54.00 |
| 7027 | 02/15/18 | SUNNYMEAD SHELL CIRCLE K | $ 137.00 |
| 7065 | 02/28/18 | HILTON - AKRON/FAIRLAWN NA000172 | $ 33.50 |
| 7132 | 03/30/18 | EMBASSY STE PITTSBURGH AIR NA000076 | $ 48.00 |
| 7168 | 03/30/18 | RAMADA WICHITA AIRPORT NA000078 | $ 5.50 |
| 7218 | 03/30/18 | SUNNYMEAD SHELL CIRCLE K | $ 119.50 |
| 7244 | 04/30/18 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ 180.00 |
| 7601 | 07/13/18 | THE ISLAND HOTEL 307431 | $ 135.00 |
| 7703 | 08/22/18 | ONTARIO GATEWAY HOTEL - 816469 | $ 112.00 |
| 7713 | 08/24/18 | A LOFT CHARLESTON AIRPORT-NA000272 | $ 23.00 |
| 7755 | 08/24/18 | HILTON - CHICAGO OHARE - NA000032 | $ 67.50 |
| 7812 | 09/28/18 | A LOFT CHARLESTON AIRPORT-NA000272 | $ 18.50 |
| 7983 | 11/14/18 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ 186.25 |
| 8089 | 12/17/18 | HOTEL INDIGO DALLAS - 878859 | $ 156.00 |
| 8160 | 01/18/19 | COURTYARD - ERLANGER - 643801 | $ 19.50 |
| 8179 | 01/18/19 | HILTON GARDEN INN - LAX EL SEGUNDO | $ 23.00 |
| 8202 | 01/21/19 | DOUBLETREE - CLAREMONT - NA000024 | $ 33.00 |
| 8217 | 01/21/19 | EMBASSY STES ST PAUL DTOWN NA000366 | $ 51.00 |
| 8287 | 02/28/19 | A LOFT CHARLESTON AIRPORT-NA000272 | $ 17.50 |
| 8309 | 02/28/19 | EMBASSY STES ST PAUL DTOWN NA000366 | $ 4.00 |
| 8355 | 03/22/19 | EMBASSY SUITES - SEATTLE - 365267 | $ 69.00 |
| 8371 | 03/22/19 | SUNNYMEAD SHELL CIRCLE K | $ 88.50 |
| 8432 | 04/18/19 | DOUBLETREE - LAS VEGAS - 521476 | $ 38.50 |
| 8571 | 05/31/19 | HILTON - COSTA MESA - NA000400 | $ 266.00 |
| | | **Total Outstanding Checks (NASI):** | **$ 14,375.80** |

**Receiver Over NASI**
**Net Funds to Distribute**
**Attachment C-4**
**Clawback Recoveries Outstanding**

| Clawback Recoveries Outstanding | | Amount Outsanding (as of 09/30/20) | | Anticipated Recovery |
|---|---|---|---|---|
| 1 | Settlements - Outstanding Payment | $ 25,211 | $ | 5,000 |
| 2 | Sale of Judgments Portfolio (11 Judgments) | $ 2,398,389 | $ | 60,000 |
| | **Total Anticipated Recovery** | | $ | **65,000** |

Updated 12/7/2020

# EXHIBIT B

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-14-07249-CJC-FFM |
| Plaintiff, | **[PROPOSED] ORDER DISCHARGING RECEIVER AND CLOSING RECEIVERSHIP** |
| v. | Ctrm: 9B |
| NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER, | Judge: Hon. Cormac J. Carney |
| Defendants, | |
| OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC, | |
| Relief Defendants. | |

The Court having considered the Final Declaration of Aaron J. Kudla ("Receiver"), the Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC ("Relief Defendants"), and their subsidiaries and affiliates (collectively "Receivership Entities"), regarding the completion of receivership tasks and use of reserve funds ("Receiver's Final Declaration"), and good cause appearing therefor, IT IS HEREBY ORDERED as follows:

1. The Receiver's Final Declaration is approved;

2. The Receiver is authorized to transfer all cash remaining in the receivership estate to the United States Treasury.

3. The Receiver is discharged of all duties under the Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; and (5) Appointing a Temporary Receiver, and Order to Show Cause re Preliminary Injunction and Appointment of a Permanent Receiver entered by this Court on September 30, 2014 ("TRO") (Dkt. No. 17), the Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver entered by this Court on October 29, 2014 ("Preliminary Injunction Order") (Dkt. No. 42), and subsequent orders of the Court.  Pursuant to the discharge, the Receiver is released from any and all claims and liabilities associated with the receivership, the receivership entities, and the individual defendants named in this action.

4. All actions taken by the Receiver and his professionals in performing the Receiver's Court-ordered duties under the TRO, Preliminary Injunction Order, and subsequent orders of the Court are approved and ratified.

5. The Receiver is discharged from any further responsibility for payment of liabilities of the Receivership Entities.

1    6.    The receivership is closed.

2    7.    Jurisdiction over all disputes, claims, and causes of action arising from

3  or relating to this receivership case is reserved in this Court.

4

5  Dated: _____        _____

6                                        Hon. Cormac J. Carney
                                         Judge, United States District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

## Receiver Over NASI
## Net Funds to Distribution
## Exhibit ___
## SFAR for July 1, 2020 to October 31, 2020

| | | | | |
|---|---|---:|---|---:|
| **Beginning Balance (07/01/20)** | | | $ | **4,524,049.40** |
| | | | | |
| **Increases in Fund Balance:** | | | | |
| Interest/Dividend Income | $ | 165.80 | | |
| Third-Party Litigation Income | $ | 4,461.74 | | |
| Transfer from CNB Claims Administrator | $ | 107,413.24 | | |
| **Total Increases in Fund Balance** | **$** | **112,040.78** | | |
| | | | | |
| **Total Funds Available Before Disbursements** | | | $ | **4,636,090.18** |
| | | | | |
| **Decreases in Fund Balance:** | | | | |
| Disbursements to Receiver or Other Professionals | $ | (74,164.36) | | |
| Claims Administrative Fee (third party) | $ | (395.00) | | |
| Federal and State Taxes | $ | (5,563.19) | | |
| **Total Disbursements for Receivership Operations** | **$** | **(80,122.55)** | | |
| | | | | |
| **Ending Balance of Fund - Net Assets (10/31/20)** | | | $ | **4,555,967.63** |

# EXHIBIT D

**Receiver Over NASI**
**Exhibit ___**
**Outstanding Checks**
**(As of 10/31/20)**

**Nationwide Automated Systems, Inc.:**

| Check No. | Check Date | Payee Name | | Amount |
|---|---|---|---|---|
| 3744 | 04/28/16 | SUNRISE LODGE NA000390 | $ | 25.50 |
| 3755 | 05/25/16 | BEST WESTERN - DOSWELL NA000087 | $ | 10.50 |
| 3851 | 05/25/16 | RAMADA INN - BOSSIER CTY - NA000132 | $ | 24.00 |
| 3916 | 05/26/16 | HOTEL INDIGO DALLAS - 878859 | $ | 417.00 |
| 3938 | 06/30/16 | TR 3500 MAPLE CORP | $ | 11.00 |
| 3939 | 06/30/16 | TR 3500 MAPLE CORP | $ | 68.00 |
| 3940 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 9.50 |
| 3941 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 34.00 |
| 3942 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 53.50 |
| 3949 | 06/30/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 930.50 |
| 3971 | 06/30/16 | UNCLE BUDS 377478 | $ | 0.50 |
| 3972 | 06/30/16 | UNCLE BUDS 377478 | $ | 7.00 |
| 4014 | 06/30/16 | HILTON - PHOENIX - 364231 | $ | 66.00 |
| 4041 | 06/30/16 | BEST WESTERN - DOSWELL NA000087 | $ | 31.00 |
| 4111 | 06/30/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 829.50 |
| 4216 | 07/27/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 30.00 |
| 4273 | 07/27/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 278.80 |
| 4289 | 07/27/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 972.00 |
| 4312 | 07/27/16 | REGENCY PLAZA NA000365 | $ | 32.50 |
| 4453 | 08/31/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 187.00 |
| 4461 | 08/31/16 | HILTON NORTHBROOK NA000048 | $ | 38.50 |
| 4468 | 08/31/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 1,020.50 |
| 4506 | 09/26/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 33.50 |
| 4562 | 09/26/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 204.00 |
| 4577 | 09/26/16 | HILTON SAN FRANCISCO MAIN NA000301 | $ | 831.50 |
| 4599 | 09/26/16 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 17.75 |
| 4712 | 10/28/16 | HILTON GRAND VACATIONS - 907229 | $ | 106.00 |
| 4741 | 10/28/16 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 12.00 |
| 4796 | 10/28/16 | HILTON DAL/PLANO GRNTE PRK NA000407 | $ | 246.50 |
| 5011 | 12/30/16 | TR 3500 MAPLE CORP | $ | 44.00 |
| 5101 | 12/30/16 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 2.00 |
| 5116 | 12/30/16 | BURBANK AIRPORT MARRIOTT HOTEL | $ | 1,332.00 |
| 5321 | 01/30/17 | RIO GRANDE PLAZA HOTEL - NA000405 | $ | 1.75 |
| 5359 | 02/24/17 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ | 155.00 |
| 5390 | 02/24/17 | TR 3500 MAPLE CORP | $ | 39.00 |
| 5487 | 03/30/17 | TR 3500 MAPLE CORP | $ | 53.00 |
| 5782 | 04/27/17 | SHERATON - HERNDON DULLES -727483 | $ | 107.00 |
| 5860 | 05/31/17 | DOUBLETREE GUEST SUITES - NA000243 | $ | 118.50 |
| 5972 | 06/27/17 | HILTON GARDEN INN - LAX EL SEGUNDO | $ | 46.50 |
| 6048 | 06/27/17 | HILTON - OHARE AIRPORT - NA000196 | $ | 526.50 |
| 6307 | 08/18/17 | HILTON - BALTIMORE - NA000276 | $ | 1,793.25 |
| 6333 | 08/18/17 | ONE CREEK GOLF CLUB NA000406 | $ | 16.00 |
| 6378 | 09/18/17 | HILTON GARDEN INN - LAX EL SEGUNDO | $ | 49.00 |
| 6466 | 09/18/17 | THE RESORT AT PELICAN HILL NA000363 | $ | 95.50 |

| Check No. | Check Date | Payee Name | | Amount |
|---|---|---|---|---|
| 6473 | 09/18/17 | THE RESORT AT PELICAN HILL NA000402 | $ | 101.50 |
| 6616 | 11/22/17 | EL CONQUISTADOR RESORT-82541579 | $ | 1,180.00 |
| 6657 | 11/22/17 | TR 3500 MAPLE CORP | $ | 45.00 |
| 6659 | 11/22/17 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 33.50 |
| 6734 | 12/19/17 | TR 3500 MAPLE CORP | $ | 36.00 |
| 6775 | 12/19/17 | HILTON - COSTA MESA - NA000400 | $ | 187.00 |
| 7015 | 02/15/18 | HILTON WAIKOLOA OCEAN TOWER 907157 | $ | 54.00 |
| 7027 | 02/15/18 | SUNNYMEAD SHELL CIRCLE K | $ | 137.00 |
| 7065 | 02/28/18 | HILTON - AKRON/FAIRLAWN NA000172 | $ | 33.50 |
| 7132 | 03/30/18 | EMBASSY STE PITTSBURGH AIR NA000076 | $ | 48.00 |
| 7168 | 03/30/18 | RAMADA WICHITA AIRPORT NA000078 | $ | 5.50 |
| 7218 | 03/30/18 | SUNNYMEAD SHELL CIRCLE K | $ | 119.50 |
| 7244 | 04/30/18 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ | 180.00 |
| 7601 | 07/13/18 | THE ISLAND HOTEL 307431 | $ | 135.00 |
| 7703 | 08/22/18 | ONTARIO GATEWAY HOTEL - 816469 | $ | 112.00 |
| 7713 | 08/24/18 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 23.00 |
| 7755 | 08/24/18 | HILTON - CHICAGO OHARE - NA000032 | $ | 67.50 |
| 7812 | 09/28/18 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 18.50 |
| 7983 | 11/14/18 | FAIRMONT BATTERY WHARF HOTEL-823326 | $ | 186.25 |
| 8089 | 12/17/18 | HOTEL INDIGO DALLAS - 878859 | $ | 156.00 |
| 8160 | 01/18/19 | COURTYARD - ERLANGER - 643801 | $ | 19.50 |
| 8179 | 01/18/19 | HILTON GARDEN INN - LAX EL SEGUNDO | $ | 23.00 |
| 8202 | 01/21/19 | DOUBLETREE - CLAREMONT - NA000024 | $ | 33.00 |
| 8217 | 01/21/19 | EMBASSY STES ST PAUL DTOWN NA000366 | $ | 51.00 |
| 8287 | 02/28/19 | A LOFT CHARLESTON AIRPORT-NA000272 | $ | 17.50 |
| 8309 | 02/28/19 | EMBASSY STES ST PAUL DTOWN NA000366 | $ | 4.00 |
| 8355 | 03/22/19 | EMBASSY SUITES - SEATTLE - 365267 | $ | 69.00 |
| 8371 | 03/22/19 | SUNNYMEAD SHELL CIRCLE K | $ | 88.50 |
| 8432 | 04/18/19 | DOUBLETREE - LAS VEGAS - 521476 | $ | 38.50 |
| 8571 | 05/31/19 | HILTON - COSTA MESA - NA000400 | $ | 266.00 |
| | | **Total Outstanding Checks (NASI):** | **$** | **14,375.80** |